**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
(Miami Dade Division)

|  |  |
|---|---|
| ALEXANDER RUDNITSKY<br><br>Plaintiff<br>(resident of Florida)<br><br>v.<br><br>INTERNATIONAL CHECKERS<br>ASSOCIATION OF NORTH AMERICA<br>INC.<br>(a State of New York corporation)'<br><br>LYUBLYANA K. TURIY, aka<br>LYUBLYANA TURIY, aka LUBA K.<br>TURIY, aka L.K. TURIY<br><br>Defendants. | ACTION No.<br><br>**VERIFIED COMPLAINT**<br><br>  **i.**  **DEFAMATION**<br>  **ii.**  **INTERFERENCE WITH**<br>     **BENEFICIAL RELATIONSHIP**<br>  **iii.**  **BREACH OF FIDUCIARY DUTIES**<br>  **iv.**  **FLORIDA DECEPTIVE AND**<br>     **UNFAIR TRADE PRACTICES**<br>     **ACT Fl. St. 501.201-213.**<br>  **v.**  **CIVIL CONSPIRACY**<br>  **vi.**  **ANTITRUST SHERMAN ACT,**<br>     **§§1–2 (15 U.S.C. §§ 1–2)**<br>  **vii.**  **BREACH OF CONTRACT;**<br>     **VIOLATION OF MEMBER'S**<br>     **RIGHTS;**<br>  **viii.**  **DECLARATORY RELIEF**<br>  **ix.**  **INJUNCTIVE RELIEF**<br>  **x.**  **SEVERE EMOTIONAL DISTRESS** |

**INTRODUCTION.**

1.    Plaintiff Alexander Rudnitsky is a five-time U.S. Champion, two-time World Veteran Champion in the game of checkers, sometimes called draughts. Rudnitsky is also a long-term member, donor, and Patron of the International Checkers Association of North America (hereafter "ICAONA", the defendant in this action. Rudnitsky is also one of the founders of the National Draughts Federation of the USA ("NDF"), a nonprofit organization dedicated to promoting draughts in the United States, including organizing the Miami Open 2025.

2.    This lawsuit concerns ICAONA's unlawful disqualification of Rudnitsky, dissemination of defamatory statements, adoption of discriminatory membership and tournament rules, and abuse of its nonprofit authority, all of which constitute actionable misconduct under

Florida and federal law.  Plaintiff seeks damages and injunctive relief, given an unprecedented, un-American approach of the Defendants banning his participation in the international and domestic tournaments, including the forthcoming U.S. Championship Tournament in Miami Beach, Florida, from November 21-30, 2025.  Thereby, the NDF's strategy is to make the Miami Open a yearly event.  This action claims considerable damages.

## PARTIES.

3.     Plaintiff Alexander Rudnitsky (Rudnitsky) is a resident of Miami-Dade County, with the current residential address in Sunny Isles Beach.  Rudnitsky is the plaintiff in this action, as his rights have been violated in a dramatic and unprecedented manner.  That included disqualification of Rudnitsky in international tournaments, e.g., banning Rudnitsky from participating in the U.S. Open Championship Tournament that ICAONA scheduled for November 21, 2025.  In addition to the monetary damages, Rudnitsky is seeking an Injunctive Relief and Declaratory relief, declaring the act of banning Rudnitsky's participation in a tournament. Rudnitsky seeks substantial damages and injunctive relief in light of unprecedented, un-American decisions of the defendants to ban his participation in Miami Beach, Florida, on November 21-30, 2025.  Furthermore, Rudnitsky is one of the founders of the National Federation of Draughts of the United States (NDF), a not-for-profit corporation registered under the laws of the State of Florida, pursuing the objective of making the game of draughts more popular in this country.

4.     Defendant International Checkers Association of North America ("ICAONA") is a New York not-for-profit foundation. The corporate office of ICAONA is at 43 Glenna Little Trail, Huntington, NY, 11743.  ICAONA's executive director is Lyubliyana K. Turiy, see below. ICAONA's president is Rudi Azimullah (Azimullah) is the president.  In the matter described below, ICAONA has acted, through Azimullah, outside the charter, rules, and regulations of

ICAONA, essentially becoming a private actor, for the purpose of discriminating against Rudnitsky, without complying with the organization's governing documents.

5.     Defendant Lyublyana K Turiy, aka Lyublyana Turly, aka Luba K Turiy, aka L K Turiy, aka Luba C Turiy, aka Lyublyana K Tury is an individual residing in the State of New York, at Hilary Ct, Huntington, NY 11743 and 5 Hilary Ct, Huntington, NY 11743 is the executive director of ICAONA and the person, despite the existence of the Board, with the most powers within ICAONA, that she has been the driving force in excluding Rudnitsky from the organization and banning Rudnitsky from its membership.  Turiy has been ICAONA's member since 2002 and Turiy has served on the ICAONA Board of Directors in various capacities.  Since 2009, Turiy has effectively led ICAONA and controlled the process of making decisions made against Rudnitsky,

## JURISDICTION

6.     This Court has jurisdiction over the defendants and more generally over the controversy, as the defendants intentionally orchestrated and implemented an improper or illegal act of banning Rudnitsky from participating in a Checkers Championship to be held in Miami-Dade County on November 21-30, 2025, in practical terms, within about 15 miles of the Courthouse.

7.     Plaintiff is a citizen of Florida, for purposes of jurisdiction.  Defendant is incorporated in the State of New York.  There is a long-arm jurisdiction over ICAONA in this matter, as it has organized a Checkers' Championship to be held in Miami Beach, Florida, within the jurisdiction of the Southern District of Florida.

8.     While Defendant Turiy resides in Huntington, that of New York NY 11743, she is not immune from being sued in the Southern District of Florida, as the driving force of the tortious decisions made against Rudnitskiy, including banning him from participating in the Championship

in Miami Beach, Florida, which subjects Turiy to the long-arm jurisdiction of the State of Florida.

9.       Damages exceed $75,000, the statutory minimum in diversity of citizenship claims.

10.      This Court also has jurisdiction because this action raises the rights under the Antitrust Sherman Act, §§ 1–2 (15 U.S.C. §§ 1–2), the federal statutes.

## FACTS RELEVANT TO ALL COUNTS

11.      Rudnitsky was an integral part and a driving force, among others, in establishing ICAONA in 2002.  Rudnitsky, a legendary player, is eventually ranked among the top 48 most renowned checkers players in the world.  Rudnitsky has remained an active member since that time.

12.      Rudnitsky served as Vice President until March 2024, when he resigned from that position while remaining a member of ICAONA.

13.      Over the years, Rudnitsky contributed financially as a Patron and organized multiple U.S. Championship events on behalf of ICAONA.

14.      In 2024, while still a member of ICAONA, Rudnitsky and other players founded the NDF, a nonprofit created to expand draughts in the United States and to organize the Miami Open tournament. More specifically, on June 4, 2024, they registered a new not-for-profit Florida corporation, The National Draughts Federation of the United States Inc., document N24000006761, FEI/EIN Number 99-3533235, with the principal office at 2739 NW 54TH AVE, Margate, FL 33063, registered agent Andriy Shcherbatyuk.  Rudnitsky became its Vice President.

15.      From the outset, NDF and Rudnitsky expressly acknowledged ICAONA as the recognized member for the United States with the World Draughts Federation (hereafter "FMJD"), and at no time did Rudnitsky deny ICAONA's FMJD status.

4

16.     All references are made to Exhibits, attached to the pre-litigation letter of September 19, 2025, attached herewith in its entirety.  Exhibit A includes documents showing Rudnitsky and NDF's recognition and support of ICAONA as the primary drafting organization in the U.S.

17.     Following the creation of NDF and the announcement of the Miami Open, ICAONA leadership began circulating accusations to FMJD, alleging that Rudnitsky denied ICAONA's legitimacy.

18.     These statements accompanying the denial were made to international governing bodies and third parties, and they were relied upon by players and sponsors in making decisions about participation in the Miami Open. During this time, FMJD issued multiple letters of support to Rudnitsky and the Miami Open 2025, recognizing his contributions and confirming that NDF was operating entirely within the framework of FMJD. Exhibit B shows various letters of support from FMJD President Jacek Pawlicki to the NDF organizers.

19.     Throughout this same period, Rudnitsky continued to demonstrate good faith toward ICAONA itself, both by making financial contributions, which ICAONA accepted and acknowledged with written appreciation, and by reaching out directly to President Rudi Azimullah (Azimullah) and Technical Director, Luba Turiy (Turiy), to propose cooperation between ICAONA and NDF.

20.     These actions underscore that Rudnitsky consistently recognized ICAONA's FMJD role and sought constructive collaboration, even as ICAONA representatives were actively attempting to undermine him and suppress the Miami Open by spreading false accusations. See Exhibit C. On March 3, 2025, the FMJD Executive Board convened a meeting with representatives from both ICAONA and NDF in attendance. At that meeting, FMJD confirmed that NDF and

Rudnitsky recognized ICAONA's FMJD role, reviewed a letter signed by Rudnitsky affirming ICAONA's recognition, and found no objection to NDF's name.  See Exhibit D.

21.     Following the March 3, 2025, meeting, Rudnitsky continued to extend recognition and support to ICAONA in writing. On March 5, Rudnitsky wrote directly to Azimullah offering cooperation and assistance and reaffirming ICAONA's status.

22.     On March 8, President Azimullah responded, acknowledging that after the Executive Board meeting, he would not interfere with the Miami Open 2025 and even wished Rudnitsky success. However, he stated he would not participate due to NDF's name. See Exhibit E, which shows NDF's ongoing support after the Executive Meeting and Azimullah's response. This response demonstrates that ICAONA's own President recognized that the dispute had been resolved at the FMJD level and that there was no barrier to the Miami Open proceeding.

23.     On April 5, 2025, ICAONA purported to amend its Statutes in a manner that dramatically restricted rights and access.  That amendment was made without following the required procedure. The prior Statutes (in force since 2002) permitted open membership to all U.S. players.

24.     Provided that sanctions were limited to ICAONA's internal activities, the new Statutes limited membership exclusively to U.S. citizens and permanent residents and conditioned participation in FMJD-endorsed tournaments and preliminary tournaments for the right to compete in the finals, by ICAONA membership and dues. See Exhibit F, ICAONA's old and new bylaws.

25.     These amendments were adopted without a quorum or meaningful discussion; only eight members were present, and there is no record of proper voting or minutes taken.  The clause about the compulsory participation in ICAONA as a precondition to compete, when there were NDF and other independent organizations for players, was to stifle healthy competition among the

organizations promoting daughters.  Importantly, even under its own amended Statutes, if those were lawfully adopted—which they were not-- ICAONA lacked the authority to impose disqualification from FMJD competitions, yet it relied on these flawed provisions to justify punitive measures.

26.     ICAONA immediately began applying these new rules in a discriminatory and coercive manner. According to the published regulations for the U.S. Open 2025, ICAONA required U.S. participants to join ICAONA and pay membership dues as a condition of competing, despite the tournament serving as a qualifier for FMJD events.

27.     The same approach was taken with minor athlete Yevhen Bohush ("Bohush"), whose June 2025 application to change his sporting nationality from Ukraine to the United States was conditioned on ICAONA membership.

28.     Under FMJD regulations, a flag-change transfer is strictly a matter of the new federation submitting the transfer to FMJD, along with the required €50 notification fee; there is no requirement for the athlete to join a private corporation or pay additional domestic dues.

29.     Nevertheless, ICAONA refused to process his application unless he joined ICAONA and paid a $100 fee, even though FMJD rules impose no such requirement. Further, when Bohush attempted to comply, ICAONA rejected the $100 payment because it was issued by NDF on behalf of the player, demonstrating that its objection was not to the form of payment but to the association with NDF. On September 5, 2025, ICAONA returned the $100 via Zelle with the notation: *"Refund of check #1005 of 08/28/25. Payment not accepted due to pending investigation and litigation. ICAONA has no business relations with NDF."* See Exhibit G.

30.     In correspondence, ICAONA went further, labeling NDF a "shadow" and "self-proclaimed" federation to delegitimize its role and to deter players from associating with it. These

7

defamatory characterizations were paired with discriminatory restrictions aimed directly at minors, as ICAONA conditioned Bohush's eligibility for both.

31.     U.S. competitions and his international transfer of membership in ICAONA, requirements that exceed FMJD's official rules and usurp FMJD's jurisdiction. Bohush's coach later appealed, and FMJD confirmed that ICAONA's conduct was unlawful, and the FMJD Executive Board formally ruled that ICAONA's practices were discriminatory. See Exhibit G.

32.     At the same time, ICAONA escalated its campaign against Rudnitsky. On May 15, 2025, ICAONA issued a written warning, followed by a decision on June 4, 2025, that imposed a two-year suspension and lifetime disqualification. ICONA acted in retaliation of Rudnitsky's becoming one of the founders of a purportedly competing organization promoting draughters.

33.     The stated grounds for these sanctions were that Rudnitsky had created the NDF in a manner that allegedly undermined ICAONA's role as the national federation recognized by FMJD and PADCC, and that he had publicly denied ICAONA's status as the sole legitimate FMJD member in the United States.

34.     These charges by ICAONA were entirely baseless. See Exhibit H. From the outset, Rudnitsky and NDF expressly and repeatedly acknowledged ICAONA's recognition by FMJD, including in correspondence and website publications.  For example, on March 3, 2025, FMJD held an Executive Board meeting. FMJD itself confirmed ICAONA's Status and called for cooperation.

35.     Despite this record, ICAONA proceeded with sanctions without providing Rudnitsky notice, without affording him an opportunity to be heard, and without issuing minutes or a record of decision.

36.     On June 4, 2025, ICAONA purportedly passed a Board minutes to sanction

Rudnitsky, to disqualify Rudnitsky for two years, with the threat of making that disqualification permanent, unless, apparently, NDF would not compete.

37.     Rudnitsky subsequently submitted a complaint to the FMJD Ethics Committee. FMJD responded by letter, confirming that the accusations against Rudnitsky were unfounded and affirming his eligibility to participate in tournaments pending review by the Ethics Committee.

38.     Furthermore, the FMJD President sent a support letter establishing his patronage over the 2025 Miami Open Tournament. See Exhibit I, FMJD's decision, which shows that a copy was sent to Azimullah and includes a letter of support from the FMJD President.

39.     Despite FMJD's ruling and the Executive Council's confirmation that ICAON's discriminatory practices did not cease, as the pre-litigation letter showed.  ICAONA proceeded to suspend Rudnitsky for a period of two years, prohibiting him from participating in ICAONA and FMJD events. See Exhibit J.

40.     ICAONA sought to bar Rudnitsky from competing in the upcoming 2025 U.S. Championship, scheduled for November 21-30, 2025, and from participating in FMJD competitions in 2026. This was not an internal ICAONA tournament; it was a qualifying event for FMJD competitions.

41.     ICAONA had no authority to prevent Rudnitsky from participating as an independent player, and doing so amounted to an unlawful disqualification from international competition.

42.     In response, Rudnitsky has received numerous letters of support from referees, coaches, and players across the draughts community, both in the United States and abroad, protesting his disqualification and condemning ICAONA's conduct. See Exhibit J.

43.     These facts, taken together, demonstrate a pattern of unlawful conduct by ICAONA

and its officers that caused serious reputational, financial, and competitive harm to Rudnitsky. Based on this record, we outline below the specific legal claims under Florida and federal law that ICAONA's actions are alleged to have violated.

44.     Time and again, Rudnitsky directed his letters, both individually and through his attorneys, to the defendants.  Rudnitsky views this misconduct with the utmost seriousness and is fully prepared to enforce his rights to the full extent of applicable law.

45.     Turiy's role has been crucial for the decisions in the name of ICAONA against Rudnitsky. Turiy, as mentioned above, has been a member of ICAONA since 2002 and has served on the ICAONA Board of Directors in various capacities.  Since 2009, Turiy has effectively led ICAONA, although Turiy has not held the position of President.

46.     At the start of the efforts to expunge Rudnitsky, Turiy was a member of the ICAONA Board of Directors as Director of the Technical Committee. After the annual meeting on April 5, 2025, Turiy assumed the position of Executive Director of ICAONA. Turiy currently exercises management control at ICAONA. Turiy has essentially been preparing all meeting agendas. However, these are ultimately signed by President R. Azimula and Secretary E. Sklyarov (her ex-husband). Turiy effectively generates all decisions, and then the minutes with the voting results, on information and belief, are drawn up, with some of those having a disability included.

47.     Turiy played the key role in expunging Rudnitsky. After Rudnitsky voluntarily resigned as Vice President of ICAONA and the NDF, Turiy, driven by her desire to control the organization and seeking revenge, launched a campaign against the NDF and Rudnitsky, one of the NDF's main organizers.

48.     On November 13, 2024, Turiy sent a letter to the FMJD, falsely calling the NDF (and indirectly Rudnitsky) fraudsters, counterfeiters, and accusing them of forging signatures.

49.     Per Turiy's request on January 11, 2025, Clifton Agata, the President of the Pan-American Draughts Confederation, disqualified by the FMJD Ethics Committee, wrote a letter, "Defend ICAONA," which he sent to all federations worldwide.

50.     Turiy's manipulative actions, which began at least in November 2024 and have continued to the present day, involve orchestrating 'public opinion' through letters and calls to various federations and players. She has been urging them not to attend NDF tournaments, claiming that the NDF is an 'illegal, shadow federation.'

51.     Turiy organized the hearing at the FMJD Executive Committee on March 3, 2025, where Turiy tried to convince the Executive Committee that NDF was illegal, that the 2025 MIAMI OPEN tournament should be removed from the calendar, and that Rudnitsky and the NDF "do not publicly recognize ICAONA as the sole FMJD member in the USA."  However, Turiy received a response from the Executive Committee rejecting all her claims.

52.     On April 5, 2025, the annual ICAONA members' meeting was held, with only eight members in attendance (4 via Zoom and four by phone). The main agenda item was amendments to the Charter. A quorum was not present.  In accordance with the Charter, Rudnitsky proposed discussing the amendment proposals and then voting on them.

53.     Instead, Turiy reported at that annual meeting that the vote had been held early, a week earlier, by poll (the Charter requires this to be done only during the general meeting). Turiy reported that 13 people participated in the absentee vote, and nine voted "for."

54.     Rudnitsky informed her that this was a gross violation of the Charter and demanded that Turiy at least present the voting protocol. However, Turiy responded that "the protocol is secret." As a result, Rudnitsky still does not have a copy.

55.     After the Executive Committee meeting on March 3, 2025, ICAONA's president

wrote a letter stating that he would no longer interfere with the 2025 Miami Open. However, under pressure from Turiy, Rudnitsky was disqualified on June 3, 2025, as Turiy had implemented her plan to expunge Rudnitsky. Namely, Turiy's chats from January 2025 (screenshots attached) show that Turiy demanded that Rudnitsky be disqualified to prevent me from participating in the World Championships.

56. Rudnitsky's disqualification was carried out in a secretive manner, completely ignoring the proper procedure. He was not warned, allowed to speak, or informed about the meeting, attendees, or voting details. No minutes were made available to him afterwards.

57. Turiy, despite not holding the formal role of the president, was the one predominantly involved in the correspondence with the FMJD and the Ethics Committee. She made all the calls to the FMJD Executive Committee, demanding confirmation of Rudnistky's disqualification. She was the one who initiated the deprivation of Rudnitsky's sporting citizenship.

58. While attending the General Assembly held on October 26, 2025, in Turkey, Turiy personally contacted various individuals (primarily the Presidents of various federations and FMJD representatives), putting Rudnitsky in false light.

59. Nevertheless, despite Turiy's pressure and demands to include Rudnitsky's issue on the General Assembly agenda, the issue was not included. The Ethics Committee, in its Supplementary Report of October 24, 2025, to the delegates of the 41st General Assembly, fully reaffirmed its Decision of October 1, 2025.

60. In that decision, Rudnitsky's unlawful disqualification was annulled, and Rudnitsky's right in any tournaments sponsored by FMJD was confirmed. The decision mentioned that ICAONA should not further cause reputational harm to FMJD.

61. The said Decision of October 1, 2025, FMJD annulled an illegal disqualification of

Rudnitsky by ICAONA, and reconfirmed Rudnitsky's right to play in all tournaments sponsored or recognized by FMJD.  By implication, that Decision also criticized or condemned the actions undertaken by ICAONA to the detriment of FMJD's reputation.

62.     Rudnitsky seeks compensatory and punitive damages in excess of $75,000, pursuant to 28 U.S.C. §1332(a), which establishes federal court jurisdiction over multi-jurisdictional cases in which the amount in dispute exceeds $75,000.

63.     The actions of the defendants, ICAONA and Turiya, acting on behalf of and under the cover of that corporation, caused the plaintiff personal property, moral, reputational, and psychological damages, with specifics as follows.

64.     Rudnitsky claims compensation for lost labor and organizational investments (economic and professional losses).  Due to the illegal actions of ICAONA and its officials, the plaintiff was forced to halt all Miami Open and the NDF's development projects, including sponsorship, grants, and organizational initiatives.  Therefore, the results of 18 months of systematic work aimed at developing draughts in the United States were nullified.

65.     During this period, Rudnitsky invested at least 100 hours per month, with the average market value of his labor as an international athlete and organizer being at least $100 per hour.  That included 18 months at $100 per hour, reasonable for a person of high professional skills, for a total of $180,000.  Rudnitsky could have been paid as a coach, commentator, and member of the arbiters' committees at various international tournaments. These damages represent actual economic losses and qualify as loss of time and labor value, compensable under Restatement (Second) of Torts § 928 and case law (*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931)).

66.     Furthermore, Rudnitsky asserts damages under the category of a Loss of

Professional and International Reputation (Loss of Reputation and Standing).  ICAONA and the defendants knowingly disseminated false and defamatory information, damaging the plaintiff's business and sporting reputation in the global checkers community.  Rudnitsky, a dedicated professional, has dedicated 65 years of his life to the world of professional sports and is internationally recognized for his significant contributions.

67.     The defamatory statements and disqualification without legal basis destroyed his professional reputation, as confirmed by the precedent of *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974) — compensation for moral and reputational damages is admissible if the publications are proven to be intentional and false.  The requested amount of compensation is $200,000 (equivalent to the loss of trust, invitations, and international status, approximately $3,000 for each year of reputation built).

68.     Furthermore, Rudnitsky asserts damages under the category of emotional distress and discrimination.  ICAONA's actions, including the unlawful disqualification and denial of participation in the US National Championships contrary to the FMJD's decision, caused the plaintiff profound emotional distress, stress, humiliation, and discrimination.

69.     The plaintiff was forced to seek medical attention, including psychiatrists, and take medication.  Such suffering is compensable under 42 U.S.C. § 1981(a) (discrimination in contractual or organizational participation) and the case law of *Johnson v. Railway Express Agency, Inc*., 421 U.S. 454 (1975).  Rudnitsky claims moral and psychological damages ащк $100,000.

70.     Plaintiff also has suffered business and reputation harm.  As a result of ICAONA's systematic actions, the plaintiff was unable to realize his potential at the 2025 World Veterans Championships (Riga), where he was a leading contender for the title.  Due to prolonged stress

and insomnia caused by the defamation and illegal actions of ICAONA, the plaintiff was deprived of the opportunity to perform at his usual level. During one or two rounds a day (5-10 hours), at the end of games, in positions that were actually won, he made simple mistakes uncharacteristic of his level and international rating, which deprived him of the prestigious title of 2025 Mara Veterans Champion.  That resulted in: • loss of international image and credibility; • weakening of his status, rating, and the organizer; • the need for medical intervention and treatment. The estimated damages under this category are stated at $100,000, which corresponds to the loss of professional image, moral damages, and damage to business reputation.  Such damages are compensable in accordance with the principle of Restatement (Second) of Torts § 46 and the case law of *Harris v. Forklift Systems, Inc.,* 510 U.S. 17 (1993) – compensation for humiliation and distress resulting from discriminatory actions.

71.     The total of personal damages asserted in this action is therefore $580,000.

## COUNT 1.
## DEFAMATION

72.     Plaintiff incorporates by reference the allegations in Paragraphs 1 to 71 above and further alleges as follows.

73.     Under Florida law, defamation occurs where (1) a defendant publishes (2) a false statement of fact (3) to a third party (4) with fault amounting at least to negligence, and (5) resulting in damage. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Where, as here, the published statements falsely accuse a person of criminal activity, fraud, or unethical professional conduct, the publication constitutes defamation per se, and damages are presumed.

74.     On November 13, 2024, ICAONA member Turiy transmitted a letter to FMJD Tournament Director Siep Buurke (Buurke) in which she accused Rudnitsky and the NDF of serious criminal and ethical misconduct. In her words, Rudnitsky and NDF engaged in *"forgery of*

15

*signatures,"* committed *"fraud,"* and engaged in *"falsification and deception"* in connection with the Miami Open 2025. Statements from Turiy are attached hereto as Exhibit K.

75.     That letter was published at the highest level of international governance by FMJD, and, as Buurke informed Rudnitsky on December 10, 2024, it directly resulted in FMJD removing the Miami Open 2025 from its official tournament calendar.

76.     Word of these accusations spread quickly within the international draughts community.

77.     In correspondence to FMJD on January 13, 2025, Rudnitsky further explained the tangible harm this caused.

78.     By that time, contracts had already been signed with hotels and the playing hall, with significant deposits paid months in advance. Advertising agreements were in place with a leading local magazine for monthly coverage, but due to ICAONA's actions, only a single publication was ultimately released.

79.     Numerous invitations were sent to players and national federations, including letters providing visa support, and a prize fund of $9,000 was established. All of these investments were directly undermined by the fallout from Ms. Turiy's defamatory correspondence. The result was both profound financial loss and lasting reputational damage to Rudnitsky and the NDF.

80.     Furthermore, on January 17, 2025, defamatory statements emerged in chat communications involving Ms. Turiy. In those messages, she accused Rudnitsky, NDF President Andrey Shcherbatyuk, and FMJD President Jacek Pawlicki of *"corruption". She proposed* that Rudnitsky be disqualified to prevent him from participating in the World Championship Final.  See Exhibit K.

81.     These accusations were equally false and calculated to harm Rudnitsky's

professional standing within the global draughts community.

82.    Additional chat records obtained by NDF leadership confirmed that Turiy and ICAONA representatives went further by persuading players not to attend the Miami Open 2025, describing the tournament as "illegitimate," and addressing similar messages to other federations. In separate correspondence concerning minor athlete Bohush,

83.    ICAONA rejected a $100 membership payment solely because it was issued on his behalf by NDF.

84.    ICAONA then returned the payment via Zelle with a memo stating: "Refund of check #1005 of 8/28/25. Payment not accepted due to pending investigation and litigation. ICAONA has no business relation with NDF."

85.    That statement was false, published through the Wells Fargo/Zelle banking system, and constituted a written assertion that NDF was the subject of investigation and litigation. By embedding these falsehoods in permanent banking records, ICAONA effectively published defamatory content to third parties in a highly credible commercial channel.

86.    In that context, ICAONA went further and referred to NDF in writing as a "shadow self-proclaimed organization." This defamatory label targeted a lawfully incorporated U.S. nonprofit, falsely portraying NDF as illegitimate and unlawful.

87.    The statement not only impugned NDF's legal standing but also sought to undermine its business reputation with sponsors, federations, and the broader draughts community.

88.    Florida courts have long held that accusations of fraud, forgery, and deception fall within the narrow class of defamation per se, because they necessarily impute dishonesty and unethical conduct. *Id.*

89.    Where defamation is actionable per se, damages are presumed, and punitive

damages may be awarded even absent proof of actual damages, provided the statements were made with malice or ill will. *Saunders Hardware Five and Ten v. Low*, 307 So. 2d 893 (Fla. 3d DCA 1975), cert. denied, 330 So. 2d 21 (Fla. 1976); *Bobenhausen v. Cassat Ave. Mobile Homes, Inc.*, 344 So. 2d 280 (Fla. 1st DCA 1977). Here, the context and content of the publication demonstrate express malice.

90.     As Florida courts have explained, malice exists when the primary motive is to injure the plaintiff. *Nodar v. Galbreath*, 462 So. 2d 803 (Fla. 1984). Ms. Turiy's letter was written and transmitted with the explicit purpose of undermining Rudnitsky personally and obstructing the Miami Open 2025.

91.     These were not negligent misstatements but calculated falsehoods disseminated to damage Rudnitsky's reputation and his ability to compete. Accordingly, ICAONA's conduct through its officer satisfies each element of defamation under Florida law. Liability exists for compensatory damages, presumed damages arising from defamation per se, and punitive damages based on express malice.

92.     Wherefore, Rudnitsky asserts a claim based on defamation against ICAONA.

## COUNT II.
## TORTIOUS INTERFERENCE WITH BUSINESS OR ADVANTAGEOUS RELATIONS

93.     Plaintiff incorporates by reference the allegations in Paragraphs 1-71 above and further alleges as follows.

94.     Beyond publishing defamatory statements, ICAONA and its officers took deliberate steps to obstruct Rudnitsky's business relationships and sabotage the Miami Open 2025. These actions were particularly unjustified because Rudnitsky had, on numerous occasions, confirmed in writing his recognition of ICAONA's status as FMJD's member federation, through formal letters, website publications, and official submissions presented to FMJD.

95.     Despite that acknowledgment, ICAONA engaged in conduct designed not to protect its status but to destroy Rudnitsky's contractual, professional, and economic opportunities. Florida law provides that a plaintiff may recover for tortious interference where they establish: (1) the existence of a business or advantageous relationship; (2) the defendant's knowledge of that relationship; (3) intentional and unjustified interference by the defendant; and (4) damages. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). Each element is satisfied here.

96.     Rudnitsky had several business relationships related to the Miami Open 2025. These included contracts with hotels and playing halls, advertising agreements with a widely read local magazine, secured prize funds, visa support commitments for international players, and developing relationships with athletes, sponsors, and coaches. ICAONA was fully aware of Rudnitsky's work in organizing the Miami Open 2025. The tournament was publicly announced and promoted, and ICAONA expressly referenced the Miami Open in its communications with FMJD and other federations. Its deliberate targeting of the tournament in correspondence with FMJD leaves no doubt that ICAONA was aware of the underlying contractual and economic relationships.

97.     ICAONA's interference was both intentional and unjustified. On November 13, 2024, Turiy accused Rudnitsky of "forgery of signatures," "fraud," and "falsification and deception" in a letter to FMJD.

98.     On December 10, 2024, the FMJD confirmed to Rudnitsky that the Miami Open was removed from its calendar directly because of that letter. While FMJD's Statutes require a national federation to submit a consent application before an international tournament, which can be formally approved, FMJD officials had already placed the Miami Open 2025 on the international

calendar following the direct recommendation of the FMJD's President.

99.     In late August 2024, after being informed of NDF's plans to host the tournament, the FMJD President himself proposed granting the Miami Open World Cup stage status, explaining that draughts should be more actively developed in the United States and that bringing a World Cup stage to the U.S. would attract global attention.

100.    At the time, Rudnitsky was not aware of ICAONA's formal consent requirement and reasonably relied on the FMJD President's recommendation that the tournament be added. ICAONA's objection to the tournament was unprecedented; no other national federation had previously opposed the inclusion of a World Cup stage in its territory.

101.    Nevertheless, FMJD officials did not delist the Miami Open based on ICAONA's objection, which they had already been aware of. Instead, they acted after receiving Ms. Turiy's defamatory letter, which falsely accused Rudnitsky of fraud, lack of funds, and misconduct.

102.    Although the tournament was later restored to the calendar, ICAONA's actions and Ms. Turiy's correspondence caused immediate reputational and financial harm. The FMJD President even suggested in January 2025 that the Executive Council could approve the tournament as a World Cup stage without ICAONA's consent.

103.    However, to avoid further delay, Rudnitsky agreed to proceed with the tournament as an international open event. In reality, ICAONA sought the complete removal of the Miami Open from the FMJD calendar, disparaging NDF as an "illegal and shadow organization." This delisting had immediate business consequences, causing players to withdraw and undermining contractual commitments.

104.    ICAONA then enlisted others to continue the campaign. Turiy solicited disqualified Pan-American Confederation President Clifton Agata to circulate letters worldwide calling to

"Protect ICAONA." Turiy went further, accusing Rudnitsky of "corruption" in chat communications and advocating his disqualification from the World Championship Final.

105.    ICAONA's interference extended beyond defamatory publications and into its administration of player eligibility. In the case of minor athlete Bohush, ICAONA refused to process his nationality transfer and tournament registration on the sole basis that his $100 membership payment was issued by NDF rather than directly by him or his family.

106.    ICAONA then characterized NDF in writing as a "shadow" and "self-proclaimed" federation, and conditioned Bohush's eligibility for U.S. competitions and international transfer on ICAONA membership and dues.

107.    This conduct directly contravened FMJD statutes, which require national federations to administer transfers and eligibility without discrimination or regard to disputes with domestic organizations.

108.    By misusing its gatekeeping role to obstruct Bohush's eligibility and disparage NDF, ICAONA interfered with the business and contractual relationships between NDF, its athletes, and the FMJD. Such conduct was neither privileged nor justified, as it served no legitimate governance purpose but was instead calculated to deter participation in the Miami Open and undermine NDF's ability to attract players and sponsors.

109.    These actions were not taken to further ICAONA's legitimate interests as a nonprofit but to suppress competition and marginalize Rudnitsky. As a direct result of ICAONA's interference, Rudnitsky suffered significant financial and reputational harm. Player withdrawals and inducements not to attend deprived the Miami Open 2025 of expected participation.

110.    Due to ICAONA's actions, the number of expected participants declined substantially, resulting in a reduction of entry fees and forcing the organizers to incur additional

expenses to cover hotel costs, venue fees, and event logistics.

111.     Advertising expenditures lost their intended value, sponsorship opportunities were lost, and the reputational harm continues to limit Rudnitsky's ability to organize and promote events in the United States.

112.     Accordingly, ICAONA's conduct constitutes tortious interference with business and advantageous relationships under Florida common law. Rudnitsky is entitled to damages for lost business opportunities and all consequential losses resulting from ICAONA's intentional and unjustified conduct.

113.     Wherefore, Rudnitsky asserts a claim against ICAONA based on tortious interference with business and advantageous relations.

## COUNT III.
## BREACH OF FIDUCIARY DUTIES.

114.     Plaintiff incorporates by reference the allegations in Paragraphs 1 to 71, and further alleges as follows.

115.     Florida law imposes explicit fiduciary obligations on directors and officers of not-for-profit corporations. Under Fla. Stat. § 617.0830(1), each director is required to act in good faith, with the care that an ordinarily prudent person in a similar position would exercise under comparable circumstances, and in a manner the director reasonably believes to be in the best interests of the corporation.

116.     While directors of § 501(c)(3) organizations generally enjoy limited immunity, Fla. Stat. § 617.0834 makes clear that this protection does not extend to conduct that breaches these duties where the breach involves a violation of law, a transaction conferring improper personal benefit, or reckless actions taken in bad faith, with malicious purpose, or in wanton and willful disregard of duties.

117.     The fact above demonstrates that ICAONA's leadership breached these fiduciary duties and acted outside the lawful scope of its authority. On March 3, 2025, the FMJD Executive Council formally confirmed that ICAONA remained its recognized U.S. member federation.

118.     At that same meeting, Rudnitsky presented a written letter affirming that recognition, leaving no doubt as to his position or that of the NDF.

119.     Nevertheless, ICAONA's officers, fully aware of this record, chose to assert the opposite, accusing Rudnitsky of denying ICAONA's legitimacy and escalating that knowingly false claim into charges of "fraud."

120.     These accusations became the stated grounds for disciplinary measures in May and June 2025, resulting in a two-year suspension followed by a lifetime ban. That ICAONA proceeded despite possessing written proof to the contrary underscores that its officers acted in bad faith and in reckless disregard of their fiduciary duties.

121.     The process by which the sanctions were imposed was equally inconsistent with the statutory duty of care. Rudnitsky was never given notice of the meetings in which his discipline was discussed, was denied the opportunity to be heard, and has never been provided minutes or records of the Board's decision concerning a purported disqualification.  That was a manifestation of an un-American way to handle fair, unbiased, and open competition across the board, in all walks of life, particularly in sports-related events, providing equal opportunities to all bona fide competitors.

122.     The absence of even basic procedural safeguards demonstrates a willful disregard for fairness and a failure to exercise the diligence required by § 617.0830. This pattern of misconduct extended beyond the disqualification itself and into ICAONA's governance framework. On April 5, 2025, at the height of the conflict, ICAONA's Board amended its Statutes

to restrict membership to U.S. citizens and permanent residents and to condition access to FMJD-sanctioned tournaments on the payment of ICAONA dues.

123.     These amendments were transparently retaliatory; they were not aimed at promoting checkers in the United States but at excluding NDF players, undermining the Miami Open 2025, and consolidating control within ICAONA's leadership. By enacting discriminatory rules inconsistent with the organization's mission and international standards, ICAONA's officers exceeded their lawful authority.

124.     The treatment of minor athlete Yevhen Bohush further exemplifies this lack of good faith. ICAONA initially refused to process his nationality transfer unless a $100 membership fee was paid, despite FMJD's rules not containing such a requirement. When the Bohush family agreed to make the payment, ICAONA nevertheless rejected it because the funds were submitted for Bohush by Rudnitsky acting through NDF.

125.     By moving the goalposts in this manner, ICAONA invented new conditions of eligibility not found in its own Bylaws, which contain no prohibition on third-party payments made on behalf of members. Conditioning Bohush's eligibility on direct ICAONA membership and payments, not only exceeded FMJD's rules but also demonstrated how ICAONA's leadership weaponized its gatekeeping role against minors and families who sought fair participation.

126.     FMJD itself confirmed the severity of these breaches. In a letter dated June 15, 2025, FMJD advised ICAONA that its accusations against Rudnitsky were unfounded and affirmed his right to participate in international competition, including the U.S. Championship scheduled for November 2025.

127.     Less than a month later, on July 7, 2025, FMJD's Executive Council warned ICAONA that its discriminatory practices violated FMJD's governance standards and directed

24

ICAONA to correct them, expressly cautioning that sanctions could be imposed against ICAONA if it failed to do so. These interventions by the international governing body underscore that ICAONA's officers were not acting in the best interests of the corporation or the sport but instead in bad faith and with retaliatory purpose.

128.    Moreover, on August 28, 2025, Rudnitsky discovered yet another gross violation of ICAONA's Bylaws when he noticed his FMJD database status had been altered from "Country, USA, Flag, USA" to "Country, FMJD (independent player), Flag, none."

129.    This stripped him of national affiliation and would have forced him, a five-time U.S. Champion and reigning World Veteran Champion, to compete at the Miami Open 2025 without a flag or country. ICAONA appears to have falsely informed FMJD that his two-year suspension rendered him an "inactive member."

130.    This claim was wholly unlawful. ICAONA's Bylaws (Chapter 4, § 7) distinguish only between (i) temporarily suspended members and (ii) expelled members. Expulsion occurs only after a third violation, and a separate decision to expel has been made. Suspension does not terminate membership.

131.    By recasting suspension as expulsion, ICAONA fabricated a non-existent "inactive" status.

132.    Such misrepresentation not only violated ICAONA's Bylaws but also breached the principle of legal certainty, since no defined criteria for "inactive" status exist. Moreover, ICAONA has no legal authority to strip a U.S. citizen of "sporting citizenship" or to revoke their national flag, powers reserved to FMJD under international rules. Presenting Rudnitsky as a "former" or "inactive" member to FMJD thus amounted to fraudulent misrepresentation, discrimination, and abuse of authority. These actions violated FMJD Bylaws (Chapter 2, Articles

4.1, 7 & 11.1, prohibiting discrimination and requiring compliance with FMJD rules) and U.S. nonprofit law governing § 501(c)(3) corporations, which require nondiscriminatory governance and prohibit directors from exceeding corporate authority.

133.    By mischaracterizing Rudnitsky's status in bad faith, ICAONA's leadership not only harmed his reputation before "hundreds of thousands of players worldwide" but also exposed the organization to liability for reputational and financial damages.

134.    Rudnitsky, a long-standing member and one of the United States' most accomplished draughts players, was stripped of membership rights and excluded from international competition based on a false narrative advanced by ICAONA's officers.

135.    Rudnitsky's reputation was damaged within the global draughts community, and sponsorships, coaching opportunities, and professional relationships were disrupted. The retaliatory amendments to ICAONA's Statutes further undermined the Miami Open 2025, an event for which significant financial commitments had already been made, including deposits for venues and contracts for advertising.

136.    These actions inflicted not only reputational harm. However, this also results in concrete financial losses.

137.    Taken together, ICAONA's suspension, disqualification, and retaliatory amendments represent a breach of fiduciary duty within the meaning of Fla. Stat. §§ 617.0830 and 617.0834 and constitute ultra vires conduct under § 617.0304. Because these acts were undertaken in bad faith, with retaliatory purpose, and in willful disregard of the duties imposed by law, ICAONA's directors are personally liable for the damages that flowed from their misuse of corporate authority and violation of the fiduciary obligations owed to members such as Rudnitsky.

138.    Wherefore, Rudnitsky is entitled to relief under the cause of action of breach of

fiduciary duty.

## COUNT IV.
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. 501.201-213.

139.   Plaintiff incorporates by reference Paragraphs 1 to 71 above and further alleges as follows.

140.   FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Its protections are broad, extending to "the advertising, soliciting, providing, offering, or distributing… any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value." Fla. Stat. § 501.203(8). Courts have emphasized that FDUTPA is not limited to traditional consumer transactions; nonprofit entities also fall within its scope when they solicit participation, impose fees, or provide competitively significant services.

141.   By virtue of its FMJD recognition, ICAONA holds a gatekeeping role in determining access to international draughts tournaments in the United States. Participation in those tournaments, offering opportunities for ranking, prize funds, and international recognition, constitutes a service of significant value. Against this commercial backdrop, ICAONA's actions were both unfair and deceptive.

142.   ICAONA's decision to disqualify Rudnitsky on the claim that he denied ICAONA's FMJD legitimacy was a knowingly false representation.

143.   The Board Minutes of March 3, 2025, of the FMJD Executive Board show Rudnitsky's written acknowledgment of ICAONA's role, as well as Azimullah's correspondence afterward, all of which confirmed that ICAONA's recognition was never in dispute.

144.   Advancing the opposite narrative to FMJD and to the draughts community misled

players and sponsors into believing Rudnitsky engaged in fraud, thereby discouraging participation in the Miami Open and undermining his professional standing.

145.    Furthermore, the amendments to ICAONA's Bylaws were adopted without quorum or meaningful procedure. These amendments restricted membership to U.S. citizens and permanent residents, and conditioned access to FMJD tournaments and preliminary rounds on payment of ICAONA dues. ICAONA also developed a practice of conditioning nationality transfers and tournament eligibility on mandatory ICAONA membership and payments made directly to ICAONA itself, refusing to honor valid payments made on behalf of athletes by third parties such as NDF.

146.    The refusal to accept minor athlete Bohush's $100 membership fee solely because it was submitted through NDF is a prime example. By rejecting this payment and simultaneously labeling NDF as a "shadow self-proclaimed organization,"

147.    ICAONA misled players and their families into believing that ICAONA membership and direct payments were required under FMJD rules, when in fact no such requirement existed. These practices were not only coercive but also deceptive, creating false conditions of participation to compel membership and fees.

148.    ICAONA's outward solicitations and tournament regulations promoted its events as FMJD-sanctioned and open to international participation, while in practice, they imposed hidden restrictions and advanced false grounds for disqualification.

149.    The denial of athlete Bohush's nationality change request unless he joined ICAONA and paid a fee is one example of how this authority was misused to coerce compliance under misleading pretenses. These practices exemplify the type of unfair competition and deceptive methods of solicitation that FDUTPA was enacted to prevent.

150.     Wherefore, Rudnitsky is entitled to relief under FDUTPA, including damages for financial and reputational losses, injunctive relief prohibiting ICAONA from conditioning tournament access on unlawful membership requirements, and recovery of attorneys' fees as authorized by Fla. Stat. § 501.2105.

## COUNT V.
## CIVIL CONSPIRACY.

151.     Plaintiff incorporates by reference the allegations in Paragraphs 1-71 above and further alleges as follows.

152.     As stated above, ICAONA's actions also show a clear violation of civil conspiracy under Florida law. To state a cause of action for civil conspiracy, a plaintiff must demonstrate: "(1) an agreement between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the execution of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of said acts." *Plastiquim S.A. v. Odebrecht Constr., Inc.*, 337 So. 3d 1270, 1273 (Fla. 3d DCA 2022) (citing *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)).

153.     Moreover, Florida courts require that a conspiracy claim be tied to an actionable underlying tort or wrong. *Id.* There is no freestanding cause of action for "civil conspiracy"; instead, "the conspiracy is merely the vehicle by which the underlying tort was committed, and the allegations of conspiracy permit the plaintiff to hold each conspirator jointly liable for the actions of the coconspirators." *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3d DCA 2019). A conspirator need not have taken part in every stage of the scheme. It is sufficient that the conspirator was aware of the unlawful purpose and provided assistance in some form to be held responsible for the acts of others. *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987) (citing *Karnegis v. Oakes*, 296 So. 2d 657 (Fla. 3d DCA 1974)).

154.     The evidence indicates that ICAONA's officers collaborated with outside actors,

including disqualified Pan-American Confederation President Clifton Agata, to disseminate defamatory statements and undermine the Miami Open 2025. Turiy initiated this campaign by sending defamatory accusations to FMJD and, in chat communications, urged others to "thank Agata and ask him to continue supporting us."

155.    Acting on ICAONA's encouragement, Agata circulated global "Protect ICAONA" letters without ever contacting Rudnitsky to verify the facts. Instead, he adopted ICAONA's false narrative to serve his own interests in opposing the FMJD Executive Council and Ethics Committee, which had disqualified him.

156.    ICAONA representatives further amplified these falsehoods through chat messages, accusing Rudnitsky and FMJD officials of corruption and calling for their disqualification from international competition. These coordinated communications, orchestrated by ICAONA, were not isolated disputes but part of a concerted scheme to damage Rudnitsky's reputation and suppress NDF's legitimacy.

157.    The conspiracy extended beyond letters and messaging. ICAONA and its allies directly interfered with the Miami Open by pressuring athletes not to participate in the event. Individuals confirm that players received inducements, including offers of money, not to attend, while others were contacted personally and urged to withdraw on the pretext that the tournament was "illegitimate."

158.    These coordinated acts, designed to defame Rudnitsky and exclude him and his students from international play, caused concrete reputational, financial, and competitive harm. The overt acts, defamatory letters, worldwide solicitations, inducements to players, and misuse of membership authority resulted in significant damage. Under Florida law, ICAONA and its co-conspirators are jointly and severally liable for the damages flowing from this conspiracy.

## COUNT VI.
## FEDERAL ANTITRUST SHERMAN ACT, §§ 1–2 (15 U.S.C. §§ 1–2)

159.     Plaintiff incorporates by reference the allegations in Paragraphs 1 to 71 above and further alleges as follows.

160.     ICAONA's actions constitute unlawful restraints of trade and exclusionary conduct under federal antitrust law. Section 1 of the Sherman Act prohibits contracts, combinations, or conspiracies in restraint of trade or commerce. Section 2 prohibits monopolization and attempted monopolization, which require proof of monopoly power in a relevant market and the willful acquisition or maintenance of that power through exclusionary conduct. Antitrust law applies to sports governing bodies, including amateur and nonprofit associations, where their rules or practices unreasonably restrain competition. See *NCAA v. Bd. of Regents of Univ. of Okla*., 468 U.S. 85 (applying § 1 to NCAA television plan under rule-of-reason analysis, finding restraint where it limited output and raised prices); See also *NCAA v. Alston*, 594 U.S. 69 (2021).

161.     The relevant market here is the organization, governance, and sanctioning of FMJD-recognized international draughts competitions in the United States, including access to eligibility pathways, tournament entries, international player ratings, and qualifying events for FMJD championships.

162.     As mentioned above, ICAONA, led by Turiy, have targeted, since the day of registration, a new organization, registered in Florida,  On June 4, 2024, Rudnitsky with fellow players registered a new not-for-profit Florida corporation, the National Draughts Federation of the United States Inc., with the principal office at 2739 NW 54th Ave, Margate, FL 33063, registered agent Andriy Shcherbatyuk.  Rudnitsky became its Vice President.

163.     This market impacts interstate and foreign commerce, as evidenced by ICAONA's organization of national qualifiers, such as the U.S. Open and U.S. Championship, which include

qualification rounds that draw participants from across the United States and internationally. The actions of ICAONA have not only harmed individual players and organizations but have also significantly disrupted the broader draughts market. See Exhibit L.

164.    ICAONA, where Turiy acts behind the scenes, wields an unjust monopoly power in this market. This is not a result of fair competition, but by virtue of its exclusive FMJD recognition as the U.S. federation since 2005. This recognition grants it control over FMJD-sanctioned events, player eligibility under the U.S. flag, and access to international rankings, powers no other U.S. entity holds. This is a clear violation of the Sherman Act and a situation that demands legal intervention.

165.    ICAONA, under Turiy, has unlawfully maintained and attempted to extend this monopoly through exclusionary and anticompetitive practices that lack procompetitive justification, harming competition, players, and alternative organizers, such as NDF. First, under § 1, ICAONA imposed an unlawful tying arrangement by conditioning access to essential FMJD-sanctioned tournaments on mandatory ICAONA membership and payment of dues.

166.    Following the April 5, 2025, amendments to its Bylaws, adopted without a quorum, discussion, or proper minutes, in violation of its own rules, ICAONA restricted membership to U.S. citizens and permanent residents and barred non-members from participating in FMJD qualifiers, such as the U.S. Open 2025 and U.S. Championship 2025. FMJD ruled these practices discriminatory and unlawful, demanding cessation by July 28, 2025.

167.    That tying exploits ICAONA's monopoly over FMJD's access to force unwanted memberships, foreclosing competition from independent players and organizations like NDF, and affecting a substantial volume of commerce (e.g., tournament entries, sponsorships, and international participation).

168.     Second, under § 2, ICAONA engaged in exclusionary conduct to monopolize the U.S. draughts market by suppressing NDF as a rival promoter and disqualifying Rudnitsky on knowingly false grounds, an apparent injustice that cannot be overlooked.

169.     Despite Rudnitsky's repeated acknowledgments of ICAONA's FMJD status, ICAONA circulated baseless accusations to FMJD and third parties, claiming that Rudnitsky had denied ICAONA's legitimacy, which harmed participation in and sponsorships for the Miami Open 2025.

170.     Following the meeting of the FMJD's Executive Committee on March 3, 2025, Rudnitsky, despite the challenges, continued to support ICAONA, and President Azimullah acknowledged the resolution, wishing for its success without interference.

171.     Yet, ICAONA proceeded with a letter of warning on May 15, 2025, followed on June 4, 2025, with a two-year suspension (with an implied threat of a lifetime disqualification).  Thus, ICAONA barred Rudnitsky from ICAONA events and, by extension, the FMJD-qualifying U.S. Championship 2025, despite lacking the authority to disqualify independent players from international competition.

172.     Rudnitsky deems it not a coincidence that ICAONA's decision to suspend him was made on June 4, 2025, which marked exactly the date of registering NDF.

173.     FMJD rejected these actions as unfounded, affirming Rudnitsky's eligibility and granting patronage over the Miami Open 2025. This rejection by a neutral and authoritative body, such as FMJD, underscores the baselessness of ICAONA's tactics, including false accusations, discriminatory eligibility rules, and improper disqualification. These actions were not pro-competitive (with no evidence of harm to draft integrity) but exclusionary, designed to entrench ICAONA's monopoly by deterring players from alternatives, reducing Miami Open turnout, and

foreclosing NDF's expansion efforts.

174.    The direct effects of ICAONA's actions constitute antitrust injury, stifling draughts growth via NDF, reducing player options, and causing lost Miami Open revenues, sponsorships, and Rudnitsky's reputational and financial damages as a promoter and player. These effects are not just isolated incidents, but they have a significant impact on the entire draughts community, affecting the growth and diversity of the sport. Rudnitsky reserves the right to seek treble damages, injunctive relief, and attorneys' fees in federal court unless ICAONA retracts the disqualification and ceases these practices.

175.    The Sherman Act permits a private cause of action, allowing private parties to sue for damages or seek injunctive relief when antitrust violations harm them. Successful plaintiffs can recover "treble damages" (three times the amount of actual damages), attorney's fees, and costs of suit.

176.    Wherefore, the plaintiff is entitled to relief under the Sherman Act.

## COUNT VII.
## BREACH OF CONTRACT; VIOLATION OF MEMBER'S RIGHTS

177.    Plaintiff incorporates by reference allegations in Paragraphs 1 to 71 and further alleges as follows.

178.    Following Rudnitsky's disqualification, ICAONA attempted to justify its actions through misinterpretations of FMJD governance. In a memorandum, Azimullah relied on Article 44 of the FMJD Statutes to claim that FMJD lacked authority to interfere with ICAONA's decisions, and he further invoked Proposal No. 11 of the FMJD General Assembly concerning "inactive members" as a basis for sanctions.

179.    Both arguments were untenable. Article 44 grants autonomy to national federations only in internal association matters; it does not extend to FMJD-sanctioned qualifying tournaments

such as the U.S. Championship.

180.    Likewise, Proposal No. 11 bears no relation to disqualification, nor to Rudnitsky, who is among ICAONA's most active members and an accomplished U.S. Champion and reigning World Veteran Champion.

181.    The FMJD Executive Council rejected ICAONA's reasoning. In its June 15, 2025, ruling, the General Secretary confirmed that the accusations against Rudnitsky were unfounded and affirmed his continued eligibility to compete in FMJD competitions, pending review by the Ethics Committee.

182.    Shortly thereafter, leading referees, coaches, and players submitted a joint objection, expressing their collective condemnation of ICAONA's reliance on Article 44 and Proposal No. 11 as bad-faith distortions intended to evade oversight and perpetuate discrimination.

183.    FMJD then issued a formal directive requiring ICAONA to remove discriminatory restrictions from the U.S. Championship regulations and to admit all

184.    Eligible American players. The directive warned that failure to comply could result in the Championship losing FMJD qualifying status and ICAONA itself facing expulsion from FMJD membership.

185.    Nevertheless, ICAONA refused to comply. In a letter dated August 13, 2025, ICAONA's General Secretary, Yevgeniy Sklyarov, confirmed that Rudnitsky remained barred not only from ICAONA's internal activities but also from the 13th U.S. Open and the 2025 U.S. Championship, which is a qualifier for FMJD-sanctioned tournaments. This overreach exceeded ICAONA's authority, directly contravened the FMJD's rulings, and amounted to an unlawful disqualification from international competition.

186.    Taken together, the Azimullah memorandum, FMJD's June 15 ruling, the June 18

objections, FMJD's July 7 directive, and Sklyarov's August 13 letter demonstrate that ICAONA knowingly disregarded binding oversight, distorted governing statutes, and weaponized its FMJD recognition to exclude Rudnitsky.

187.    The Ethics Committee's decision on October 1, 2025, annulling the disqualification of Rudnitsky and confirming his right to participate in all international tournaments, including the U.S. Championship, overruled ICAONA's actions under Turiy.

188.    That disposition was also endorsed or confirmed in the Report of the delegates to the 41st General Assembly of FMJD, which took place in Turkey on October 26, 2025.

189.    This course of conduct entrenched a pattern of discrimination and abuse of authority that undermines FMJD governance and inflicted direct harm on Rudnitsky's competitive rights, professional reputation, and standing in the international draughts community.

## COUNT VIII.
## DECLARATORY RELIEF.

190.    Plaintiff incorporates by reference Paragraphs 1 to 71 above and further states as follows.

191.    The declaratory relief is warranted both under the State law and under the federal law.  In Florida, to obtain declaratory relief, a plaintiff must demonstrate several key elements, as established in case law, such as *Persaud Properties FL Investments, LLC v. Town of Fort Myers Beach*, Florida, M.D. Fla., 2022, 593 F.Supp.3d 1129. These elements include: a genuine and present need for the declaration. The declaration must relate to existing or ascertainable facts or a present controversy.  A right, power, privilege, or immunity of the plaintiff must depend on these facts or the applicable law.  There must be individuals with an actual, present, adverse interest in the matter.  All parties with antagonistic interests must be properly before the court.

192.    The request must not be merely for legal advice or an answer to hypothetical

questions. Essentially, there must be a genuine dispute over a current legal issue. The Declaratory Judgment Act is interpreted broadly to help resolve uncertainty about rights and status, particularly when future litigation is likely, even if the cause of action hasn't fully developed yet.

193. Based on the foregoing facts stated above, declaratory relief is warranted here. ICAONA's actions constitute a pattern of unlawful conduct under Florida and federal law, including breach of fiduciary duty, tortious interference with advantageous business relationships, civil conspiracy, violations of the Florida Deceptive and Unfair Trade Practices Act, and exclusionary practices prohibited by the Sherman Act.

194. The sanctions imposed against Rudnitsky were retaliatory, baseless, and carried out in direct contravention of FMJD statutes and binding directives. No valid legal or procedural basis existed for the suspension or disqualification.

195. By weaponizing its FMJD recognition to exclude rivals, ICAONA acted in bad faith and in violation of both its fiduciary duties as a Florida nonprofit corporation and its obligations to the international body it purports to represent.

196. Wherefore, Plaintiff Rudnitsky is entitled to declaratory relief in this action, on all claims and issues that qualify for declaratory relief asserted against ICAONA.

## COUNT IX.
## INJUNCTIVE RELIEF

197. Plaintiff incorporates by reference Paragraphs 1 to 71 above and further states as follows.

198. The facts above satisfy the elements for claiming a temporary/preliminary Injunction. A party seeking a temporary or preliminary injunction in Florida must establish, with clear and definite factual findings, the following four elements: Irreparable Harm: The moving party will suffer irreparable injury unless the injunction is issued. This means monetary damages

cannot adequately compensate for the harm.  Inadequate Legal Remedy: There is no adequate remedy at law available to the party.  Substantial Likelihood of Success on the Merits: The moving party has a substantial likelihood of prevailing in the underlying case at a full trial.  Public Interest Served: The entry of the injunction will serve, or at least not disserve, the public interest.  The Third District Court of Appeal also requires the plaintiff to show that the threatened injury outweighs any possible harm to the adverse party (a "balance of hardships" test).  See *Jouvence Ctr. for Advanced Health, LLC v. Jouvence Rejuvenation Ctrs., LLC*, 14 So. 3d 1099 (Fla. 4th DCA 2009) (outlines the four core elements and the need for specific factual findings).  *Fla. Ga. Grove, LLP v. Collier Cty*., 95 So. 3d 948 (Fla. 2d DCA 2012) (discusses the purpose of a temporary injunction as preserving the status quo).

199.    Alternatively, Rudnitsky seeks a permanent injunction, which must include the following elements, as required by law.  To obtain a permanent injunction (granted as part of a final judgment), a plaintiff must satisfy a similar but slightly different set of factors: Clear legal right/irreparable harm. The plaintiff must have a clear legal right that has been violated or is threatened with violation, resulting in irreparable harm.  Inadequate legal remedy: remedies available at law, such as monetary damages, are inadequate to compensate for the injury.  Balance of Hardships: The remedy in equity is warranted after considering the balance of hardships between the plaintiff and defendant.  Public Interest Not Disserved: The public interest would not be harmed by the permanent injunction. *Dep't of Health and Rehab. Services of State of Fla. v. Weinstein*, 447 So. 2d 345 (Fla. 4th DCA 1984) (specifies the "clear legal right" standard). *Smart Pharmacy, Inc. v. Viccari*, 213 So. 3d 986 (Fla. 1st DCA 2016) (provides an example of when monetary damages are difficult to ascertain, thus making the legal remedy inadequate).

200.    These prongs and requirements are satisfied on the facts of this case.

201.    As an immediate issue, Rudnitsky requests this Court to issue an Order constituting Injunctive Relief, namely to prohibit ICAONA and its executive officers to ban a participation of Rudnitsky, an American citizen, in a Tournament to be held in Miami Beach on November 1 to 30, in accordance with ICAONA's own announcement, promotion, and publication, and to accept, again, Rudnitsky's fee.

202.    ICAONA's conduct of banning an American citizen's participation in an open sports tournament on American soil should be considered un-American. It should not be tolerated, as it would tarnish the reputation of the popular game of checkers in the United States.

203.    Wherefore, Plaintiff Rudnitsky is entitled to injunctive relief in this action.

## COUNT X.
## SEVERE EMOTIONAL DISTRESS

204.    Plaintiff incorporates by reference the allegations in Paragraphs 1-71 above.

205.    As stated above, for 18 months, Rudnitsky has been under pressure from ICCONE and Turiy to deprive him of essentially the achievements of a lifetime.  ICCONA, under Turiy's management, has targeted Rudnitsky's reputation in the international community of checkers, which has been built over 60 years, and his well-being, exposing him to defamatory statements.

206.    As a result, Rudnitsky developed a state of chronic stress, chronic insomnia, anxiety, headaches, hand tremors, obsessive thoughts, and other conditions requiring medical intervention.  Without explaining the medical issues and medications that his condition has required, the medical records and bills will be submitted at trial

207.    Wherefore, Rudnitsky is entitled to recovery under the claim for severe emotional distress.

***

The undersigned counsel of record in this action wishes to attribute credit to prior research

of facts, documents, and providing the primary input in this complaint, to Chase Lawyers, a law

firm in New York and Florida, at 21 SE 1st Ave. Suite 700, Miami, FL 33131, and 1345 Avenue

of the Americas, 2nd floor, New York, NY 10105.  See pre-litigation letter and Exhibits,

incorporated herewith by reference, and attached in Exhibits.

## PRAYERS FOR RELIEF

Accordingly, Rudnitsky demands the following:

1.      Damages on all Counts that are asserted in this action. Damages should be sufficient

to redress reputational injury, lost business opportunities, and other consequential damages arising

from ICAONA's unlawful actions.

2.   Injunctive and Declaratory Relief, namely rescission of the suspension and

disqualification imposed against Rudnitsky, together with written confirmation of his full eligibility

to participate in all FMJD-sanctioned competitions, including but not limited to the U.S.

Championship and U.S. Open.

3.   Injunctive and Declaratory Relief should include a formal withdrawal and correction of

all defamatory statements made to FMJD, national federations, players, coaches, or third parties

alleging that Rudnitsky denied ICAONA's FMJD recognition, engaged in fraud, or acted

unlawfully, including, without limitation, comments made via the Zelle payment memo.

4.   Injunctive and Declaratory Relief should obligate ICAONA to withdraw defamatory

references to NDF as illegitimate, "self-proclaimed," or otherwise lacking lawful standing, and

recognition that NDF is a duly incorporated nonprofit entity in the United States.

5.   Injunctive and Declaratory Relief should include written assurances that ICAONA and

its officers will cease interfering with the Miami Open 2025 and any other draughts events

organized by NDF or Rudnitsky, including by contacting players, coaches, sponsors, or federations

to dissuade participation. The Declaratory and Injunctive Relief should entail good-faith processing of all athlete transfers, including minors, in accordance with FMJD statutes and without conditioning eligibility on ICAONA membership or other unlawful requirements.

6.  Injunctive and Declaratory Relief should include or imply an acceptance of bona fide payments made on behalf of athletes and families, without discriminatory rejection based on the identity or organizational affiliation of the payor.

Dated: November 2, 2025

Respectfully submitted,

_____/signed George Lambert/
George Lambert, Esq.
The Lambert Law Firm
FL bar 1022697
421 Poinciana Drive, #1422,
Sunny Isles Beach, FL 33171;
Email: office.law.323@gmail.com
Tel. (305) 938 0710
Attorney for Plaintiff Alexander Rudnitsky

## VERIFICATION OF COMPLAINT

I, Alexander Rudnitsky, plaintiff under the above Complaint, state and depose that to the best of my knowledge, the allegations of fact above are true and correct.

Dated: November 2, 2025

ALEXANDER RUDNITSKY

39



**Barry Oliver Chase**
**Senior Partner**
**Barry@ChaseLawyers.com**
**Florida, New York, District of**
**Columbia, US Supreme Court**

**Gregory Bloom**
**Partner**
**Greg@ChaseLawyers.com**
**Florida**

**Alexander Loveyko**
**Partner**
**Alex@ChaseLawyers.com**
**New York**

**Anastasia Latman**
**Associate Attorney**
**Anastasia@ChaseLawyers.com**
**New York**

**JD O'Connor**
**Associate Attorney**
**justin@ChaseLawyers.com**
**Florida**

**Tomas Michelson**
**Associate Attorney**
**tomas@ChaseLawyers.com**
**Florida**

Website: www.ChaseLawyers.com

**IP, Entertainment, Arts, Internet and Media Law**

21 SE 1st Ave. Suite 700 | 1345 Avenue of the
Miami, FL 33131 USA | Americas, 2nd floor,
Office (305) 373-7665 | New York, NY 10105 USA
Fax (305) 373-7668 | Office (212)-601-2762

September 16, 2025

To:
Board of Directors
International Checkers Association of North America ("ICAONA")
12472 Berkeley Square Dr.
Tampa, FL 33626
Attn: Rudi Azimullah

**Via Email to azimurs@gmail.com; rudi.azimullah@hotmail.com;**
**ltur@optionline.net; ltur1@outlook.com and Certified Mail**

**RE: Unlawful Disqualification, Discrimination and Abuse of Authority by ICAONA**

Dear Members of the Board of Directors,

This demand letter (the "Letter") is submitted on behalf of our client, Mr. Alexander Rudnitsky ("Client"), a five-time U.S. Champion, two-time World Veteran Champion, long-term member, donor, and Patron of the International Checkers Association of North America (hereafter "ICAONA" or "You"). Mr. Rudnitsky is also the founder of the National Draughts Federation of the USA ("NDF"), a nonprofit organization dedicated to promoting draughts in the United States, including organizing the MIAMI OPEN 2025. This Letter concerns ICAONA's unlawful disqualification of Mr. Rudnitsky, dissemination of defamatory statements, adoption of discriminatory membership and tournament rules, and abuse of its nonprofit authority, all of which constitute actionable misconduct under Florida and federal law, as well as violations of FMJD principles and ICAONA's own governing documents.

## I. Factual Background

Our Client was an integral part of establishing ICAONA in 2002 and has remained an active member since that time. He served as Vice President until spring 2024, when he resigned from that position while continuing his

membership. Over the years, our Client contributed financially as a Patron and organized multiple U.S. Championship events on behalf of ICAONA. In 2024, while still a member of ICAONA, our Client and other players founded the NDF, a nonprofit created to expand draughts in the United States and to organize the MIAMI OPEN 2025.

From the outset, NDF and our Client expressly acknowledged ICAONA as the recognized member for the United States with the World Draughts Federation (hereafter "FMJD") and at no time did our Client deny ICAONA's FMJD status. Please see Exhibit A, documents showing our Client and NDF's recognition and support of ICAONA as the main draughts organization in the USA. Following the creation of NDF and the announcement of the MIAMI OPEN, ICAONA leadership, began circulating accusations to FMJD alleging that our Client denied ICAONA's legitimacy. These statements were made to international governing bodies and third parties, and they were relied upon by players and sponsors in making participation decisions regarding the MIAMI OPEN. During this time, FMJD issued multiple letters of support to our Client, recognizing his contributions and confirming that NDF was operating fully within the FMJD framework. Please see Exhibit B showing various letters of support from FMJD President, Jacek Pawlicki, to NDF organizer.

Throughout this same period, our Client continued to demonstrate good faith toward ICAONA itself, both by making financial contributions, which ICAONA accepted and acknowledged with written appreciation, and by reaching out directly to President, Rudi Azimullah ("Mr. Azimullah") and Technical Director, Luba Turiy ("Ms. Turiy"), to propose cooperation between ICAONA and NDF. These actions underscore that our Client consistently recognized ICAONA's FMJD role and sought constructive collaboration, even as ICAONA representatives were actively attempting to undermine him and suppress the MIAMI OPEN by spreading false accusations. Attached hereto as Exhibit C. On March 3, 2025, the FMJD Executive Board convened a meeting with both ICAONA and NDF present. At that meeting, FMJD confirmed that NDF and our Client recognized ICAONA's FMJD role, reviewed a letter signed by our Client affirming ICAONA's recognition, and found no objection to NDF's name. Copy of the meeting minutes are Attached hereto as Exhibit D.

Following the March 3 meeting, our Client continued to extend recognition and support to ICAONA in writing. On March 5 our Client wrote directly to Mr. Azimullah offering cooperation and assistance and reaffirming ICAONA's status. On March 8, President Azimullah responded, acknowledging that after the Executive Board meeting he would not interfere with the MIAMI OPEN 2025 and even wishing our Client success, though he stated he would not participate due to NDF's name. Please see Exhibit E attached showing NDF's ongoing support after the Executive Meeting and Mr. Azimullah's response. This response demonstrates that ICAONA's own President recognized that the dispute had been resolved at the FMJD level and that there was no barrier to the MIAMI OPEN proceeding.

On April 5, 2025, ICAONA purported to amend its Statutes in a manner that dramatically restricted rights and access. Whereas the prior Statutes (in force since 2002) permitted open membership to all U.S. players and

provided that sanctions were limited to ICAONA's internal activities, the new Statutes limited membership exclusively to U.S. citizens and permanent residents and conditioned participation in FMJD-sanctioned tournaments on ICAONA membership and dues. Copies of ICAONA's old and new bylaws are attached hereto as Exhibit F. These amendments were adopted without quorum or meaningful discussion, only eight members were present, and there is no record of proper voting or minutes. Importantly, even under the amended Statutes, ICAONA lacked authority to impose disqualification from FMJD competitions, yet it relied on these flawed provisions to justify punitive measures.

ICAONA immediately began applying these new rules in a discriminatory and coercive manner. In the published regulations for the U.S. Open 2025, ICAONA required U.S. participants to join ICAONA and pay membership dues as a condition of competing, even though the tournament served as a qualifier for FMJD events. The same approach was taken with minor athlete Yevhen Bohush ("Bohush"), whose June 2025 application to change his sporting nationality from Ukraine to the United States was conditioned on ICAONA membership. Under FMJD regulations, a flag-change transfer is strictly a matter of the new federation submitting the transfer to FMJD with the required €50 notification fee; there is no requirement that the athlete join a private corporation or pay additional domestic dues. Nevertheless, ICAONA refused to process his application unless he joined ICAONA and paid a $100 fee, even though FMJD rules impose no such requirement. Further, when Bohush attempted to comply, ICAONA rejected the $100 payment because it was issued by NDF on behalf of the player, demonstrating that its objection was not to the form of payment but to the association with NDF. On September 5, 2025, ICAONA returned the $100 via Zelle with the notation: *"Refund of check #1005 of 08/28/25. Payment not accepted due to pending investigation and litigation. ICAONA has no business relations with NDF."* Please see Exhibit G attached hereto for reference.

 In correspondence, ICAONA went further, labeling NDF a "shadow" and "self-proclaimed" federation in order to delegitimize its role and to deter players from associating with it. These defamatory characterizations were paired with discriminatory restrictions aimed directly at minors, as ICAONA conditioned Bohush's eligibility for both U.S. competitions and his international transfer on membership in ICAONA, requirements that exceed FMJD's official rules and usurp FMJD's jurisdiction. Bohush's coach later appealed, and FMJD confirmed that ICAONA's conduct was unlawful and the FMJD Executive Board formally ruled that ICAONA's practices were discriminatory. Also attached as Exhibit G for reference.

At the same time, ICAONA escalated its campaign against our Client. On May 15, 2025, ICAONA first issued a written warning, followed by a June 4 decision imposing a two-year suspension and lifetime disqualification thereafter. The stated grounds for these sanctions were that our Client had created the NDF in a manner that allegedly undermined ICAONA's role as the national federation recognized by FMJD and PADCC, and that he had publicly denied ICAONA's status as the sole legitimate FMJD member in the United States. These charges were entirely baseless. Please see Exhibit H attached hereto for reference. From the outset, our Client and NDF expressly and repeatedly acknowledged ICAONA's recognition by FMJD, including in correspondence, website publications, and, most significantly, in the March 3, 2025, FMJD Executive Board meeting, where FMJD itself confirmed ICAONA's

status and called for cooperation. Despite this record, you proceeded with sanctions without providing our Client notice, without affording him an opportunity to be heard, and without issuing minutes or a record of decision.

Our Client subsequently submitted a complaint to the FMJD Ethics Committee. FMJD responded by letter confirming that the accusations against our Client were unfounded and affirming his eligibility to participate in tournaments pending review. Furthermore, FMJD President, sent a support letter establishing his patronage over the MIAMI OPEN 2025 Tournament. Attached as Exhibit I is a copy of FMJD's decision showing that a copy was sent to Mr. Azimullah and a letter of support from FMJD President. Despite FMJD's ruling and the Executive Council's confirmation that your discriminatory practices had to cease by July 28, you nevertheless proceeded to suspend our Client for two years, forbidding him from participating in ICAONA events. Attached as Exhibit J hereto for reference.

By extension, you are also seeking to bar him from competing in the upcoming 2025 U.S. Championship, scheduled for November 22-30, 2025, and from the opportunity to participate in FMJD competitions in 2026. This was not an internal ICAONA tournament; it was a qualifying event for FMJD competitions. You had no authority to prevent our Client from participating as an independent player and doing so amounted to an unlawful disqualification from international competition. In response, our Client has received numerous letters of support from referees, coaches, and players across the draughts community, both in the United States and abroad, protesting his disqualification and condemning ICAONA's conduct. Copies of these letters are also attached hereto as Exhibit J for reference. These facts, taken together, demonstrate a pattern of unlawful conduct by ICAONA and its officers that caused serious reputational, financial, and competitive harm to our Client. Based on this record, we set forth below the specific legal claims under Florida and federal law that your actions have violated.

## II. Claims
### Defamation

Under Florida law, defamation occurs where (1) a defendant publishes (2) a false statement of fact (3) to a third party (4) with fault amounting at least to negligence, and (5) resulting in damage. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Where, as here, the published statements falsely accuse a person of criminal activity, fraud, or unethical professional conduct, the publication constitutes defamation per se, and damages are presumed. On November 13, 2024, ICAONA member Ms. Turiy transmitted a letter to FMJD Tournament Director Siep Buurke ("Mr. Buurke") in which she accused our Client and the NDF of serious criminal and ethical misconduct. In her words, our Client and NDF engaged in *"forgery of signatures,"* committed *"fraud,"* and engaged in *"falsification and deception"* in connection with the MIAMI OPEN 2025. Statements from Ms. Turiy are attached hereto as Exhibit K.

The letter was published to FMJD at the highest level of international governance and, as our Client was informed by Mr. Buurke on December 10, 2024, it directly resulted in FMJD removing the MIAMI OPEN 2025 from

its official tournament calendar. Word of the accusations spread quickly within the international draughts community. In correspondence to FMJD on January 13, 2025, our Client further explained the tangible harm this caused. By that time, contracts had already been signed with hotels and the playing hall, with significant deposits paid months in advance. Advertising agreements were in place with a leading local magazine for monthly coverage, but due to ICAONA's actions, only a single publication was ultimately released.  Numerous invitations were sent to players and national federations, including letters providing visa support, and a prize fund of $9,000 was established. All of these investments were directly undermined by the fallout from Ms. Turiy's defamatory correspondence. The result was both serious financial loss and lasting reputational damage to our Client and the NDF.

Furthermore, on January 17, 2025, defamatory statements emerged in chat communications involving Ms. Turiy. In those messages, she accused our Client, NDF President Andrey Shcherbatyuk, and FMJD President Jacek Pawlicki of *"corruption"* and proposed that our Client be disqualified to prevent him from participating in the World Championship Final. Also attached hereto as Exhibit K. These accusations were equally false and calculated to harm our Client's professional standing within the global draughts community. Additional chat records obtained by NDF leadership confirmed that Ms. Turiy and ICAONA representatives went further by persuading players not to attend the MIAMI OPEN 2025, describing the tournament as "illegitimate," and addressing similar messages to other federations. In separate correspondence concerning minor athlete Bohush, ICAONA rejected a $100 membership payment solely because it was issued on his behalf by NDF. ICAONA then returned the payment via Zelle with a memo stating: "Refund of check #1005 of 8/28/25. Payment not accepted due to pending investigation and litigation. ICAONA has no business relation with NDF." This statement was false, published through the Wells Fargo/Zelle banking system, and constituted a written assertion that NDF was the subject of investigation and litigation. By embedding these falsehoods in permanent banking records, ICAONA effectively published defamatory content to third parties in a highly credible commercial channel. In that context, ICAONA went further and referred to NDF in writing as a "shadow self-proclaimed organization." This defamatory label targeted a lawfully incorporated U.S. nonprofit, falsely portraying NDF as illegitimate and unlawful. The statement not only impugned NDF's legal standing but also sought to undermine its business reputation with sponsors, federations, and the broader draughts community.

Florida courts have long held that accusations of fraud, forgery, and deception fall within the narrow class of defamation per se, because they necessarily impute dishonesty and unethical conduct. *Id.* Where defamation is actionable per se, damages are presumed, and punitive damages may be awarded even absent proof of actual damages, provided the statements were made with malice or ill will. *Saunders Hardware Five and Ten v. Low*, 307 So. 2d 893 (Fla. 3d DCA 1975), cert. denied, 330 So. 2d 21 (Fla. 1976); *Bobenhausen v. Cassat Ave. Mobile Homes, Inc.*, 344 So. 2d 280 (Fla. 1st DCA 1977). Here, the context and content of the publication demonstrate express malice. As Florida courts have explained, malice exists when the primary motive is to injure the plaintiff. *Nodar v. Galbreath*, 462 So. 2d 803 (Fla. 1984). Ms. Turiy's letter was written and transmitted with the clear purpose of undermining our Client personally and obstructing the MIAMI OPEN 2025. These were not negligent misstatements but calculated falsehoods disseminated to damage our Client's reputation and his ability to compete. Accordingly, ICAONA's

conduct through its officer satisfies each element of defamation under Florida law. Liability exists for compensatory damages, presumed damages arising from defamation per se, and punitive damages based on express malice.

### Tortious Interference with Business/Advantageous Relations

Beyond publishing defamatory statements, ICAONA and its officers took deliberate steps to obstruct our Client's business relationships and sabotage the MIAMI OPEN 2025. These actions were particularly unjustified because our Client had, on numerous occasions, confirmed in writing its recognition of ICAONA's status as FMJD's member federation, through formal letters, website publications, and official submissions presented to FMJD. Despite this acknowledgment, ICAONA engaged in conduct designed not to protect its status, but to destroy our Client's contractual, professional, and economic opportunities. Florida law provides that a plaintiff may recover for tortious interference where they establish: (1) the existence of a business or advantageous relationship; (2) the defendant's knowledge of that relationship; (3) intentional and unjustified interference by the defendant; and (4) damages. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). Each element is satisfied here.

Our Client had several business relationships in connection with the MIAMI OPEN 2025. These included contracts with hotels and playing halls, advertising agreements with a widely read local magazine, secured prize funds, visa support commitments for international players, and developing relationships with athletes, sponsors, and coaches. ICAONA was fully aware of our Client's work in organizing MIAMI OPEN 2025. The tournament was publicly announced and promoted, and ICAONA expressly referenced the MIAMI OPEN in its communications with FMJD and other federations. Its deliberate targeting of the tournament in correspondence to FMJD leaves no doubt that ICAONA knew of the underlying contractual and economic relationships.

ICAONA's interference was both intentional and unjustified. On November 13, 2024, Ms. Turiy accused our Client of "forgery of signatures," "fraud," and "falsification and deception" in a letter to FMJD. On December 10, 2024, FMJD confirmed to our Client that MIAMI OPEN was removed from its calendar directly because of this letter. While FMJD Statutes require a national federation to submit a consent application before an international tournament can be formally approved, FMJD officials had already placed the MIAMI OPEN 2025 on the international calendar following the direct recommendation of the FMJD President. In late August 2024, after being informed of NDF's plans to host the tournament, the FMJD President himself proposed granting the MIAMI OPEN World Cup stage status, explaining that draughts should be more actively developed in the United States and that bringing a World Cup stage to the U.S. would attract global attention. At the time, our Client was not aware of ICAONA's formal consent requirement and reasonably relied on the FMJD President's recommendation that the tournament be added. ICAONA's objection to the tournament was unprecedented, no other national federation had previously opposed the inclusion of a World Cup stage in its territory.

Nevertheless, FMJD officials did not delist the MIAMI OPEN on the basis of ICAONA's objection, which they already knew about. Instead, they acted after receiving Ms. Turiy's defamatory letter, which falsely accused our Client of fraud, lack of funds, and misconduct. Although the tournament was later restored to the calendar, ICAONA's actions and Ms. Turiy's correspondence caused immediate reputational and financial harm. FMJD President even suggested in January 2025 that the Executive Council could approve the tournament as a World Cup stage without ICAONA's consent, but to avoid further delay our Client agreed to proceed with the tournament as an international open event. In reality, ICAONA sought the complete removal of the MIAMI OPEN from the FMJD calendar, disparaging NDF as an "illegal and shadow organization." This delisting had immediate business consequences, causing players to withdraw and undermining contractual commitments. ICAONA then enlisted others to continue the campaign. Ms. Turiy solicited disqualified Pan-American Confederation President Clifton Agata to circulate letters worldwide calling to "Protect ICAONA." Ms. Turiy went further, accusing our Client of "corruption" in chat communications and advocating his disqualification from the World Championship Final.

ICAONA's interference extended beyond defamatory publications and into its administration of player eligibility. In the case of minor athlete Bohush, ICAONA refused to process his nationality transfer and tournament registration on the sole basis that his $100 membership payment was issued by NDF rather than directly by him or his family. ICAONA then characterized NDF in writing as a "shadow" and "self-proclaimed" federation, and conditioned Bohush's eligibility for U.S. competitions and international transfer on ICAONA membership and dues. This conduct directly contravened FMJD statutes, which require national federations to administer transfers and eligibility without discrimination or regard to disputes with domestic organizations. By misusing its gatekeeping role to obstruct Bohush's eligibility and disparage NDF, ICAONA interfered with the business and contractual relationships between NDF, its athletes, and the FMJD. Such conduct was neither privileged nor justified, as it served no legitimate governance purpose but was instead calculated to deter participation in the MIAMI OPEN and undermine NDF's ability to attract players and sponsors.

These actions were not taken to further ICAONA's legitimate interests as a nonprofit but to suppress competition and marginalize our Client. As a direct result of ICAONA's interference, our Client suffered significant financial and reputational harm. Player withdrawals and inducements not to attend deprived MIAMI OPEN 2025 of expected participation. Because of ICAONA's actions, the number of expected participants declined substantially, reducing the amount of entry fees and forcing the organizers to incur additional personal expenses to cover hotels, venues, and event logistics. Advertising expenditures lost their intended value, sponsorship opportunities were lost, and the reputational harm continues to limit our Client's ability to organize and promote events in the United States. Accordingly, ICAONA's conduct constitutes tortious interference with business and advantageous relationships under Florida common law. Our Client is entitled to damages for lost business opportunities, and all consequential losses resulting from ICAONA's intentional and unjustified conduct.

**Breach of Fiduciary Duty**

Florida law imposes explicit fiduciary obligations on directors and officers of not-for-profit corporations. Under Fla. Stat. § 617.0830(1), each director is required to act in good faith, with the care that an ordinarily prudent person in a similar position would exercise under comparable circumstances, and in a manner the director reasonably believes to be in the best interests of the corporation. While directors of § 501(c)(3) organizations generally enjoy limited immunity, Fla. Stat. § 617.0834 makes clear that this protection does not extend to conduct that breaches these duties where the breach involves a violation of law, a transaction conferring improper personal benefit, or reckless actions taken in bad faith, with malicious purpose, or in wanton and willful disregard of duties.

The facts here demonstrate that ICAONA's leadership breached these fiduciary duties and acted outside the lawful scope of its authority. On March 3, 2025, the FMJD Executive Council formally confirmed that ICAONA remained its recognized U.S. member federation. At that same meeting, our Client presented a written letter affirming that recognition, leaving no doubt as to his position or that of the NDF. Nevertheless, ICAONA's officers, fully aware of this record, chose to assert the opposite, accusing our Client of denying ICAONA's legitimacy and escalating that knowingly false claim into charges of "fraud." These accusations became the stated grounds for disciplinary measures in May and June 2025, resulting in a two-year suspension followed by a lifetime ban. That ICAONA proceeded despite possessing written proof to the contrary underscores that its officers acted in bad faith and in reckless disregard of their fiduciary duties.

The process by which the sanctions were imposed was equally inconsistent with the statutory duty of care. Our Client was never given notice of the meetings in which his discipline was discussed, was denied the opportunity to be heard, and has never been provided minutes or records of the Board's decision. The absence of even basic procedural safeguards illustrates a willful disregard for fairness and a failure to exercise the diligence that § 617.0830 requires. This pattern of misconduct extended beyond the disqualification itself and into ICAONA's governance framework. On April 5, 2025, at the height of the conflict, ICAONA's Board amended its Statutes to restrict membership to U.S. citizens and permanent residents and to condition access to FMJD-sanctioned tournaments on the payment of ICAONA dues. These amendments were transparently retaliatory: they were not aimed at promoting draughts in the United States but at excluding NDF players, undermining the MIAMI OPEN 2025, and consolidating control within ICAONA's leadership. By enacting discriminatory rules inconsistent with the organization's mission and international standards, ICAONA's officers exceeded their lawful authority.

The treatment of minor athlete Yevhen Bohush further illustrates this bad faith. ICAONA first refused to process his nationality transfer unless a $100 membership fee was paid, despite FMJD rules containing no such requirement. When the family agreed to make the payment, ICAONA nevertheless rejected it because the funds were submitted on Bohush's behalf by our Client through NDF. By moving the goalposts in this manner, ICAONA invented new conditions of eligibility not found in its own Bylaws, which contain no prohibition on third-party payments made on behalf of members. Conditioning Bohush's eligibility on direct ICAONA membership and payments not only

exceeded FMJD's rules but also demonstrated how ICAONA's leadership weaponized its gatekeeping role against minors and families who simply sought fair participation. The severity of these breaches was confirmed by FMJD itself. In a letter dated June 15, 2025, FMJD advised ICAONA that its accusations against our Client were unfounded and affirmed his right to participate in international competition, including the U.S. Championship scheduled for November 2025. Less than a month later, on July 7, 2025, FMJD's Executive Council warned ICAONA that its discriminatory practices violated FMJD's governance standards and directed ICAONA to correct them, expressly cautioning that sanctions could be imposed against ICAONA if it failed to do so. These interventions by the international governing body underscore that ICAONA's officers were not acting in the best interests of the corporation or the sport, but instead in bad faith and with retaliatory purpose.

Moreover, on August 28, 2025, our Client discovered yet another gross violation of ICAONA's Bylaws when he noticed his FMJD database status had been altered from "Country, USA, Flag, USA" to "Country, FMJD (independent player), Flag, none." This stripped him of national affiliation and would have forced him, a five-time U.S. Champion and reigning World Veteran Champion, to compete at the MIAMI OPEN 2025 without a flag or country. ICAONA appears to have falsely informed FMJD that his two-year suspension rendered him an "inactive member." This claim was wholly unlawful. ICAONA's Bylaws (Chapter 4, § 7) distinguish only between (i) temporarily suspended members and (ii) expelled members. Expulsion occurs only after a third violation and a separate expulsion decision. Suspension does not terminate membership. By recasting suspension as expulsion, ICAONA fabricated a non-existent "inactive" status.

Such misrepresentation not only violated ICAONA's Bylaws but also breached the principle of legal certainty, since no defined criteria for "inactive" status exist. Moreover, ICAONA has no legal authority to strip a U.S. citizen of "sporting citizenship" or a national flag, powers reserved to FMJD under international rules. Presenting our Client as a "former" or "inactive" member to FMJD thus amounted to fraudulent misrepresentation, discrimination, and abuse of authority. These actions violated FMJD Bylaws (Chapter 2, Arts. 7 & 11.1, prohibiting discrimination and requiring compliance with FMJD rules) and U.S. nonprofit law governing § 501(c)(3) corporations, which require nondiscriminatory governance and prohibit directors from exceeding corporate authority. By mischaracterizing our Client's status in bad faith, ICAONA's leadership not only harmed his reputation before "hundreds of thousands of players worldwide" but also exposed the organization to liability for reputational and financial damages.

Our Client, a long-standing member and one of the United States' most accomplished draughts players, was stripped of membership rights and excluded from international competition based on a false narrative advanced by ICAONA's officers. His reputation was damaged within the global draughts community, and sponsorships, coaching opportunities, and professional relationships were disrupted. The retaliatory amendments to ICAONA's Statutes further undermined the MIAMI OPEN 2025, an event for which significant financial commitments had already been made, including deposits for venues and contracts for advertising. These actions inflicted not only reputational harm

but also concrete financial losses. Taken together, ICAONA's suspension, disqualification, and retaliatory amendments represent a breach of fiduciary duty within the meaning of Fla. Stat. §§ 617.0830 and 617.0834 and constitute ultra vires conduct under § 617.0304. Because these acts were undertaken in bad faith, with retaliatory purpose, and in willful disregard of the duties imposed by law, ICAONA's directors are personally liable for the damages that flowed from their misuse of corporate authority and violation of the fiduciary obligations owed to members such as our Client.

<h3 style="text-align:center"><u>Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")</u><br><u>Fla. Stat. §§ 501.201–501.213</u></h3>

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Its protections are broad, extending to "the advertising, soliciting, providing, offering, or distributing… any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value." Fla. Stat. § 501.203(8). Courts have emphasized that FDUTPA is not limited to traditional consumer transactions, and nonprofit entities fall within its scope when they solicit participation, impose fees, or provide competitively significant services. By virtue of its FMJD recognition, ICAONA occupies a gatekeeping role over access to international draughts tournaments in the United States. Participation in those tournaments, offering opportunities for ranking, prize funds, and international recognition, constitutes a service of significant value. Against this commercial backdrop, ICAONA's actions were both unfair and deceptive.

ICAONA's decision to disqualify our Client on the claim that he denied ICAONA's FMJD legitimacy was a knowingly false representation. The March 3, 2025 FMJD Executive Board minutes, our Client's written acknowledgment of ICAONA's role, and even Mr. Azimullah's correspondence afterward all confirmed that ICAONA's recognition was never in dispute. Advancing the opposite narrative to FMJD and to the draughts community misled players and sponsors into believing our Client engaged in fraud, thereby discouraging participation in the MIAMI OPEN and undermining his professional standing. Furthermore, the amendments to ICAONA's Bylaws were adopted without quorum or meaningful procedure. These amendments restricted membership to U.S. citizens and permanent residents and conditioned access to FMJD tournaments on ICAONA dues. ICAONA also developed a practice of conditioning nationality transfers and tournament eligibility on mandatory ICAONA membership and payments made directly to ICAONA itself, refusing to honor valid payments made on behalf of athletes by third parties such as NDF. The refusal to accept minor athlete Bohush's $100 membership fee solely because it was submitted through NDF is a prime example. By rejecting this payment and simultaneously labeling NDF as a "shadow self-proclaimed organization," ICAONA misled players and families into believing that ICAONA membership and direct payments were required under FMJD rules, when no such requirement existed. These practices were not only coercive but also deceptive, creating false conditions of participation to compel membership and fees.

ICAONA's outward solicitations and tournament regulations promoted its events as FMJD-sanctioned and open to international participation, while in practice imposing hidden restrictions and advancing false grounds for disqualification. The denial of athlete Bohush's nationality change request unless he joined ICAONA and paid a fee is one example of how this authority was misused to coerce compliance under misleading pretenses. These practices exemplify the type of unfair competition and deceptive methods of solicitation that FDUTPA was enacted to prevent. Our Client is therefore entitled to relief under FDUTPA, including damages for financial and reputational losses, injunctive relief prohibiting ICAONA from conditioning tournament access on unlawful membership requirements, and recovery of attorneys' fees as authorized by Fla. Stat. § 501.2105.

## Florida Civil Conspiracy

ICAONA's actions also show a clear violation of civil conspiracy under Florida law. To state a cause of action for civil conspiracy, a plaintiff must demonstrate: "(1) an agreement between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the execution of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of said acts." *Plastiquim S.A. v. Odebrecht Constr., Inc.*, 337 So. 3d 1270, 1273 (Fla. 3d DCA 2022) (citing *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)).

Moreover, Florida courts require that a conspiracy claim be tied to an actionable underlying tort or wrong. *Id.* There is no freestanding cause of action for "civil conspiracy"; instead, "the conspiracy is merely the vehicle by which the underlying tort was committed, and the allegations of conspiracy permit the plaintiff to hold each conspirator jointly liable for the actions of the coconspirators." *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3d DCA 2019). A conspirator need not have taken part in every stage of the scheme. It is enough that the conspirator knew of the unlawful purpose and provided assistance in some form to be held responsible for the acts of the others. *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987) (citing *Karnegis v. Oakes*, 296 So. 2d 657 (Fla. 3d DCA 1974)).

The evidence shows that ICAONA's officers coordinated with outside actors, including disqualified Pan-American Confederation President Clifton Agata, to publish defamatory statements and undermine the MIAMI OPEN 2025. Ms. Turiy initiated this campaign by sending defamatory accusations to FMJD and, in chat communications, urged others to "thank Agata and ask him to continue supporting us." Acting on ICAONA's encouragement, Mr. Agata circulated global "Protect ICAONA" letters without ever contacting our Client to verify facts, instead adopting ICAONA's false narrative to serve his own interests in opposing the FMJD Executive Council and Ethics Committee that had disqualified him. ICAONA representatives further amplified these falsehoods through chat messages accusing our Client and FMJD officials of corruption and calling for disqualification from international competition. These coordinated communications were not isolated disputes but part of a concerted scheme to damage our Client's reputation and suppress NDF's legitimacy.

The conspiracy extended beyond letters and messaging. ICAONA and its allies directly interfered with the MIAMI OPEN by pressuring athletes not to participate. Individuals confirm that players received inducements, including offers of money, not to attend, while others were contacted personally and urged to withdraw on the pretext that the tournament was "illegitimate." Taken together, these coordinated acts reveal a deliberate agreement among ICAONA officers and their allies to defame our Client, exclude him and his students from international play, and cripple the MIAMI OPEN through unlawful means. The overt acts, defamatory letters, worldwide solicitations, inducements to players, and misuse of membership authority, caused concrete reputational, financial, and competitive harm. Under Florida law, ICAONA and its co-conspirators are jointly and severally liable for the damages flowing from this conspiracy.

### Federal Antitrust Sherman Act §§ 1–2 (15 U.S.C. §§ 1–2)

ICAONA's actions constitute unlawful restraints of trade and exclusionary conduct under federal antitrust law. Section 1 of the Sherman Act prohibits contracts, combinations, or conspiracies in restraint of trade or commerce. Section 2 prohibits monopolization and attempted monopolization, which require proof of monopoly power in a relevant market and the willful acquisition or maintenance of that power through exclusionary conduct. Antitrust law applies to sports governing bodies, including amateur and nonprofit associations, where their rules or practices unreasonably restrain competition. See NCAA v. Bd. of Regents of Univ. of Okla., 468 U.S. 85 (1984) (applying § 1 to NCAA television plan under rule-of-reason analysis, finding restraint where it limited output and raised prices); See also NCAA v. Alston, 594 U.S. 69 (2021).

The relevant market here is the organization, governance, and sanctioning of FMJD-recognized international draughts competitions in the United States, including access to eligibility pathways, tournament entries, international player ratings, and qualifying events for FMJD championships. This market affects interstate and foreign commerce, as evidenced by ICAONA's organization of national qualifiers like the U.S. Open and U.S. Championship, which draw participants from across states and internationally. Please see Exhibit L for reference. ICAONA wields monopoly power in this market by virtue of its exclusive FMJD recognition as the U.S. federation since 2005, which grants it control over U.S. representation, FMJD-sanctioned events, player eligibility under the U.S. flag, and access to international rankings, powers no other U.S. entity holds.

ICAONA has unlawfully maintained and attempted to extend this monopoly through exclusionary and anticompetitive practices that lack procompetitive justification, harming competition, players, and alternative organizers like NDF. First, under § 1, ICAONA imposed an unlawful tying arrangement by conditioning access to essential FMJD-sanctioned tournaments on mandatory ICAONA membership and dues payment. Following the April 5, 2025, amendments to its Bylaws, adopted without quorum, discussion, or proper minutes in violation of its own rules, ICAONA restricted membership to U.S. citizens and permanent residents and barred non-members from participating in FMJD qualifiers like the U.S. Open 2025 and U.S. Championship 2025. FMJD ruled these practices discriminatory and unlawful, demanding cessation by July 28, 2025. This tying exploits ICAONA's monopoly over

FMJD access to force unwanted memberships, foreclosing competition from independent players and organizations like NDF, and affecting a substantial volume of commerce (e.g., tournament entries, sponsorships, and international participation).

Second, under § 2, ICAONA engaged in exclusionary conduct to monopolize the U.S. draughts market by suppressing NDF as a rival promoter and disqualifying our Client on knowingly false grounds. Despite our Client's repeated acknowledgments of ICAONA's FMJD status, ICAONA circulated baseless accusations to FMJD and third parties that our Client denied ICAONA's legitimacy, harming MIAMI OPEN 2025 participation and sponsorships. Post-meeting in March 2025, our Client continued supporting ICAONA and Mr. Azimullah even acknowledged resolution and wished success without interference. Yet ICAONA proceeded with a May 15, 2025, warning and June 4, 2025, two-year suspension (with lifetime disqualification threat), barring our Client from ICAONA events and, by extension, the FMJD-qualifying U.S. Championship 2025, despite lacking authority to disqualify independent players from international competition. FMJD rejected these actions as unfounded, affirming our Client's eligibility and granting patronage over MIAMI OPEN 2025. These tactics, false accusations, discriminatory eligibility rules, and improper disqualification, were not procompetitive (no evidence of harm to draughts integrity) but exclusionary, designed to entrench ICAONA's monopoly by deterring players from alternatives, reducing MIAMI OPEN turnout, and foreclosing NDF's expansion efforts. The direct effects constitute antitrust injury, stifling draughts growth via NDF, reducing player options, and causing lost MIAMI OPEN revenues, sponsorships, and our Client's reputational and financial damages as a promoter and player. Our Client reserves the right to seek treble damages, injunctive relief, and attorneys' fees in federal court unless ICAONA retracts the disqualification and ceases these practices

### Violation of FMJD Governance and Bad Faith

Following our Client's disqualification, ICAONA attempted to justify its actions through misinterpretations of FMJD governance. In a memorandum, Mr. Azimullah relied on Article 44 of the FMJD Statutes to claim that FMJD lacked authority to interfere with ICAONA's decisions, and he further invoked Proposal No. 11 of the FMJD General Assembly concerning "inactive members" as a basis for sanctions. Both arguments were untenable. Article 44 grants autonomy to national federations only in internal association matters; it does not extend to FMJD-sanctioned qualifying tournaments such as the U.S. Championship. Likewise, Proposal No. 11 bears no relation to disqualification, nor to our Client, who is among ICAONA's most active members and an accomplished U.S. Champion and reigning World Veteran Champion.

The FMJD Executive Council rejected ICAONA's reasoning. In its June 15, 2025 ruling the General Secretary confirmed that the accusations against our Client were unfounded and affirmed his continued eligibility to compete in FMJD competitions pending Ethics Committee review. Shortly thereafter, leading referees, coaches, and players submitted a joint objection, expressly condemning ICAONA's reliance on Article 44 and Proposal No. 11 as bad-faith distortions intended to evade oversight and perpetuate discrimination. FMJD then issued a formal directive requiring ICAONA to remove discriminatory restrictions from the U.S. Championship regulations and to admit all

eligible American players. The directive warned that failure to comply could result in the Championship losing FMJD qualifying status and ICAONA itself facing expulsion from FMJD membership.

Nevertheless, ICAONA refused to comply. In a letter dated August 13, 2025, ICAONA's General Secretary Yevgeniy Sklyarov confirmed that our Client remained barred not only from ICAONA's internal activities but also from the 13th U.S. Open and the 2025 U.S. Championship, which is a qualifier for FMJD-sanctioned tournaments. This overreach exceeded ICAONA's authority, directly contravened FMJD's rulings, and amounted to an unlawful disqualification from international competition. Taken together, the Azimullah memorandum, FMJD's June 13 ruling, the June 18 objections, FMJD's July 7 directive, and Sklyarov's August 13 letter demonstrate that ICAONA knowingly disregarded binding oversight, distorted governing statutes, and weaponized its FMJD recognition to exclude our Client. This course of conduct entrenched a pattern of discrimination and abuse of authority that undermines FMJD governance and inflicted direct harm on our Client's competitive rights, professional reputation, and standing in the international draughts community.

### III. Conclusion

Based on the foregoing, ICAONA's actions constitute a pattern of unlawful conduct under Florida and federal law, including breach of fiduciary duty, tortious interference with advantageous business relationships, civil conspiracy, violations of the Florida Deceptive and Unfair Trade Practices Act, and exclusionary practices prohibited by the Sherman Act. The sanctions imposed against our Client were retaliatory, baseless, and carried out in direct contravention of FMJD statutes and binding directives. No valid legal or procedural basis existed for the suspension or disqualification. By weaponizing its FMJD recognition to exclude rivals, ICAONA acted in bad faith, and in violation of both its fiduciary duties as a Florida nonprofit corporation and its obligations to the international body it purports to represent.

Accordingly, our Client demands the following:

1. Immediate rescission of the suspension and disqualification imposed against our Client, together with written confirmation of his full eligibility to participate in all FMJD-sanctioned competitions, including but not limited to the U.S. Championship and U.S. Open.
2. Formal withdrawal and correction of all defamatory statements made to FMJD, national federations, players, coaches, or third parties alleging that our Client denied ICAONA's FMJD recognition, engaged in fraud, or acted unlawfully, including, without limitation, comments made via the Zelle payment memo.
3. Formal withdrawal of defamatory references to NDF as illegitimate, "self-proclaimed," or otherwise lacking lawful standing, and recognition that NDF is a duly incorporated nonprofit entity in the United States.
4. Written assurances that ICAONA and its officers will cease interfering with the MIAMI OPEN 2025 and any other draughts events organized by NDF or our Client, including by contacting players, coaches, sponsors, or federations to dissuade participation.

5. Good-faith processing of all athlete transfers, including minors, in accordance with FMJD statutes and without conditioning eligibility on ICAONA membership or other unlawful requirements.

6. Acceptance of bona fide payments made on behalf of athletes and families, without discriminatory rejection based on the identity or organizational affiliation of the payor.

7. Payment of monetary compensation to NDF and our Client, in an amount to be determined, sufficient to redress reputational injury, lost business opportunities, and other consequential damages arising from ICAONA's unlawful actions.

Our Client views this misconduct with the utmost seriousness and is fully prepared to enforce his rights through formal litigation in Florida and federal court. However, he remains willing to consider resolution outside of litigation, provided that ICAONA promptly complies with the demands set forth above and demonstrates that it will bring its governance into compliance with FMJD standards. Please consider this letter a final opportunity to resolve this matter without further legal action. If we do not receive a written response that fully addresses each of these demands within ten (10) calendar days of the date of this letter, our Client will proceed to initiate all appropriate legal remedies without further notice. This includes, but is not limited to, claims for injunctive relief, damages under state and federal law, and referral of ICAONA's misconduct to FMJD for disciplinary action.

All rights and remedies are expressly reserved.

Sincerely,

*Loveyko Alexander*

_____

Alex Loveyko, Esq.

**EXHIBIT A**


2024-12-11.

DOC. № 5.5.

Hi Rudi!

How are you?

I want to discuss a few points with you.

1). You know well that I support ICAONA as an official association registered in FMJD and entitled to host US Championships and vote in FMJD.

2). You also know well that the only goal of creating a new NDF of the USA organization is to organize the annual MIAMI-OPEN tournament. In which various players will be able to take part. And this is just as important for all American players who will have the opportunity to play in several interesting tournaments without leaving the United States. And this is our common cause with you to make more tournaments in the USA.

3). You have known about all this for a long time. And back in June 2024, you wished me good luck in your Email, confirmed your desire to take part in such a tournament MIAMI OPEN 2025. And you confirmed your readiness to work together to develop drafts.

And now I have a question:

1. I receive information that behind my back, you write letters to FMJD, that you are surprised by the creation of the NDF of the USA in the USA. That you know nothing about it. And that you are against the MIAMI OPEN 2025 and against the fact that FMJD gave her the status of the World Cup stage.

2. That unknown people probably forged your signature and misled FMJD.

3. And that Lyuba, acting on your behalf and on your behalf, asks to ban MIAMI OPEN and exclude it from the FMJD calendar.

I will only find out about all this today. Although on November 29, when Lyuba was in Sunny Isles Beach, she and her mother Galina and I sat together in a cafe, drank coffee and talked very friendly. Lyuba looked into my eyes, asked for something to help, and at the same time, behind my back, she created intrigues.

Rudi, I have always respected you and I still can't believe that you can do this. I suppose Luba does all this, hiding behind your name.

Please give me an answer ASAP. I hope you're not involved in this dirty business. And you and I will be able to work together, developing drafts in the United States and enabling our players to take part in various tournaments in the United States.

Alexander Rudnitsky.



# The National Draughts Federation of the USA

www.ndf-usa.com   2739 54th NW Avenue, Margate, FL, 33063

| | | | |
|---|---|---|---|
| President | Andriy Shcherbatyuk | ndfederation.usa@gmail.com | (954) 952-9743 |
| First Vice-President | Alexander Rudnitsky | alexrud41948@gmail.com | (786) 543-1034 |
| Vice-President for Technical Affairs | Alex Akselrud | aakselrud@aol.com | (847) 420-4007 |
| Secretary | Jean-Renaud Joseph | jrj0401@yahoo.com | (954) 504-3489 |
| Treasure | Tigran Harutyunyan | tharutyunyan1992@gmail.com | (415) 231-9395 |

№    .02-19/1-25
To    .FMJD
Att    -President, Mr.J.Pawlicki
CC    Board of Director
From:A.Rudnitsky
Date :01.19.2025

**Dear FMJD President Mr.J.Pawlicki!**

**Dear members of the FMJD Board of Directors!**

In accordance with your request, we are sending you a list of documents in the attachment according to the description below.

**1. Registration documents and Bylaws of the NDF of the USA;**

**2. Bylaws of ICAONA.**

We ask you to review the attached documents, as well as our explanations of the list.

**EXPLANATIONS:**

First of all, we want to officially assure that **The NDF of the USA does not claim registration in the FMJD as the main national draughts federation of the USA and does not plan to interfere in any way with ICAONA in its activities as an organization registered in the FMJD.**

Only if ICAONA ceases its activities for any reason and the FMJD officially asks us to support draughts in the USA at the level of holding qualifying competitions, we will consider the possibility of organizing and holding the US Championship until another "US Draughts Federation" is formed and registered in the USA and in the FMJD, which will be granted the rights to hold the US Championship.

**1. The NDF of the USA**, our main goals and immediate plans:

- Organization of the annual tournament MIAMI OPEN - 2025 and 2026;

- Organization of the MIAMI OPEN - 2026 tournament among children;

- Organization of the Florida Championship - 2026;

- Work with children and participation in the organization of such children's events as:

- Schools checkers and draughts presentations;

- State Checkers championship 2026;

In a short time, NDF of the USA has already done significant work

You can see some of the work of The NDF of the USA at the links:

Draughts presentations on the City Event in WPB, FL by this link

Florida Youth Championship 2024: https://www.facebook.com/share/p/1DaJGvTrCg/

**EXHIBIT B**

Fédération Mondiale du Jeu de Dames
Maison du Sport International, Avenue de Rhodanie 54, 1007 Lausanne



Thursday, January 31ˢᵗ 2025

**To the Organisers of the Miami Open Tournament,**

Dear friends,

I would like to personally congratulate you on the fantastic work you are doing. I have been following the growth and development of your tournament for several years, and it has consistently gone from strength to strength.

The draughts community greatly benefits from events like yours, and you are doing an outstanding job in promoting our sport.

You regularly organise tournaments and, once a year, unite the draughts world at the Miami Open.

My deepest respect to you and to everyone who supports your efforts.

Yours sincerely,

Jacek Pawlicki

FMJD President

Lausanne January 31ˢᵗ 2025

*Registration reference 550.1.237.940 UID  CHE-457.723.078*
*Bank: PostFinance SA, IBAN CH12 0900 0000 1616 1095 1*

Fédération Mondiale du Jeu de Dames
Maison du Sport International, Avenue de Rhodanie 54, 1007 Lausanne



Thursday, January 31st 2025

**To Whom It May Concern,**

I have been following with great satisfaction the dynamic draughts community centred around the organisation of the Miami Open tournament.

Each year, the tournament's prestige and global reputation continue to grow.

With this letter, I wish to highlight the significance of this event within the international calendar of our sport.

I would also like to extend my sincere gratitude to all those who support the organisers of the Miami Open in any capacity.

Yours sincerely,

Jacek Pawlicki

FMJD President

Lausanne January 31st 2025

*Registration reference 550.1.237.940 UID  CHE-457.723.078*
*Bank: PostFinance SA, IBAN CH12 0900 0000 1616 1095 1*

**EXHIBIT C**



**ICAONA**

## International Checker Association Of North America

Phone: (225) 916-2828 ♦ Website:  www.icaona.org

| | |
|---|---|
| Rudi Azimullah, President | e-mail: Rudi.azimullah@hotmail.com |
| Lyublyana Turiy, Technical Director | e-mail: admin@icaona.org |
| Alexander  Rudnitsky, Vice-President | e-mail: alexrud41948@gmail.com |
| Yevgeniy Sklyarov, Secretary | e-mail: yevgeniy76@gmail.com |

-------------------------------------------------------------------------------------------------------------------

December 30, 2024

Mr. Alexander Rudnitsky

Dear Mr. Rudnitsky :

Please accept our most heartfelt thanks. Your help with organization of the tournament and your generous contribution of $210 is deeply appreciated.  It is my pleasure to thank you very much on behalf of all members of International Checker Association of North America, also known as ICAONA.

Your support came at the very critical time and helped us conduct US Open 2024 International Checkers Championship – in Huntington Station, New York at or even exceeding the level of the best international standards.  With 21 players coming from 9 countries, it was a very significant unprecedented event allowing us to gain international respect and further grow our presence at home in the USA.

We are privileged to distinguish your support on the "Wall of Fame" and the tournament page on our website www.icaona.org.

Please be aware that International Checker Association of North America (ICAONA) is a 501(C) 3 Non-for-profit organization as defined by the US government.
Your donation to ICAONA is tax-deductible to the Full Extend Allowable by Law.
No goods and services have been provided in exchange to this contribution.
PLEASE RETAIN THIS DOCUMENT FOR TAX PURPOSES.

We wish you good health, Happy New 2025 Year and good luck!


Sincerely,

*Yevgeniy Sklyarov*

Yevgeniy Sklyarov,
General Secretary of ICAONA

2025-01-12

DOC.5.6.

Hello Rudi!

I agree and support:

1. do not stoop to personal insults. But we don't do that. And I'm even ashamed to publish Luba's November 13 letter to FMJD. How many lies and dirt she poured on us. Let's stop.

2. Yes, each organization can hold its own tournaments.

3. World Cup * * * not our tournament. Our Miami OPEN. The MIAMI OPEN World Cup * * * was proposed by FMJD President Mr. J. Pawlicky. WE DID NOT ORGANIZE A WORLD CUP * * *. This is the FMJD tournament. We were just instructed to conduct it. And FMJD believes that there is no violation of its Charter. And we were ready to return the World Cup * * *. FMJD believes that drafts should be developed on all continents. And including in the United States and more actively. And if ICAONA is not ready or does not have the opportunity to do this, then FMJD can give ITS tournament to whoever it considers necessary. And whether FMJD should discuss this with ICAONA, this question is not for us, but for FMJD. But I am sure that our players would very much like that the World Cup * * * was in the USA. And they could have played in it without leaving the United States. Unfortunately ICAONA is trying to deprive them of that. And please, on the question of why FMJD applied to the NDF with such a proposal, and not to ICAONA, contact FMJD.

4. Regarding the timing of MIAMI OPEN. ICAONA in different years held in September, October, November, March........ Again, I offered (and now I propose, but for the future) to meet in person, by ZOOM, and discuss all issues as you like. Including the timing of tournaments. I would even like US OPEN (or turnover) to follow MIAMI OPEN right away. And everyone would be comfortable. And I addressed you in writing to Rudi, sit down and discuss everything in advance. But you refused. But it's not too late.

5. Regarding the name NDF of the USA. I have already written about this, including to you. ICAONA, is the Association of North America (not the United States). It was in this status and with this name in its Charter that it was registered with the FMJD. ICAONA has a higher level than the National Federation. And the name NDF of the USA does not introduce any confusion. For example, in the United States there are many basketball organizations called National. National Basketball Association (NBA) , NewNBA, American Basketball Association (AMA…. Over 1400! And this does not bother anyone. It's the same in boxing.

I propose to end the discussion on the sidelines of the chat. If ICAONA really wants to resolve issues, then suggest a meeting format. And, I hope, we will solve all the issues in the interests of developing drafts in the United States and creating the opportunity for our players to participate in more tournaments. We could meet in person during the MIAMI OPEN-2025. We invite you all. Come! It will be a great opportunity to solve everything, and for one and rest!

Alexander Rudnitsky.

2025-01-22.

DOC.№5.7.

Eugene, hello!

I want to invite you to the MIAMI OPEN - 2025 tournament, which will be held from September 7 to September 13, 2025. You can find the tournament regulations on website FMJD > ORG in Calendar 2025. And also on our website NDF-USA.com in the Tournaments section, MIAMI OPEN.

Your arrival would be a powerful signal for all US drafts players that we have nothing to share. That with a different vision and approach to the development of drafts, we are one family of drafts players. Which should live together. Our common goal is to hold more tournaments in the USA, to enable local drafts players to get acquainted and play with strong foreign players.

Moreover, the development at the local level of the initiative for the development of drafts, to whom I, as a drafts player in the structures of the FMGD for 65 years and a member of ICAONA for 22 years from the date of its foundation, contribute, helps attract new players first to the NDF of the USA, and then, as their sportsmanship grows, they begin to play in the US Championship and for this they will join ICAONA and the FMJD vertical.

This combination of local initiative with the FMJD vertical, in my opinion, is optimal for the development of drafts in the United States.

Alexander Rudnitsky

01.22.2025

2025-01-22.

DOC. № 5.8.

Hi, Rudi !

I want to invite you to the MIAMI OPEN - 2025 tournament, which will be held from September 7 to September 13, 2025. You can find the tournament regulations on website FMJD.ORG in Calendar 2025. And also on our website NDF-USA.com in the Tournaments section, MIAMI OPEN.

Your arrival would be a powerful signal for all US drafts players that we have nothing to share. That with a different vision and approach to the development of drafts, we are one family of drafts players. Which should live together. Our common goal is to hold more tournaments in the USA, to enable local drafts players to get acquainted and play with strong foreign players.

Moreover, the development at the local level of the initiative for the development of drafts, to whom I, as a drafts player in the structures of the FMGD for 65 years and a member of ICAONA for 22 years from the date of its foundation, contribute, helps attract new players first to the NDF of the USA, and then, as their sportsmanship grows, they begin to play in the US Championship and for this they will join ICAONA and the FMJD vertical.

This combination of local initiative with the FMJD vertical, in my opinion, is optimal for the development of drafts in the United States.

Alexander Rudnitsky

01.22.2025

**EXHIBIT D**

 FMJD Executive Council meeting minutes

Number 03/03/2025

Meeting, Monday, March 3rd 2025, 8:30 p.m. Lausanne time

At 8:30 p.m. Lausanne time, with the presence of **Jacek Pawlicki** President, **Richard Przewozniak** Vice-President, International Relations, **Vladislavs Vesperis** Acting Secretary General, **Siep Buurke** Acting Tournament Director, **Magda Pawlowska** Tournament Director (Y), **Jean Marc Ndjofang** Chairman of Players Committee, **Rudi Azimullah President of the ICAONA**, **Alexander Rudnitsky** - Vice President of the NDF-USA, Member of the ICAONA, **Andriy Shcherbatyuk** Secretary of the NDF-USA, **Luba Turiy**, **Agnieszka Stajszczak** Office manager.

**Executive Council meeting – Agenda**

1.Request of ICAONA regarding Miami Open tournament (ICAONA and organizers of Miami Open invited). President of ICAONA Rudy Azimullah informed about situation in the United States where other  organization NDF-USA is organizing Miami Open tournament. President of ICAONA mentioned some points regarding information on NDF-US website and a name of NDF-USA itself which makes an impression that NDF US is official draughts organization in USA as well as mentioned that Miami Open in some point in time was marked as World Cup tournament. President of ICAONA Rudy Azimullah also put a question what FMJD recognized tournament means.
FMJD president assured that ICAONA is official member of the USA and there is no any doubt on that. FMJD president also pointed at the letter of the NDF-US which says that NDF-USA does not pretend to represent USA and to be a member of the FMJD. FMJD President apologized for mistake of putting Miami Open as a World Cup tournament, this mistake was already some time ago corrected. Vice-president of the NDF-USA Alexander Rudnicky confirmed once again that NDF-USA does not pretend to represent USA and to be a member of the FMJD. Vice-president of the NDF-US Alexander Rudnicky briefly presented the organizational status of the Miami Open, including advanced state of fundraising, organization of the place and preparation for receiving players. FMJD President and Acting Secretary General both stressed that the most important thing is to support every organizer who wants to develop the game by creating and organizing such tournaments. All internal disputes should be solved between the national organizations and not by the FMJD EC. Acting Secretary General invited both organizations not to fight each other but to cooperate for the benefit of draughts game development in the USA.

2.Approval of last EC meeting minutes. The last EC meeting minutes were unanimously approved.

3. Approval of Agenda for today. Agenda was unanimously approved.

**EXHIBIT E**

**2025-03-05**
**DOC. № 5.9.**

**Rudi, hello!**

This is Alexander Rudnitsky.

Once again, I want to show a gesture of goodwill and extend a hand of friendship.

We have nothing to divide. We all love draughts and try to do something good for its development. And once again, I want to assure you that I am not going to interfere with ICAONA. On the contrary, I have said many times, and I repeat again that I am ready to help ICAONA. I myself am a member of ICAONA and stood at the foundation of its creation together with Kolman Turiy. I am sure we could meet and resolve all issues. I have many opportunities for this. Both, draughts and ICAONA would only benefit from it. ICAONA must also show goodwill and a desire for friendship. ICAONA need to stop trying to subordinate everyone. America is a free country. Everyone can see development in their own way. We just need to listen to each other and unite ideas and opportunities so that it benefits everyone.

I suggest you think it over and give me an answer. And I would like to invite you and others to the **Miami OPEN - 2025** (and you before were planning to come).
I only ask you not to mistake this letter for a sign of weakness. We are in a strong position and stand firmly on our feet. It's just that there are so few of us active draughts players, and we are obliged to create an atmosphere of good mood and celebration for all draughts players.

Alexander Rudnitsky
03/05/2025

**Руди, привет!**

Это Александр Рудницкий.

Еще раз хочу проявить жест доброй воли и протянуть руку дружбы.

Нам нечего делить. Мы все любим шашки и стараемся сделать что-то хорошее для их развития. И еще раз, я хочу заверить вас, что я не собираюсь вмешиваться в ICAONA. Напротив, я много раз говорил, и еще раз повторяю снова, что готов

2025-03-08

DOC. № 5.10.1

**Rudi Azimullah <azimurs@gmail.com>**

Sat, Mar 8, 1:33 AM

to me

Mr. Alex,

I trust your intention to promote draught in Florida is real.  After the meeting last Monday with Mr. Pawlicki, we are all aware of the position of FMJD in this matter, and that ICAONA is the only organization recognized by the FMJD representing the USA.

As president of  ICAONA I am aware that I cannot stop any organization from organizing a tournament and I will not try to do so. However, I cannot participate in an event organized by an organization with a name suggesting that they are the national federation of the USA. For this reason I will not participate in this event.

This should therefore not be seen as a sign of hostility toward you or your organization.

I hope you all the best with the organization of the tournament.

Best Regards

Rudi

2025-03-09

DOC. № 5.10.

Hello Rudi!

Thank you for clarifying your position in relation to the NDF of the USA and good wishes to the MIAMI OPEN tournament.

I always thought you were a decent person. And ready to cooperate with you. The only misunderstanding I had was when you first voted to accept Andrey as a member of ICAONA, and a week later you already voted against..... I understand that this was done under pressure from Luba and her threats to withdraw from ICAONA..... As for Lyuba, she knew and understood perfectly well that the ICAONA Charter allows Andrei to be a member. And written explanations from the FMJD Secretary General indicated that this was an internal matter of ICAONA. FMJD only monitors the situation, if a player wants to play under the US flag, then only then he must withdraw from the Federation of Ukraine.

As for the rest.

1. back in the summer of 2024, I wrote a letter to FMJD in support of ICAONA and that we support ICAONA as the main drafts organization in the United States. Many times, both orally and in writing and in different chats, I wrote that our goal is to develop MIAMI OPEN. And that we recognize ICAONA as the main organization and are ready to cooperate and help it. And three weeks before the last FMJD meeting of March 3, 2025, I wrote a letter on NDF letterhead in support of ICAONA's right as the main organization in the United States. Lyuba knew and understood all this very well. But her goal was different. Under the pretext that we allegedly want to stage a coup and seize power, she tries to prevent the creation of MIAMI OPEN, prevents the creation of new tournaments for ALL players, develop drafts and all in order to be the only "queen" whom everyone worships. In her "struggle," she reached such vile methods as behind my back letters to FMJD accusing you of forging your signature, accusing us of lying, falsification, fraud.  It got to the point that she began to send letters and chats (I have copies), that Andrey and I are in a corrupt relationship with FMJD (!) And even began to persuade you to disqualify me (!!!). Frankly, I was ready to start a lawsuit against her. But the memory of her father still holds me back.

2. regarding the name NDF of the USA. It's not about the name of the NDF. Every American sport has a National Federation/Association/Organization, Home Federation/Association/Organization, just Federation/Association... For example, in figure skating, the main one is the US FIGURE SKATING FEDERATION. But there is also the National Figure Skating Federation (in California). The main thing that it would be high time to do is to bring the name ICAONA and its Charter in line with its status as the main drafts organization in

the United States. It is necessary to change the name to the US DRAFTS FEDERATION (where does North America come from?) And the Charter must be amended very much. Check out the FMJD Charter.  It generally allows only national federations of countries and continents to be registered.

And if Lyuba does not understand this, then we must explain it to her. ICAONA is not her alone. This is not her private organization. This is our face in FMJD, the face of all players from the USA.

I think this letter should stay between us. Lyuba still will not understand.

One last thing. I have already paid membership fees to ICAONA for 2025. Please have me link to participate by ZOOM on March 29, 2025 in the ICAONA members meeting.

All the best,

Alexander Rudnitsky.

03-09-2025

2025-03-09.

Здравствуй, Rudi !

   Спасибо за разьяснение твоей позиции по отношению к NDF of the USA и хорошие пожелания турниру MIAMI OPEN.

   Я всегда считал тебя порядочным человеком. И готов с тобой сотрудничать. Единственное не понимание у меня вызвала ситуация, когда ты вначале проголосовал за принятие Андрея в члены ICAONA, а через неделю уже проголосовал против..... Я понимаю, что это было сделано под давлением Любы и ее угроз уйти из ICAONA.....  А что касается Любы, то она прекрасно знала и понимала, что Устав ICAONA разрешает Андрею быть ее членом. И письменные разьяснения от Генерального Секретаря FMJD указывали, что это внутреннее дело ICAONA.  FMJD следит только за ситуацией, если игрок хочет играть под флагом США, то только тогда он должен выйти из Федерации Украины.

Что касается остального.

1.Еще летом 2024 года я написал письмо в FMJD в поддержку ICAONA и в том, мы поддерживаем ICAONA как главную шашечную организацию в США. Много раз и устно и письменно и в разных чатах я писал, что наша цель развитие MIAMI OPEN . И что мы признаем ICAONA как главную организацию и готовы сотрудничать и помогать ей. И за три

[www.ndf-usa.com](www.ndf-usa.com)  (info from our site)

**Welcome to the cooperation!**



The main goals of our federation are the development of checkers in the USA, the organization of the annual open international tournament MIAMI OPEN, the development of checkers and draughts among children and holding various tournaments among adults and children in the USA. We are open to joint and friendly work with various checkers and draughts organizations in the USA and other countries. And we would especially be glad to see among our partners such organizations as ICONA (International Checker Association of North America), created in 2002 and which has been a full member of the FMJD and its representative in the USA since 2005;

ACF (American Checkers Federation) who is also officially recognized by the FMJD for checkers development;

APCF (American pool checkers federation) that develops pool-checkers in the USA for many years.

All other USA and overseas organizations are also more than welcome to communicate and cooperate! One of our ideas is uniting draughts and checkers players of different specializations by organization of new kind of draughts and checkers interspecific combined events where more players could participate in one event.

Let us create new experience for draughts and checkers players making our beloved game and intellectual sport better together!

**EXHIBIT F**

# By-Laws
## OF
# INTERNATIONAL
# CHECKERS ASSOCIATION
# OF NORTH AMERICA
# ICAONA

### ARTICLE I — NAME
The name of the Corporation shall be INTERNATIONAL CHECKERS ASSOCIATION OF NORTH AMERICA (ICAONA).

### ARTICLE II — PURPOSES
The ICAONA shall be devoted exclusively to promote the evolution of checkers in the State of New York, and throughout the United States of America by means of a) establishing educational programs to broaden children's and adults' knowledge of checker, b) organizing cultural events such as lectures, tournaments, etc.

### ARTICLE III — OFFICE LOCATION
The principal office of the ICAONA shall be located is KINGS county, State of New York. As the ICAONA evolves, it may decide to pen branches within and without the State of New York.

### ARTICLE IV — MEMBERSHIP
The ICAONA is open to checkers players nationwide who wish to become active members. The association includes several types of members. These are: regular, honor and benefactor members.

**Section 1.     Regular member**
A regular member is one who adheres to the association and pledges to abide by its rules and regulars.

   a.  <u>Rights and privileges</u>
      Upon paying the first monthly installment the regular member shall receive, among other privileges, free membership card, free monthly newsletters, right to borrow material against deposit of an amount to be determined by the Secretary, voting right, admittance in tournaments and events organized by the club, etc. The member is expected to cooperate fully with the officers in helping the association grow.

   b.  <u>Classifications</u>
      Regular members are being classified in three categories as follows:
     i.  <u>Beginner:</u> Player with little or no checker experience.
     ii.  <u>Intermediate:</u> One able to execute combinations of up to seven tempos.
     iii.  <u>Advanced:</u> One able to execute combinations of up to ten tempos.
     iv.  <u>Master:</u> the title of national master is awarded to one who wins a tournament in which at least three advanced had taken part.
     v.  <u>Grand Master:</u> The title of national grand master is awarded to one who wins a tournament in which at least three national masters had taken part.

**Section 2.     Honorary Member**
The honorary member is an individual especially chosen by the committee in order to help the association grow. He/she may provide services such as caps and/or money prizes for the ICAONA contest award winners.

**Section 3.        Benefactor**
The benefactor member is one who services and/or makes a gift to the association valued at two hundred dollars minimum.

**Section 4.        Resignation**
A written notice of resignation of any member should be sent to the ICAONA. The ICAONA shall accept the resignation of the requesting member if there is no disciplinary proceeding against the member. The ICAONA may enter into a settlement agreement accepting the resignation of any member who is facing a disciplinary action. Such resignation shall become effective on the date an agreed upon settlement shall be signed.

**Section 5.        Discharges**
In order to remain active, every board member must be cleared from wrongdoing by a panel composed of one-third majority or regular members. Any member who receives a dishonorable discharge shall be kept out of the ICAONA's activities for two years.

**Section 6.        Sanctions**
A member who fails to abide by the established rules shall receive an informal warning letter for a first offence. For a second offense, he shall receive a formal warning letter. A third offence within a one-year period is considered final. The member receives a final warning letter and is dismissed.

**Section 7.        Reinstatement**
At the written request of a former member, the ICAONA may decide to reinstate the membership of the former member. The reinstatement shall not be effective unless the member satisfies all his/her financial or legal or ethical obligations at the time of the termination or resignation. Furthermore, the ICAONA shall first satisfy itself as to the continued eligibility, character, and fitness of the applicant for reinstatement.

**Section 8.        Membership Discrimination Policy**
The ICAONA, in any manner, shall not discriminate against any person on the basis of race, ethnicity or religion.

## CHAPITRE V — DUES

**Section 1.        Annual Dues**
The ICAONA shall establish the annual membership dues for all categories of members.

**Section 2.        Dues Period and Payment**
The annual dues period shall run from January 1st to December 31st, covering a full calendar year. The annual dues are nonrefundable. Upon receipt of the dues payment by the ICAONA, the member shall receive a membership card bearing the name and logo of the ICAONA. The membership card shall not be transferable. Any member who does not pay his/her dues in the prescribed periods shall have his/her membership status suspended indefinitely until payment is received, and shall not be eligible to participate in tournament organized by the association.

**Section 3.        Member Under Suspension**
A member under suspension shall not be liable for any dues during the period of suspension.

## ARTICLE VI — TOURNAMENTS

Each year there shall be two tournaments held by the ICAONA:
1. The New York State championship shall be held from the first Sunday of May to the last Sunday of June.
2. The ICAONA's championship shall be held from the first Sunday of October to the last Sunday of November.

The ICAONA's champion has the right to defy the New York State champion in a ten pawns match. The New York State champion is obligated to accept the challenge under the penalty of forfeiting his title. Said match shall run for a two-month period, during weekends and holidays, from the first Sunday of January to the last Sunday of February.

All international rules are applicable in tournaments organized by the ICAONA.

The use of alcohol, tobacco and other drugs is prohibited. All discussions non related to chess or checkers, or the aim of the club are prohibited.

## ARTICLE VII — TRAINING

In order to enhance its members' capability and to expand their knowledge, the committee shall provide technical training courses to beginners, intermediate and advanced players periodically. The courses shall deal with the "art of position play", "combination play", problem composition", "general theory". Furthermore, team matches interstate, intercity or inter-borough shall be organized regularly to allow all ICAONA members to develop competitive skills

## ARTICLE VIII — EXECUTIVE BOARD

An elected Executive Committee shall manage the ICAONA in a democratic process under the majority rule. The Executive Board shall be composed of three members at the minimum. The expansion of the board shall be decided a special meeting of the Executive Board.

## ARTICLE IX — MANDATE

The Executive members are elected for a period of two years. Two months prior the expiration of their mandate, new elections shall be held to elect a governing body.

## ARTICLE X — ALLEGIANCE

Before taking their functions each member of the board shall pledge the following allegiance: "I promise upon my honor to work for the advancement of the association and to contribute to the cause of ICAONA to the best of my talents and my abilities.

## ARTICLE XI — ROLE & FUNCTIONS

1. President: The president shall have the duty to:
   - Call in special meetings in emergency situations.
   - To preside over at all sessions of the Executive Committee.
   - To act on behalf of the ICAONA.
   - To present a monthly report detailing the general conditions of the ICAONA in every respects.

2. Secretary: The secretary attends all sessions, records the proceedings and receives an account from the treasurer.

3. Treasurer: The treasurer is the legal custodian of all goods, funds and properties of the ICAONA. He shall keep an accurate record of all accounts. He receives gifts for the association from all sources, giving a receipt to the donors. No funds can be withdrawn without the counter-signatures of both the President and the treasurer. An audit shall be made of the books, financial papers and accounts of the treasurer by the Secretary and by the President and cause a report of the same to be made at each monthly session.

The ICAONA may increase the number of officers to elect a vice-president, an Assistant Secretary and an Assistant Treasurer.

## CHAPTER XII — MEETINGS

**Section 1.       Location**
Every meeting of the members and of the Board of Directors shall be held anywhere in the United States or abroad, as shall be designated in the call for.

**Section 2.       Annual Meeting**
The ICAONA shall call its members together at least once a year for academic, social, administrative, and cultural objectives. This annual meeting shall organized anywhere in the United States of America, or abroad. This meeting shall constitute the General Assembly and shall occur no later than one month after the closing of the calendar year.

Page 3 of 5                                        ICAONA                                        Bylaws

**Section 3.     Special Meetings**

Special meeting may be held at such time and place as the Executive Committee may select. Special meetings shall be convened on demand and to solve a particular matter regarding the ICAONA.

**Section 4.     General Meeting**

Regular meetings of the Executive Committee and the membership shall be held throughout the year. The meetings shall be convened as often it is necessary but at least seven times per year to discuss general matters of the ICAONA.

**Section 5.     Meeting Notice**

For all meetings, adequate notice shall be given personally to the members. Written notice shall be given at least ten days prior the date of the meeting. All medias of communications, e.g. mail, email, electronic messenger, telephone shall be used. If telephone is used, written notice must follow up. If a member cannot be physically present, a conference call shall be sufficient to assure participation. A majority of members shall constitute a quorum. The notice shall set forth the time, place, date, and agenda of the meeting.

**Section 6.     Meeting Agenda**

The agenda of meetings shall run as follows: roll call, proof of the announcement of the meeting request, reading the minutes of the preceding meeting, correspondence, reports of officers, old business, new business, elections of officers if appropriate, questions of general interests.

**Section 7.     Quorum/Adoption**

A majority of members present in person or proxy shall constitute a quorum for the purpose treated at any meeting. All matters discussed during the meetings shall be approved at the simple majority to be legally biding.

**Section 8.     Minutes**

During meetings the Secretary, or the Assistant Secretary if any, shall be present and shall take written notes of the discussion. All minutes must be kept at the principal location of the ICAONA for a period no less than three years. Minutes of all deliberative bodies shall be made available for the members on request.

**Section 9.     Annual Report**

At the annual meeting of the members, the Directors and the Officers shall present a report detailing the activities of the ICAONA for the immediate past calendar year. The President and the Treasurer, or a majority of the Directors of the ICAONA shall certify such report. The verified report shall become part of the permanent files of the ICAONA. A written note of such meeting shall be entered in the records of the ICAONA.

## CHAPTER XIII — ACCOUNTING AND TAXATION POLICIES

**Section 1.     Books**

The ICAONA shall keep full, true and complete books, pursuant to the Nonprofit Corporation Law of the State of New York and the United States of America. Such books of accounts shall at all times be maintained at the principal office of the organization and shall be open to the inspection and examination of the public upon request and within a reasonable time as required by State and federal statutes. The ICAONA shall adopt the generally accepted accounting standards of the United States of America as applicable to nonprofit entities.

**Section 2.     Annual Statements**

A complete set of financial statements of the ICAONA shall be prepared within a reasonable period of time after the close of each fiscal year. A copy of financial statements shall be accessible to each member the ICAONA.

**Section 3.     Funds of the ICAONA**

All funds of the ICAONA shall be deposited in the ICAONA's name in a designated bank account(s). Withdrawals from such bank account(s) shall be made upon such signature(s) designated to the bank by the ICAONA's governaning body.

**Section 4.     Taxation**

The annual information tax return of the ICAONA shall be prepared and filed in accordance with the State of New York and federal tax laws, within a reasonable time after the closing of its fiscal year or within the filing period imposed by federal and State statutes.

**Section 5.     Other Legal Compliance**

The ICAONA shall comply with all the State of New York and federal laws determining the nonprofit status. Disclosures about donations, fundraising activities, etc, shall be executed in appropriate time and manner as prescribed by local state and federal laws governing the nonprofit Corporation.

## CHAPTER XIV — COMPENSATION

**Section 1.     Compensation**

Except as otherwise provided, the directors, and officers shall not receive any compensation for services rendered to the ICAONA. Hired manager(s), employee(s) shall receive a compensation for their services. The Executive Committee shall establish guidelines for compensations. Any compensation will be subject to the financial condition of the ICAONA. Payroll taxes related to the salary should be filed with the appropriate State and federal authorities. Compensation, if any, shall be reviewed in a meeting called by the Executive Committee when the members deem the meeting appropriate.

**Section 2.     Future Compensation**

The provisions of this article shall be reviewed as often as it is necessary to reflect the changes in the operations of the ICAONA. In the future, the officers may decide to compensate themselves. The decision must be settled during a special meeting or a general meeting.

## ARTICLE XV — DISSOLUTION

The ICAONA shall have the rights to dissolve its operations at any time, provided that the dissolution is approved by a two-thirds vote of the majority of the members of the Board of Directors at any regular or special meeting of the Board of Directors.

The ICAONA shall be deemed terminated upon completion of the dissolution, winding up, liquidation and distribution of its assets, in compliance with the State of New York and federal Nonprofit Corporation laws.

## ARTICLE XVI — AMENDMENTS

The ICAONA shall have the rights to amend, alter, change or repeal any provision contained in these bylaws, in the manner now or hereafter prescribed by statutes of the State of New York and by the Articles of Organization.

Any amendment to these bylaws must be approved by a two-thirds vote of the majority of the active members of the General Assembly, at any regular or special meeting, on proposition of the Ethics Commission or on proposition signed by five percent of the total active members of the ICAONA.

The proposed changes shall be set forth in the notice of the meeting. Any amendments to the articles of organization must be filed with the Secretary of State pursuant to the New York Nonprofit Corporation Law.

## ARTICLE XVII — ADOPTION

IN WITNESS WHEREOF, this governing instrument shall be executed on this 21st day of December 2002.

# By-Laws

### OF

## INTERNATIONAL CHECKERS ASSOCIATION
## OF NORTH AMERICA/USA,
## American National Federation of International Draughts/Checkers

## ICAONA

### ARTICLE I — NAME

The name of the Corporation shall be INTERNATIONAL CHECKERS ASSOCIATION OF NORTH AMERICA/USA, American National Federation of International Draughts/Checkers (ICAONA).

### ARTICLE II — PURPOSES

The ICAONA shall be devoted exclusively to promote the evolution of international checkers in the State of New York, and throughout the United States of America by means of a) establishing educational programs to broaden children's and adults' knowledge of checker, b) organizing cultural events such as lectures, tournaments, etc. ICAONA shall serve as a national federation member in the bodies of continental Pan-American Draughts & Checkers Confederation (PAMDCC) and World Draughts Federation (FMJD), acting as the official representative of its members within these bodies and support their activities in the USA.

### ARTICLE III — OFFICE LOCATION

The principal office of the ICAONA shall be located at a site established by its current president for business convenience . As the ICAONA evolves, it may decide to pen branches within and without the State of New York.

### ARTICLE IV — MEMBERSHIP

The ICAONA is open nationwide to checkers players and promoters, permanent residents of USA who wish to become active members. The association includes several types of members. These are: regular, associate, honor and benefactor members.

**Section 1.      Regular Member**
A **regular** member is one who adheres to the association and pledges to abide by its rules and regulars.
a.   **Rights and privileges**
    Upon paying the first    yearly installment the regular member shall receive, among other privileges, free membership card,      right to borrow material against deposit of an amount to be determined by the Secretary, voting right, admittance in tournaments and events organized by the      ICAONA, etc. The member is expected to cooperate fully with the officers in helping the association grow.
b.   **Members' obligations**
    Members have the following obligations:
    i.   To comply with the articles, tournament regulations, and directives of ICAONA
    ii. To treat fellow ICAONA members and guests during ICAONA events with courtesy and respect, and to demonstrate true sportsmanship and adherence to international regulations when representing ICAONA and the USA in competitions abroad
    iii. To refrain from engaging in any actions that may cause harm to ICAONA members or the organization as a whole. Match fixing, alcohol and drug abuse are strictly prohibited.
    iv. To pay membership subscription by the end of January for the current year.
    Non-adherence to these regulations will be subject to sanctions outlined in Article IV Section 7.
c    .   **Classifications**
    Regular members are being classified in three categories as follows:
    i. Beginner: Player with little or no checker experience.
    ii. Intermediate: One able to execute combinations of up to seven tempos.
    iii. Advanced: One able to execute combinations of up to ten tempos.
    iv. Master: The title of national master is awarded to one who wins a tournament in which at least three advanced had taken part.

v. <u>Grand Master</u>: The title of national grand master is awarded to one who wins a tournament in which at least three national masters had taken part.

**Section 2.      Associate Member**

An **associate** member status is granted upon sending a request to ICAONA board to any organization in USA which
a.    promotes international checkers,
b.    acknowledges officially the adherence to statutes and internal regulations of the FMJD, PAMDCC and ICAONA, and
c.    does not develop activities contrary to those statutes.

Associate member keeps full independence in its internal affairs; has its own council, members, finances, statutes; and is expected to cooperate with ICAONA.in the matters requiring such coordination upon mutual agreement. ICAONA pledges its support to Associate members by providing them with help and advice at their request, acting as a liaison on their behalf in communication with parent organizations of PAMDCC and FMJD, allowing them to borrow or use ICAONA resources and place ICAONA, PAMDCC and FMJD logos on their promotion materials.

Associate member representatives are encouraged to attend and participate in ICAONA board meetings and offer proposals and recommendations but without a voting right.  However, individual members of an associated organizations can simultaneously be regular members of ICAONA with full voting rights if they choose to do so.

**Section    3    Honorary Member**

The **honorary** member is an individual especially chosen by the committee in order to help the association grow. He/she may provide services such as caps and/or money prizes for the ICAONA contest award winners.

**Section    4.    Benefactor**

The **benefactor** member is one who services and/or makes a gift to the association valued at two hundred dollars minimum.

**Section    5.    Resignation**

A written notice of resignation of any member should be sent to the ICAONA. The ICAONA shall accept the resignation of the requesting member if there is no disciplinary proceeding against the member. The ICAONA may enter into a settlement agreement accepting the resignation of any member who is facing a disciplinary action. Such resignation shall become effective on the date an agreed upon settlement shall be signed.

**Section    6.    Discharges**

In order to remain active, every board member must be cleared from wrongdoing by a panel composed of one-third majority or regular members. Any member who receives a dishonorable discharge shall be kept out of the ICAONA's activities for two years.

**Section    7.    Sanctions**

A member who fails to abide by the established rules and procedures, or engages in actions harmful to the Association or other members, shall receive an informal warning letter for a first offence. For a second offense or refusal to comply, the member shall be suspended from ICAONA's activities for two years.and will receive a formal warning letter. A third offence within a one-year period is considered final. The member receives a final formal      letter and is dismissed from the Association.

**Section    8.    Reinstatement**

At the written request of a former member, the ICAONA may decide to reinstate the membership of the former member. The reinstatement shall not be effective unless the member satisfies all his/her financial or legal or ethical obligations at the time of the termination or resignation. Furthermore, the ICAONA shall first satisfy itself as to the continued eligibility, character, and fitness of the applicant for reinstatement.

**Section    9.    Membership Discrimination Policy**

The ICAONA, in any manner, shall not discriminate against any person on the basis of race, ethnicity or religion.

**ARTICLE V —      DUES**

**Section 1.      Annual Dues**

The ICAONA shall establish the annual membership dues for all categories of members.

**Section 2.      Dues Period and Payment**

The annual dues period shall run from January 1st to December 31st, covering a full calendar year. The annual dues are nonrefundable. Upon receipt of the dues payment by the ICAONA, the member shall receive a membership card bearing

the name and logo of the ICAONA. The membership card shall not be transferable. Any member who does not pay his/her dues in the prescribed periods shall have his/her membership status suspended indefinitely until payment is received    and shall not be eligible to participate in tournaments organized by the association.

**Section 3.        Member Under Suspension**
A member under suspension shall not be liable for any dues during the period of suspension.

### ARTICLE VI — TOURNAMENTS

Each year there shall be    USA National Championship in International Checkers    held by the ICAONA.

All international rules are applicable in tournaments organized by the ICAONA. However, some amendments and additions can be made if found reasonable by the board, organization committee, arbiter team or competitors.

The use of alcohol, tobacco and other drugs during the games in the tournament room is prohibited.

### ARTICLE VII — TRAINING

In order to enhance its members' capability and to expand their knowledge, the committee shall provide technical training courses to beginners, intermediate and advanced players periodically. The courses shall deal with the "art of position play", "combination play", "problem composition", "general theory". Furthermore, team matches interstate, intercity or inter-borough shall be organized regularly to allow all ICAONA members to develop competitive skills.

### ARTICLE VIII — EXECUTIVE BOARD

An elected Executive Board shall manage the ICAONA in a democratic process under the majority rule. The Executive Board shall be composed of three members at the minimum. The expansion of the board shall be decided by a special meeting of the Executive Board.

### ARTICLE IX — MANDATE

The Executive Board members are elected for a period of two years. Two months prior the expiration of their mandate, new elections shall be held to elect a governing body.

### ARTICLE X — ALLEGIANCE

Before taking their functions each member of the B    oard shall pledge the following allegiance: "I promise upon my honor to work for the advancement of the association and to contribute to the cause of ICAONA to the best of my talents and my abilities".

### ARTICLE XI — ROLE & FUNCTIONS

1. President: The      President shall have the duty to:
   - Call in special meetings in emergency situations.
   - To preside over at all sessions of the Executive      Board.
   - To act on behalf of the ICAONA.
   - To present      periodic reports detailing the general conditions of the ICAONA in every respects.
2. General Secretary: The      Secretary attends all sessions, records the proceedings, maintain business correspondence on behalf of the ICAONA.
3. Treasurer: The      Treasurer is the legal custodian of all goods, funds and properties of the ICAONA. He shall keep an accurate record of all accounts. He receives gifts for the association from all sources, giving a receipt to the donors.    An audit shall be made of the books, financial papers and accounts of the     Treasurer by the Secretary and by the President and cause a report of the same to be made at each monthly session.

The ICAONA may increase the number of officers to elect a    Vice-   President, Executive Director    and other members of the board as needed.

4. Vice President. The Vice President assumes the duty of the President when he is not available and assist him in sharing his duties.

5. Executive Director runs the day-to-day operations, assists the board in their operations, administration and planning activities.

If additional positions are created, their roles and responsibilities will be further defined in the separate Addendum.

## ARTICLE    XII — MEETINGS

**Section 1.**     **Location**

Every meeting of the members and of the Board of Directors shall be held anywhere in the United States or abroad, as shall be designated in the call for.

**Section 2.**     **Annual Meeting**

The ICAONA shall call its members together at least once a year for academic, social, administrative, and cultural objectives. This annual meeting shall be organized anywhere in the United States of America, or abroad. This meeting shall constitute the General Assembly and shall occur no later than one month after the closing of the calendar year.

**Section 3.**     **Special Meetings**

Special meeting may be held at such time and place as the Executive     Board may select. Special meetings shall be convened on demand and to solve a particular matter regarding the ICAONA.

**Section 4.**     **General Meeting**

Regular meetings of the Executive Committee and the membership shall be held throughout the year. The meetings shall be convened as often it is necessary but at least seven times per year to discuss general matters of the ICAONA.

**Section 5.**     **Meeting Notice**

For all meetings, adequate notice shall be given personally to the members. Written notice shall be given at least ten days prior the date of the meeting. All medias of communications, e.g. mail, email, electronic messenger, telephone shall be used. If telephone is used, written notice must follow up. If a member cannot be physically present, a conference call shall be sufficient to assure participation. A majority of members shall constitute a quorum. The notice shall set forth the time, place, date, and agenda of the meeting.

**Section 6.**     **Meeting Agenda**

The agenda of meetings shall run as follows: roll call, proof of the announcement of the meeting request, reading the minutes of the preceding meeting, correspondence, reports of officers, old business, new business, elections of officers if appropriate, questions of general interests.

**Section 7.**     **Quorum/Adoption**

A majority of members present in person or proxy shall constitute a quorum for the purpose treated at any meeting. All matters discussed during the meetings shall be approved at the simple majority to be legally binding.

**Section 8.**     **Minutes**

During meetings the Secretary, or the Assistant Secretary if any, shall be present and shall take written notes of the discussion. All minutes must be kept at the principal location of the ICAONA for a period no less than three years. Minutes of all deliberative bodies shall be made available for the members on request.

**Section 9.**     **Annual Report**

At the annual meeting of the members, the Directors and the Officers shall present a report detailing the activities of the ICAONA for the immediate past calendar year. The President and the Treasurer, or a majority of the Directors of the ICAONA shall certify such report. The verified report shall become part of the permanent files of the ICAONA. A written note of such meeting shall be entered in the records of the ICAONA.

## ARTICLE    XIII — ACCOUNTING AND TAXATION POLICIES

**Section 1.**     **Books**

The ICAONA shall keep full, true and complete books, pursuant to the Nonprofit Corporation Law of the State of New York and the United States of America. Such books of accounts shall at all times be maintained at the principal office of the organization and shall be open to the inspection and examination of the public upon request and within a reasonable time as required by State and federal statutes. The ICAONA shall adopt the generally accepted accounting standards of the United States of America as applicable to nonprofit entities.

**Section** 2.      **Annual Statements**

A complete set of financial statements of the ICAONA shall be prepared within a reasonable period of time after the close of each fiscal year. A copy of financial statements shall be accessible to each member the ICAONA.

**Section 3.**     **Funds of the ICAONA**

All funds of the ICAONA shall be deposited in the ICAONA's name in a designated bank account(s). Withdrawals from such bank account(s) shall be made upon such signature(s) designated to the bank by the ICAONA's govern  ing body.

**Section 4.**     **Taxation**

The annual information tax return of the ICAONA shall be prepared and filed in accordance with the State of New York and federal tax laws, within a reasonable time after the closing of its fiscal year or within the filing period imposed by federal and State statutes.

**Section** 5.      **Other Legal Compliance**

The ICAONA shall comply with all the State of New York and federal laws determining the nonprofit status. Disclosures about donations, fundraising activities, etc., shall be executed in appropriate time and manner as prescribed by local, state and federal laws governing the nonprofit    corporations.

## ARTICLE    XIV — COMPENSATION

**Section 1.**     **Compensation**

Except as otherwise provided, the directors and officers shall not receive any compensation for services rendered to the ICAONA. Hired manager(s), employee(s) shall receive a compensation for their services. The Executive    Board shall establish guidelines for compensations. Any compensation will be subject to the financial condition of the ICAONA. Payroll taxes related to the salary should be filed with the appropriate    state and federal authorities. Compensation, if any, shall be reviewed in a meeting called by the Executive    Board    when the members deem the meeting appropriate.

**Section** 2.      **Future Compensation**

The provisions of this article shall be reviewed as often as it is necessary to reflect the changes in the operations of the ICAONA. In the future, the officers may decide to compensate themselves. The decision must be settled during a special meeting or a general meeting.

## ARTICLE XV — DISSOLUTION

The ICAONA shall have the rights to dissolve its operations at any time, provided that the dissolution is approved by a two-thirds vote of the majority of the members of the Executive Board    at any regular or special meeting of the Executive Board    ..

The ICAONA shall be deemed terminated upon completion of the dissolution, winding up, liquidation and distribution of its assets, in compliance with the State of New York and federal Nonprofit Corporation laws.

## ARTICLE XVI — AMENDMENTS

The ICAONA shall have the rights to amend, alter, change or repeal any provision contained in these bylaws, in the manner now or hereafter prescribed by statutes of the State of New York and by the Articles of Organization.

Any amendment to these bylaws must be approved by a two-thirds vote of the majority of the active members of the General Assembly, at any regular or special meeting, on proposition of the E    xecutive Board    or on proposition signed by five percent of the total active members of the ICAONA.

The proposed changes shall be set forth in the notice of the meeting. Any amendments to the articles of organization must be filed with the Secretary of State pursuant to the New York Nonprofit Corporation Law.

## ARTICLE XVII — ADOPTION

**IN WITNESS WHEREOF**, this governing instrument shall be executed **on** this 21 day of December 2002.  The current amendment has been adopted on a special Executive Board meeting on the 14th day of December 2024 and ratified by members on the XXth day of XX 2025.

**EXHIBIT G**

Fwd: You received money with Zelle(R)

Inbox



**NDF–USA**

Fri, Sep 5,
10:45 PM
(14 hours
ago)

to me

-------- Переслане повідомлення -------
Від: **Wells Fargo** <alerts@notify.wellsfargo.com>
Дата: пт, 5 вер. 2025 р. о 00:07
Тема: You received money with Zelle(R)
Кому: <ndfederation.usa@gmail.com>

**WELLS FARGO**

**INTERNATIONAL CHECKERS ASSOCIATION OF sent you $100.00**

Date: **09/04/2025**

Confirmation: **JPM99bm1y1jk**

Memo: **Refund of check#1005 of 8.28.25. Payment not accepted due to pending investigation and litigation.ICAONA has no business relation with NDF.**

We deposited the money in your Wells Fargo account.

Go to accounts

Have any questions? Please contact us.



WellsFargo.com

Enrollment with Zelle® through Wells Fargo Online® or Wells Fargo Business Online® is required. Terms and conditions apply. To send or receive money with Zelle®, both parties must have an eligible checking or savings account enrolled with Zelle® through their bank. Transactions between enrolled users typically occur in minutes. For your protection, Zelle® should only be used for sending money to friends, family, or others you trust. Neither Wells Fargo nor Zelle® offers purchase protection for payments made with Zelle® - for example, if you do not receive the item you paid for or the item is not as described or as you expected. Payment requests to persons not already enrolled with Zelle® must be sent to an email address. For more information, view the Zelle® Transfer Service Addendum to the Wells Fargo Online Access Agreement. Your mobile carrier's message and data rates may apply. Account fees (e.g., monthly service, overdraft, Small Business Account Analysis fees) may apply to Wells Fargo account(s) with which you use Zelle®.

Zelle® and the Zelle® related marks are wholly owned by Early Warning Services, LLC and are used herein under license.

Please do not reply to this automated email.

6fd68617-b40b-456e-8436-6caac57a7174 6334

DOC.7.2.1. Change of Nationality form for my student

Change of Nationality form for my student

Inbox



**Андрій Щербатюк**                                                       Sat,
                                                                         Jun 7,
                                                                         5:36 P
                                                                         M

to Rudi, Secretary, Jacek, me

**Dear Mr. Azimullah**

As you know for over three years of my residing in the USA I continuously perform activities to popularise and develop draughts, including coaching.

That is why I ask you, as a president of FMJD member organization ICAONA, to submit the Annex A NOTIFICATION OF CHANGE OF FEDERATION for my student, 15 year old player from Ukraine Yevhen Bohush, who is residing in the USA from October 8, 2023 and willing to represent the USA.

For your convenience the Annex A NOTIFICATION OF CHANGE OF FEDERATION form with all required information is attached below as well as proof of residence (the USCIS number on it is intentionally hidden).

Hope for your cooperation.

With best regards,

**Andriy Shcherbatyuk**

*Coach of Yevhen Bohush*

**Кому:** Руди, Секретарю, Яцеку, мне

Уважаемый г-н Азимулла,

Как вам известно, на протяжении более трёх лет моего проживания в США я постоянно занимаюсь популяризацией и развитием шашек, включая тренерскую деятельность.

Именно поэтому я прошу вас, как президента организации ICAONA, являющейся членом FMJD, подать **Приложение А – Уведомление о смене федерации** для моего ученика, 15-летнего игрока из Украины Евгена Богуша, который проживает в США с 8 октября 2023 года и желает представлять США.

Для вашего удобства прилагаю заполненную форму **Приложение А – Уведомление о смене федерации** со всей необходимой информацией, а также подтверждение проживания (номер USCIS на нём скрыт намеренно).

Надеюсь на ваше сотрудничество.

С наилучшими пожеланиями,
Андрей Щербатюк
Тренер Евгена Богуша

**Annex A**

**NOTIFICATION OF CHANGE OF FEDERATION**

This form must be submitted to the FMJD Office by the new Federation together with the supporting documentary evidence of date and place of birth, citizenship and residence (see Nationality Change & Transfer of Players Regulations point 3.1)

**PLAYER'S DETAILS**

| | |
|---|---|
| FMJD ID number | 25610 |
| Name | Yevhen (first name) Bohush (surname) |
| Date and Place of Birth | May 14, 2010, Ukraine |
| Current Citizenship | Ukrainian |
| Current residence (address, city, country) | 7450 Avenida Del Mar, Apt. 2001, Boca Raton, Florida, USA, 33433 |
| Old National Representation (that the player wishes to transfer from) | National representation of Ukraine |
| New National Representation (that the player wishes to transfer to) | National representation of the USA |

**CERTIFICATION AND CONSENT OF NEW FEDERATION**

We, **International Checkers Association of North America**, certify that the information provided in this form is true and accurate and consent to the nationality representation changing the above-named player from **Ukrainian** to **USA**.

_____

For and behalf of ICAONA
Name and Signatory & Designation:
Date : **June 7, 2025**

*ICAONA President*
**Rudi Azimmulah**

<mark>DOC.№ 7.2.3</mark>

Change of Federation

Inbox



**Yevgeniy Sklyarov**                                                                                      Sun, Jun 8, 10:39 PM

to andriy.m.shcherbatyuk, Rudi, Secretary, Jacek, me

Good day, Mr. Андрій Щербатюк!

Very well - let's hope that new young checkers players will appear in the USA!

In order for ICAONA to grant "NOTIFICATION OF CHANGE OF FEDERATION" to FMJD, Yevhen Bohush must do the following things:

1.      Fill out "ICAONA Registration" form

2.      Make the payment of  membership fee of $100

All information on filling out and making a payment can be found here:

https://docs.google.com/forms/d/e/1FAIpQLSf2WYO78fayTf0BtS51G5e4OGWtzz7FGJcw1ec6Zwf7o8_e2Q/viewform?vc=0&c=0&w=1&flr=0.

3.      Fill out and send to ICAONA:

       a)  Annex A    "NOTIFICATION OF CHANGE OF FEDERATION" form, and

          b)  "CONSENT OF PLAYER" form, which can be found here:

   https://www.fmjd.org/docs/policies/FMJD_nationality_transfer.pdf

If a person is a minor, and cannot sign himself, a parent (not a coach) shall sign on his behalf.

If you have any questions, don't hesitate to ask.

Best Regards! Yevgeniy Sklyarov

General Secretary of ICAONA

ПЕРЕВОД.

Добрый день, г-н Андрей Щербатюк!

Очень хорошо – будем надеяться, что в США появятся новые молодые шашисты!

Для того чтобы ICAONA подала в FMJD **"Уведомление о смене федерации" (NOTIFICATION OF CHANGE OF FEDERATION)** для Евгена Богуша, необходимо выполнить следующие действия:

1. <mark>Заполнить форму **"Регистрация в ICAONA" (ICAONA Registration)**</mark>
2. <mark>Оплатить членский взнос в размере **$100**</mark>
   Вся информация по заполнению формы и оплате находится здесь:
   <u>ссылка на Google Form</u>
3. Заполнить и отправить в ICAONA:
   a) форму **Приложение А "Уведомление о смене федерации" (Annex A NOTIFICATION OF CHANGE OF FEDERATION)**, и
   b) форму **"Согласие игрока" (CONSENT OF PLAYER)**, которую можно найти здесь:
   <u>ссылка на FMJD Nationality Transfer policy</u>

Если человек несовершеннолетний и не может подписать сам, подпись должен поставить родитель (не тренер) от его имени.

Если у вас есть вопросы, не стесняйтесь обращаться.

С наилучшими пожеланиями,
Евгений Скляров

<mark>DOC.7.2.4.</mark>

**Андрій Щербатюк**                                                          Jun 11,
                                                                            2025,
                                                                            1:17 PM

to Jacek, Secretary, me

Dear Mr. President, Dear Mr. General Secretary,

As you know, according to the FMJD recommendation I have prepared and submitted the Annex A Notification of change of Federation to the president of ICAONA Mr. R. Azimullah. I asked him to sign a form prepared by me and submit it to the FMJD in order to assure transfer of Yevhen Bohush - my student and very talented 15 year old draughts player from representation of Ukraine to representation of the USA.

As you know, the player consent form was sent to the FMJD earlier - it was signed both by Yevhen and his mother. The transfer fee will be paid by him - it will cost nothing for ICAONA.

Unfortunately I have received from Y.Sklyarov a letter (not from R.Azimullah by the way, whom I was addressing in an email earlier), where additional demands for 15 year old Yevhen Bohush were announced in order to ICAONA submit the Notification of change of representation form: fill out registration form and become a member of private organization  ICAONA, with the payment of ICAONA membership fee of $100.

These requirements are completely illegal and create obstacles to the normal transition of the player under the US flag.

Y.Skliarov wrote in the beginning of the email: "Very well - let's hope that new young checkers players will appear in the USA!" It looks like Y.Sklyarov does not understand that young players are not mushrooms after the rain - they do not appear from nowhere. Consistent work is needed to grow up a player and it is not an easy job to do. A lot of things in life that are out of our control can stop a young player from continuously participating in draughts activities, from raising his level of play, from being dedicated to draughts.

And those illegal and unacceptable demands that were announced by Y.Sklyarov create additional obstacles making it even worse.

I understand and agree that according to the FMJD statute, the application for the player's transfer is submitted by the official FMJD member organization (in our case - ICAONA). We are even ready to pay a reasonable amount to ICAONA for submitting such an application (although, in fact, I have already prepared all the documents). But this payment should in no case appear as a membership fee to their private organization.

I believe that you agree with me, that **no one should be forced to become a member of a private organization (like ICAONA) with the obligation to accept its bylaw and internal regulation etc. and pay that membership fee** in order to be able to play draughts and be part of the FMJD movement. This is a discrimination by membership in an organization.

Yevhen only wants to change the flag of representation. He is an American resident from October 2023. He wants to play draughts and be able to represent the USA.

In this case no ICAONA (or any other organization membership) is needed. A player can voluntarily decide to become a member of any organization or continue his draughts career as an independent player. And this should never impact his right to be part of FMJD structure (right to change a flag, apply for titles, participate in the official FMJD events etc.)  through the organization that received an honor from FMJD to be an official member of FMJD. Elsway the organization, determined by FMJD as official - will do harm to draughts development instead of support. And I believe FMJD should execute monitoring and control over the activities of its members in order to supervise their activities.

In conclusion I ask you to please assist in accelerating this transition, since we would like to be able to send the Yevhen Bohush to the World Championship Youth in Turkey in October 2025 under the US flag.

Hope for your understanding, cooperation and support.


*UA-USA Yevhen Bohush NOTIFICATION_OF_CHANGE_OF_FEDERATION_form is attacheb below.*

*Consent of player and residence evidence document was sent to you earlier.*

With best regards,

Andriy Shcherbatyuk

ПЕРЕВОД.

**Кому:** Яцеку, Секретарю, мне

Уважаемый господин Президент, уважаемый господин Генеральный секретарь,

Как вам известно, в соответствии с рекомендацией FMJD я подготовил и подал Приложение А «Уведомление о смене федерации» президенту ICAONA, г-ну Р. Азимулле. Я попросил его подписать подготовленную мной форму и отправить её в FMJD, чтобы обеспечить переход Евгена Богуша – моего ученика и очень талантливого 15-летнего шашиста – из представительства Украины в представительство США.

Как вам известно, форма согласия игрока была отправлена в FMJD ранее – она была подписана как Евгеном, так и его матерью. Плата за трансфер будет оплачена им – для ICAONA это ничего не будет стоить.

Yevhen only wants to change the flag of representation. He is an American resident from October 2023. He wants to play draughts and be able to represent the USA.

In this case no ICAONA (or any other organization membership) is needed. A player can voluntarly decide to become a member of any organization or continue his draughts career as an independent player. And this should never impact his right to be part of FMJD structure (right to change a flag, apply for titles, participate in the official FMJD events etc.)  through the organization that received an honor from FMJD to be an official member of FMJD. Elsway the organization, determined by FMJD as official - will do harm to draughts development instead of support. And I believe FMJD should execute monitoring and control over the activities of its members in order to supervise their activities.

In conclusion I ask you to please assist in accelerating this transition, since we would like to be able to send the Yevhen Bohush to the World Championship Youth in Turkey in October 2025 under the US flag.

Hope for your understanding, cooperation and support.


*UA-USA Yevhen Bohush NOTIFICATION_OF_CHANGE_OF_FEDERATION_form is attacheb below.*

*Consent of player and residence evidence document was sent to you earlier.*

With best regards,

Andriy Shcherbatyuk

ПЕРЕВОД.

**Кому:** Яцеку, Секретарю, мне

Уважаемый господин Президент, уважаемый господин Генеральный секретарь,

Как вам известно, в соответствии с рекомендацией FMJD я подготовил и подал Приложение А «Уведомление о смене федерации» президенту ICAONA, г-ну Р. Азимулле. Я попросил его подписать подготовленную мной форму и отправить её в FMJD, чтобы обеспечить переход Евгена Богуша – моего ученика и очень талантливого 15-летнего шашиста – из представительства Украины в представительство США.

Как вам известно, форма согласия игрока была отправлена в FMJD ранее – она была подписана как Евгеном, так и его матерью. Плата за трансфер будет оплачена им – для ICAONA это ничего не будет стоить.

поддерживать его. И я считаю, что FMJD должно осуществлять мониторинг и контроль деятельности своих членов, чтобы надзирать за их работой.

В заключение прошу вас, пожалуйста, содействовать ускорению этого перехода, так как мы хотели бы иметь возможность отправить Евгена Богуша на Молодёжный чемпионат мира в Турции в октябре 2025 года под флагом США.

Надеюсь на ваше понимание, сотрудничество и поддержку.

Форма **UA-USA Yevhen Bohush NOTIFICATION_OF_CHANGE_OF_FEDERATION** прилагается ниже.
Форма согласия игрока и документ, подтверждающий место жительства, были отправлены вам ранее.

С наилучшими пожеланиями,
Андрей Щербатюк

www.fmjd.org
office@fmjd.org



To: Mr. Rudi Azimullah
President of ICAONA
Copy to: Mr. Yevgeniy Sklyarov
General Secretary ICAONA

Dear Sir,

I would like to thank you for your letter and argumentation you brought forward to explain a situation and position of the ICAONA. However, your argumentation does not seem sufficient to justify position of the ICAONA and to address concerns raised by the FMJD.

First of all, let me remind you about the letter of your colleague Lyublyana Turiy sent by her to me on 22th April 2025 of which you were addressee yourself as well. This e-mail letter included an attachment named "InfoUSOpen_2025". In this document (its part USA Specific Qualifications) it is stated as follows: *If you are a long-time USA player and want to be ranked and qualified as such, but not yet ICAONA member, you need to join ICAONA and pay membership fees 2024 prior to the event start*.

This regulation as it was said earlier raises grave concerns to the FMJD, taking into account, that in order to be ranked and qualified for the US national championship every player should become a member of ICAONA.  Article No.4 of the ICAONA By-laws states that: *The ICAONA is open to checkers players nationwide who wish to become active members.* As the ICAONA is a non-profit and non-governmental organization then it is clear that membership of ICAONA **is and should be voluntary** and based on willingness of player to become a member of the ICAONA. Meanwhile there should be no sanctions or restrictions to those players who are not for any reason members of the ICAONA because no natural person can be forced to join non-profit organization if he/she is not willing to do so.  If ICAONA is open for draughts players it does not mean player should be forced to become a member of the ICAONA.

ICAONA as the FMJD member and therefore the national body which is responsible for US national championships may choose much more democratic and non-discriminatory approach, for example, to establish reasonable licence payment and/or increased inscription fee for tournaments which every US player registered in the FMJD database should pay to participate in the US championship and other tournaments organized by the ICAONA. Meanwhile no US player registered in the FMJD database should be denied of participation in the US championship only because of being not a member of the ICAONA and should have a right to play in the US championship with the very same rights as members of the ICAONA.

 I need to inform you that the FMJD allows every registered player (if respective federation is not suspended by the FMJD) to play in almost every draughts tournament, except World championships and continental championships for which there are qualification requirements as well as formal application of the national federation is required.  In our opinion each FMJD member should support every player and every draughts club/draughts organization but it should not be an obligation either for player or  draughts club/draughts organization to become a member of organization which represents country at the FMJD.

Core value for the FMJD is non-discrimination and priority of interests of the players. Being not a member of national federation as a non-profit organization should not be reason to deny independent players or players from other draughts club/draughts organization a right to play at the national championship. National federations should be inclusive and support all the draughts players who by their activity contribute to draughts development.

Federation Mondiale Du Jeu De Dames
Maison du Sport International, Avenue de Rhodanie 54, 1007 Lausanne
PostFinance SA IBAN: CH12 0900 0000 1616 1095 1 BIC code: POFICHBEXXX

www.fmjd.org
office@fmjd.org

As it was said earlier permitting participation in a national open championship only to members of ICAONA violates the principles of non-discrimination and fair competition. The US championship titled "Open" by definition should be accessible to all US players (including Alexander Rudnitsky whose disqualification is appealed to the FMJD Ethics committee if only FMJD Ethics Committee finds a decision of ICAONA on him to be justified) and they all should be able to play and qualify for continental and World championships. Let me once again remind you that membership of non-governmental and non-profit organization is always voluntary, therefore  restricting other players from participation on basis of non-membership of ICAONA clearly is to be considered discriminatory practice. Article  4.1. of the FMJD Statutes clearly states that FMJD and its Members reject all forms and means of discrimination against individuals, groups of people, organisations or countries on grounds of ethnic origin, gender, language, religion or politics;

I hope that above-mentioned clearly states position of the FMJD on this issue. I would like to ask you that ICAONA follows principle of non-discrimination written in the Article 4.1 FMJD Statutes and allows all US players to participate in the US Championship on full rights and irrespective of them being or not being members of the ICAONA.

Also, the latest activities of the ICAONA, namely, denying NDF-US a right to organize Miami Open 2026 as World Cup tournament as well as requiring a youth player to become a member of the ICAONA in order to permit his transfer to USA are practices which in our opinion can not be qualified as beneficial for draughts development in the USA but rather as such which tend to abuse power given by the FMJD membership instead of allowing players to represent country of their residency and to prevent other organizations for mutual work for draughts development in the USA.

Let me, please, assure you that FMJD always reacts to requests of every federation and player, especially if there are concerns on possible violations of the FMJD Statutes and other FMJD legal regulations. Let me also assure you that FMJD is ready to react decisively and to make necessary decisions to prevent any kind of discrimination against any player.  Actions of the FMJD with regard to US Championship 2025 may include, but are not limited to, possibility to decide on removing of the US championship Open from the list of tournaments published on the FMJD webpage, excluding this tournament from calculation of player rankings and not considering it as a qualification tournament for continental championship.

Taking into account all above-mentioned FMJD Executive Council may also consider adding agenda item on discriminatory practices and potential suspension/expelling of the ICAONA to the agenda of the FMJD General Assembly envisaged on 26th October this year in Turkey as a last resort options if violations of the FMJD Statutes and discriminatory practices by the ICAONA will not be stopped.

Please, inform us about your next steps by the 28th July 2025. If we will not receive your answer or ICAONA will continue above-mentioned practices FMJD Executive Council will consider next steps as mentioned above.

I stay at your disposal should you have any further questions.

Vladislavs Vesperis
FMJD Acting Secretary General
Riga/Lausanne July 8th 2025

Federation Mondiale Du Jeu De Dames
Maison du Sport International, Avenue de Rhodanie 54, 1007 Lausanne
PostFinance SA IBAN: CH12 0900 0000 1616 1095 1 BIC code: POFICHBEXXX

Page 53 of 78

**EXHIBIT H**



**International Checker Association of North America**

ICAONA          Phone: (225) 916-2828 ♦ Website:  www.icaona.org

| Rudi Azimullah, President | Rudi.azimullah@hotmail.com |
| Nicolas Derival, Vice-President | nicolenium@hotmail.com |
| Yevgeniy Sklyarov, General Secretary | Yevgeniy76@gmail.com |

-------------------------------------------------------------------------------------------------------------

May 13, 2025

**Alexander Rudnitsky**

Sunny Isles, Flororida

Subject: **Notice of Bylaw Violation and Potential Disciplinary Action**

Dear Mr. Rudnitsky,

We are writing to formally notify you that your actions have been found to be in violation of the By-laws of ICAONA, specifically ARTICLE IV, Section 1, item b (iii).

The nature of the violation is as follows:

> **Creating an organization (NDF of USA) that undermines the goals of ICAONA as the national federation of the USA as recognized by the FMJD (World Draught Federation and the PADCC (Pan American Draughts/Checkers Confederation).**

> **Publicly denying that ICAONA is the only legitimate national federation in the USA.**

As an organization committed to upholding integrity, respect, and accountability, we take such matters seriously. In accordance with our By-laws, failure to correct this behavior may result in disciplinary action, including but not limited to suspension of your membership privileges (ARTICLE IV, Section 7).

We urge you to address this matter immediately. You are expected to start the process of renaming your organization no later than June 01, 2025. In addition, by May 15, 2025 you are expected to update your website and other promotional materials to acknowledge the existence of ICAONA and its role as the official national draughts federation of USA.

We value your membership and hope to resolve this issue constructively. Please take this opportunity to correct the situation and continue your participation in good standing.

5/13/2025

Sincerely,

Rudi Azimullah

**President of** ICAONA



**International Checker Association Of North America/USA**
**American National Federation of International Draughts/Checkers**
Phone: (225) 916-2828 ♦ Website: www.icaona.org

Rudi Azimullah, President                     e-mail: Rudi.azimullah@hotmail.com
Nicolas Derival, Vice-President              e-mail: nicolenium@hotmail.com
Yevgeniy Sklyarov, General Secretary    e-mail: yevgeniy76@gmail.com

---------------------------------------------------------------------------------------------------------------------

## Memorandum

TO:    Mr. Alexander Rudnitsky

DATE:   June 03, 2025

RE: **Formal Notice of Membership Suspension Due to Non-Compliance with ICAONA By-laws**

**Dear Mr. Rudnitsky,**

This correspondence serves as formal notice that, effective immediately, your membership in the International Checkers and Draughts Organization of North America (ICAONA) is hereby suspended in accordance with ARTICLE IV, Section 7 of the ICAONA By-laws.

As previously communicated in our letter dated May13, 2025, you were found to be in material breach of ARTICLE IV, Section 1, item b (iii) of the ICAONA By-laws. Specifically, your conduct included the following violations:

- The establishment and active promotion of the so-called "NDF of USA," an entity which directly challenges the authority, legitimacy, and recognition of ICAONA as the sole official national draughts federation acknowledged by both the FMJD and PADCC;
- Public dissemination of statements that mischaracterized ICAONA's official status and misrepresented the structure of the draughts governance framework within the United States.

You were afforded an opportunity to remedy these infractions. In particular, you were directed to:

1. Initiate the renaming of your organization no later than June 1, 2025; and
2. Revise your website and all promotional materials to clearly acknowledge ICAONA's official role as the recognized national body no later than May 15, 2025.

To date, you have failed to comply with either of these directives. Your inaction and continued contravention of ICAONA's directives constitute a willful and sustained breach of your obligations as a member. In light of your non-compliance and pursuant to ARTICLE IV, Section 7, ICAONA is compelled to impose a disciplinary suspension of your membership for a maximum duration of two (2) years.

During the suspension period, you shall be barred from exercising any rights or privileges of membership, including—but not limited to—participation in ICAONA-sanctioned events, communications, deliberations, or any official capacity associated with ICAONA.

You retain the right to petition for reinstatement at any time within the suspension period by submitting a formal written request to the ICAONA Executive Board. Such a request must be accompanied by



**International Checker Association Of North America/USA**
**American National Federation of International Draughts/Checkers**
Phone: (225) 916-2828 ♦ Website: www.icaona.org

Rudi Azimullah, President                    e-mail: Rudi.azimullah@hotmail.com
Nicolas Derival, Vice-President              e-mail: nicolenium@hotmail.com
Yevgeniy Sklyarov, General Secretary         e-mail: yevgeniy76@gmail.com
-----------------------------------------------------------------------------------------------------------------------------

## Memorandum

TO:     Mr. Alexander Rudnitsky

DATE:   June 03, 2025

RE: **Formal Notice of Membership Suspension Due to Non-Compliance with ICAONA By-laws**

**Dear Mr. Rudnitsky,**

This correspondence serves as formal notice that, effective immediately, your membership in the International Checkers and Draughts Organization of North America (ICAONA) is hereby suspended in accordance with ARTICLE IV, Section 7 of the ICAONA By-laws.

As previously communicated in our letter dated May13, 2025, you were found to be in material breach of ARTICLE IV, Section 1, item b (iii) of the ICAONA By-laws. Specifically, your conduct included the following violations:

- The establishment and active promotion of the so-called "NDF of USA," an entity which directly challenges the authority, legitimacy, and recognition of ICAONA as the sole official national draughts federation acknowledged by both the FMJD and PADCC;
- Public dissemination of statements that mischaracterized ICAONA's official status and misrepresented the structure of the draughts governance framework within the United States.

You were afforded an opportunity to remedy these infractions. In particular, you were directed to:

1. Initiate the renaming of your organization no later than June 1, 2025; and
2. Revise your website and all promotional materials to clearly acknowledge ICAONA's official role as the recognized national body by no later than May 15, 2025.

To date, you have failed to comply with either of these directives. Your inaction and continued contravention of ICAONA's directives constitute a willful and sustained breach of your obligations as a member. In light of your non-compliance and pursuant to ARTICLE IV, Section 7, ICAONA is compelled to impose a disciplinary suspension of your membership for a maximum duration of two (2) years.

During the suspension period, you shall be barred from exercising any rights or privileges of membership, including—but not limited to—participation in ICAONA-sanctioned events, communications, deliberations, or any official capacity associated with ICAONA.

You retain the right to petition for reinstatement at any time within the suspension period by submitting a formal written request to the ICAONA Executive Board. Such a request must be accompanied by

**EXHIBIT I**

www.fmjd.org
office@fmjd.org



To: Mr. Alexander Rudnitsky

Copy to: Mr. Rudi Azimullah
President of ICAONA

Dear Sir,

With this letter I would like to confirm receiving of your letter by which you submit complaint about actions of the ICAONA, namely of your ICAONA membership suspension. You have also attached the letter from the President of the ICAONA, Mr. R. Azimullah, by which he informs you of disciplinary suspension of your membership in ICAONA for two years. Such a decision is justified by statement of ICAONA which indicates your potential violations as follows:

1) The establishment and active promotion of the so-called "NDF of USA," an entity which directly challenges the authority, legitimacy, and recognition of ICAONA as the sole official national draughts federation acknowledged by both the FMJD and PADCC;

⬜ 2) Public dissemination of statements that mischaracterized ICAONA's official status and misrepresented the structure of the draughts governance framework within the United States.

In an opinion of the FMJD for non-profit organization membership is always voluntary in the democratic countries, so we do believe and assume that in the USA it should be organized very much the same way, i.e that membership of both ICAONA and NDF-US is and should always be voluntary as well.  For player to represent a country and to be affiliated with your national draughts federation should not mean mandatory membership of the national federation as player can be a member of draughts club or be an independent player as well and should not be discriminated because of that.  As concerns names of organizations FMJD can not doubt choice of the name of either NDF-US or ICAONA  or support requests of any of them to change a name of other organization as both organizations with such names are properly registered according to the USA law.

We woud like to remind that you and Mr. Azimullah were present during the meeting of the FMJD Executive Council on 3rd March. In this meeting FMJD confirmed that the ICAONA is a legitimate representative of the USA at the FMJD and you supported that  and affirmed that you fully respect it and NDF-US has no intention to challenge rights of the ICAONA as a FMJD member. We would like therefore to underline that FMJD does not have evidence about such public statements which are mentioned by the President of the ICAONA.

I would to inform you that we are aware of your request regarding actions of the ICAONA whivh you have submitted to the Committee of Ethics of the FMJD.  FMJD considers it is now for the Committee of Ethics of the FMJD to evaluate your request and provide an opinion on it to the FMJD Executive Council for further decisons, if such would be needed.

www.fmjd.org
office@fmjd.org

Core value for the FMJD is non-discrimination and interests of the players, therefore FMJD always prioritises needs and interests of draughts players  as well as follows principle of non-discrimination  and precautionary principle, which should be applied irrespective of internal disputes between players and national federations, except if there is clear and proven evidence that the player violated FMJD Statutes or other legal FMJD documents or national law.

**From the above-mentioned and all evidence which is available by now FMJD does not see sufficient grounds for ICAONA's decision to put restrictive measures and limit your rights as of a player. Therefore FMJD confirms  rights of Mr. Alexander Rudnitsky to participate in the World championship Veterans 2025 as well as in the other FMJD events or other international tournaments while there is no decision of the FMJD Ethics Committee submitted which could be then further considered by the FMJD Executive Council.**

We would like to kindly ask once again you and other US draughts players and the ICAONA leadership to end unproductive internal disputes and instead to start working together for benefit of the draughts development in the US.

I stay at your disposal should you have any further questions.

Vladislavs Vesperis
FMJD Acting Secretary General
Riga/Lausanne June 15th 2025

Federation Mondiale Du Jeu De Dames
Maison du Sport International, Avenue de Rhodanie 54, 1007 Lausanne
PostFinance SA IBAN: CH12 0900 0000 1616 1095 1 BIC code: POFICHBEXXX

Fédération Mondiale du Jeu de Dames Maison du Sport International, Avenue de Rhodanie 54, 1007 Lausanne
*Registration reference 550.1.237.940 UID        CHE-457.723.078 Bank: PostFinance SA, IBAN CH12 0900 0000 1616 1095*



## To the Organisers of the Miami Open,

I gratefully accept your kind invitation to serve as honorary patron of your tournament—an honour I receive with genuine appreciation.

Draughts is a sport that unites millions across continents—a global community bound by a shared passion for strategy, discipline, and the quiet elegance of the game. Yet for all its reach and richness, the vitality of our sport depends not only on those who play it, but also on those who devote themselves to its organisation and growth. Without such dedication, the enthusiasm of our players alone would not suffice to sustain the continued development of the FMJD.

Throughout nearly three decades of service within the FMJD, it has been my enduring mission to see draughts flourish in new corners of the world. Today, I watch with genuine satisfaction as the draughts community gains momentum in the United States. This is a moment the global draughts family has long awaited—and warmly welcomes.

I am confident that the Miami Open will become a true celebration of draughts in the USA: a landmark event that inspires pride, participation, and progress. I warmly encourage players, supporters, and enthusiasts alike to take part in this tournament—to show their support and belief in the future of our sport. It is my sincere hope that the Miami Open will soon take its place among the distinguished tournaments of the World Cup series.

Once again, thank you for the honour of serving as patron of the Miami Open 2025. It is a distinction I accept with pride and humility.

Jacek Pawlicki

FMJD President

Szczecin/Lausanne, June 6th 2025

**EXHIBIT J**

www.fmjd.org
office@fmjd.org



To: Mr. Rudi Azimullah
President of ICAONA
Copy to: Mr. Yevgeniy Sklyarov
General Secretary ICAONA

Dear Sir,

I would like to thank you for your letter and argumentation you brought forward to explain a situation and position of the ICAONA. However, your argumentation does not seem sufficient to justify position of the ICAONA and to address concerns raised by the FMJD.

First of all, let me remind you about the letter of your colleague Lyublyana Turiy sent by her to me on 22th April 2025 of which you were addressee yourself as well. This e-mail letter included an attachment named "InfoUSOpen_2025". In this document (its part USA Specific Qualifications) it is stated as follows: *If you are a long-time USA player and want to be ranked and qualified as such, but not yet ICAONA member, you need to join ICAONA and pay membership fees 2024 prior to the event start.*

This regulation as it was said earlier raises grave concerns to the FMJD, taking into account, that in order to be ranked and qualified for the US national championship every player should become a member of ICAONA. Article No.4 of the ICAONA By-laws states that: *The ICAONA is open to checkers players nationwide who wish to become active members.* As the ICAONA is a non-profit and non-governmental organization then it is clear that membership of ICAONA **is and should be voluntary** and based on willingness of player to become a member of the ICAONA. Meanwhile there should be no sanctions or restrictions to those players who are not for any reason members of the ICAONA because no natural person can be forced to join non-profit organization if he/she is not willing to do so. If ICAONA is open for draughts players it does not mean player should be forced to become a member of the ICAONA.

ICAONA as the FMJD member and therefore the national body which is responsible for US national championships may choose much more democratic and non-discriminatory approach, for example, to establish reasonable licence payment and/or increased inscription fee for tournaments which every US player registered in the FMJD database should pay to participate in the US championship and other tournaments organized by the ICAONA. Meanwhile no US player registered in the FMJD database should be denied of participation in the US championship only because of being not a member of the ICAONA and should have a right to play in the US championship with the very same rights as members of the ICAONA.

I need to inform you that the FMJD allows every registered player (if respective federation is not suspended by the FMJD) to play in almost every draughts tournament, except World championships and continental championships for which qualification requirements as well as formal application of the national federation is required. In our opinion each FMJD member should support every player and every draughts club/draughts organization but it should not be an obligation either for player or draughts club/draughts organization to become a member of organization which represents country at the FMJD.

Core value for the FMJD is non-discrimination and priority of interests of the players. Being not a member of national federation as a non-profit organization should not be reason to deny independent players or players from other draughts club/draughts organization a right to play at the national championship. National federations should be inclusive and support all the draughts players who by their activity contribute to draughts development.

Federation Mondiale Du Jeu De Dames
Maison du Sport International, Avenue de Rhodanie 54, 1007 Lausanne
PostFinance SA IBAN: CH12 0900 0000 1616 1095 1 BIC code: POFICHBEXXX

www.fmjd.org
office@fmjd.org

As it was said earlier permitting participation in a national open championship only to members of ICAONA violates the principles of non-discrimination and fair competition. The US championship titled "Open" by definition should be accessible to all US players (including Alexander Rudnitsky whose disqualification is appealed to the FMJD Ethics committee if only FMJD Ethics Committee finds a decision of ICAONA on him to be justified) and they all should be able to play and qualify for continental and World championships. Let me once again remind you that membership of non-governmental and non-profit organization is always voluntary, therefore  restricting other players from participation on basis of non-membership of ICAONA clearly is to be considered discriminatory practice. Article  4.1. of the FMJD Statutes clearly states that FMJD and its Members reject all forms and means of discrimination against individuals, groups of people, organisations or countries on grounds of ethnic origin, gender, language, religion or politics;

I hope that above-mentioned clearly states position of the FMJD on this issue. I would like to ask you that ICAONA follows principle of non-discrimination written in the Article 4.1 FMJD Statutes and allows all US players to participate in the US Championship on full rights and irrespective of them being or not being members of the ICAONA.

Also, the latest activities of the ICAONA, namely, denying NDF-US a right to organize Miami Open 2026 as World Cup tournament as well as requiring a youth player to become a member of the ICAONA in order to permit his transfer to USA are practices which in our opinion can not be qualified as beneficial for draughts development in the USA but rather as such which tend to abuse power given by the FMJD membership instead of allowing players to represent country of their residency and to prevent other organizations for mutual work for draughts development in the USA.

Let me, please, assure you that FMJD always reacts to requests of every federation and player, especially if there are concerns on possible violations of the FMJD Statutes and other FMJD legal regulations. Let me also assure you that FMJD is ready to react decisively and to make necessary decisions to prevent any kind of discrimination against any player.  Actions of the FMJD with regard to US Championship 2025 may include, but are not limited to, possibility to decide on removing of the US championship Open from the list of tournaments published on the FMJD webpage, excluding this tournament from calculation of player rankings and not considering it as a qualification tournament for continental championship.

Taking into account all above-mentioned FMJD Executive Council may also consider adding agenda item on discriminatory practices and potential suspension/expelling of the ICAONA to the agenda of the FMJD General Assembly envisaged on 26th October this year in Turkey as a last resort options if violations of the FMJD Statutes and discriminatory practices by the ICAONA will not be stopped.

Please, inform us about your next steps by the 28th July 2025. If we will not receive your answer or ICAONA will continue above-mentioned practices FMJD Executive Council will consider next steps as mentioned above.

I stay at your disposal should you have any further questions.

Vladislavs Vesperis
FMJD Acting Secretary General
Riga/Lausanne July 8th 2025

Federation Mondiale Du Jeu De Dames
Maison du Sport International, Avenue de Rhodanie 54, 1007 Lausanne
PostFinance SA IBAN: CH12 0900 0000 1616 1095 1 BIC code: POFICHBEXXX

DOC. № 9.3, E+R, Letter from Ev.Sk, to A.Rud. confirmed no allow play in US-2025

**Yevgeniy Sklyarov**

2025-08-13.

to me, Rudi

7:27 PM (1 hour ago)

| | |
|---|---|
| from: | **Yevgeniy Sklyarov** <yevgeniy76@gmail.com> |
| to: | ALEXANDER RUDNITSKY <alexrud41948@gmail.com> |
| cc: | Rudi Azimullah <azimurs@gmail.com> |
| date: | Aug 13, 2025, 7:27 PM |
| subject: | Re: Alexander Rudnitsky. |
| mailed-by: | gmail.com |
| signed-by: | gmail.com |

Mr. Alexander Rudnitsky,

As you were informed by the letter sent to you on June 3, 2025 , you are suspended from USA national federation ICAONA for the period of two years and in according with **Article IV Section 7 - Sanctions** of ICAONA By-Laws( **For** a second offense or **refusal to comply, the member shall be suspended from ICAONA's activities for two years)** you are banned from attending and participating in the events organized by ICAONA during that period:

Therefore, you cannot participate neither in the US national championship 2025 nor in the 13th US Open tournament, as well as in any future events organized by ICAONA in 2026.

This has been stated to you repeatedly in the previous correspondence together with the stipulation that if you decide to comply with the requirements set by ICAONA Executive Board to resolve the issues that caused your suspension, the Executive Board of ICAONA will be willing

to reconsider the terms of your suspension and possibly lift it. We urge you to consider this opportunity to make your reinstatement possible.

    This is a final response on that issue.

    Best regards!

    Yevgeniy Sklyarov

    General Secretary of ICAONA

Г-н Александр Рудницкий,

Как Вам было сообщено в письме от 3 июня 2025 года, Вы отстранены от национальной федерации США ICAONA на срок два года. В соответствии со **Статьёй IV, Разделом 7 – Санкции** Устава ICAONA («За повторное нарушение или отказ выполнить требования член отстраняется от деятельности ICAONA на два года») Вам запрещено посещать и участвовать в мероприятиях, организованных ICAONA, в течение указанного периода.

Таким образом, Вы не можете участвовать ни в Чемпионате США 2025 года, ни в 13-м Открытом турнире США, а также ни в каких будущих мероприятиях, организованных ICAONA в 2026 году.

Это неоднократно доводилось до Вас в предыдущей переписке, вместе с указанием, что если Вы примете решение выполнить требования, установленные Исполнительным советом ICAONA для урегулирования вопросов, ставших причиной Вашего отстранения, Исполнительный совет ICAONA будет готов пересмотреть условия Вашего отстранения и, возможно, снять его. Мы настоятельно призываем Вас рассмотреть эту возможность, чтобы сделать возможным Ваше восстановление.

Это окончательный ответ по данному вопросу.

С наилучшими пожеланиями,
Евгений Скляров
Генеральный секретарь ICAONA

1

## ADDRESS TO FMJD AND THE ETHICS COMMITTEE.

We, the undersigned players, coaches and referees of the draughts community of the USA and other countries, express our protest against the disqualification of Mr. Alexander Rudnitsky, initiated by ICAONA.

A. Rudnitsky is one of the strongest players of the American continent (Five-time USA Champion, Prize-winner of the Pan-American Championship 2024, World Champion among veterans: 2022 (classic), 2024 (rapid)).

We ask the FMJD and Ethics Committee to reinstate Mr. Rudnitsky in his rights and to confirm his right to participate in all international tournaments of FMJD, including the qualifying championships.

Respectfully.

| № | First Name and Last Name. | COUNTRY | TITLES | Signature and Date |
|---|---|---|---|---|
| 1 | Andriy Shcherbatyuk | USA/UKRAINE | INTERNATIONAL REFEREE, President of the National Draughts Federation of the USA | August, 23 2025 |
| 2 | ALEX AKSELRUD | USA | Vice President NDF Referee US-Open Referee Miami Open 2025 | August, 24 2025 |
| 3 | Michael SEVERV | ISSA | NDF MeMbers | 8-29-25 |
| 4 | LOMEGARd KERSHINUI | USA | NDF Members | 8-29-25 |

2

ADDRESS TO FMJD AND THE ETHICS COMMITTEE.

| 5 | Yevhen Bohush | USA / Ukraine | Member of NDF, USA Checkers youth champion | Yev Bu 08.23.25 |
| 6 | Alexander RUDNITSKY | USA | Five-time U.S. Champion, Two-time World VC (Eou) First Vice-President NDF | A. Rudnitsky, 08.28.2025 |
| 7 | Jean-Renaud JOSEPH | USA | Secretary NDF | J R Joseph |
| 8 | Wilbert Aly Edouard | USA | Members | |
| 9 | Claude Boulouté | USA | NDF Icaona members | |
| 10 | Jbrahim | USA | NDE Members | |
| 11 | FRANTE MONDELUS | USA | NDF Member | |
| 12 | Yves Guerrier | Haïti | LE GENIE | |

3

ADDRESS TO FMJD AND THE ETHICS COMMITTEE.

| 13 | Jean - Bertrand Stephane Poliscard | Haiti | Le Génie | Poliscard Stephane |
| 14 | Wilner Jean Baptiste | USA | N D F Member | B |
| 15 | Mark Sokolovsky | USA | member N D F and ICAONA | Mark 09.08.2025 |
| 16 | Thierry HALLITJUVIN | USA | MEMBER NDF & ICAO-UA | |
| 17 | Anton KOSIOR | Nederland | World champion Blitz seniors | |
| 18 | TON VAN BOUHUIJEN | NEDERLAND | M F ( FMJD) | Ton van bouloween |
| 19 | LEONARD VORONOV | USA | MASTER. Member of NDF | 09-10-2025 |
| 20 | PALUCH Piotr L | POLAND | MASTER FMJD | 08.11.25 |

4

ADDRESS TO FMJD AND THE ETHICS COMMITTEE.

| 21 | Alexander Mogilyansky | USA | international GrandMaster etc, | [signature] Sept 4/2025 |
| 22 | Guntis Valneris | LATVIA | international grandmaster World Champion Blitz 2025 | [signature] Sept 5/2025 |
| 23 | Alexander Shvartsman | Israel | International Grandmaster World Champion in Draughts | Confirmed by Email Sept. 9, 2025, 2:53 AM shvartsman667@gmail.com |
| 24 | Ivan Trofimov | FMJD USA | International, Grand master. Winner and medalist World Cup MEMBER NDF, ICRONA | confirmed by Email Sept. 10, 2025, 11:20 PM shotman239@gmail.com |
| 25 | NIMBI Fidele | FRANCE | MI FIDELE CHAMPION International Master | [signature] 09/09/2025 |
| 26 | MAKENENY Hint Juste | USA | CHAMPION PANAMPICON 2022 DR Members NDF | [signature] |
| 27 | Stouveus Bitong WonG | CanaDa | international master | [signature] 09-11-25 |
| 28 | MUNKHJIN BAATARSUKH | USA | GMI1 MEMBER ICRONA AND NDF | [signature] 11/09/25 |

5

ADDRESS TO FMJD AND THE ETHICS COMMITTEE.

| 29 | BALIGAND Ghislain | France | Player | |
| 30 | ESTEBE Gabriel | France | Player | |
| 31 | Jean J. Fleurimo | USA | Member NDF | |
| 32 | Kseniia Yaremchuk | USA | Master, Member NDF | 08.11.25 |
| 33 | Santosh Bhagwandas | Suriname | Draught player | 11-9-25 |
| 34 | Eberne Sylvain | USA | Draught Player Member ACARONA NDF | 11/12/25 |
| 35 | Dorga-Misier Rodian W. | Suriname | Draught player | Dorga-misier 11/9/2025 |
| 36 | VADYM LAPIN | USA-UKRAINE | IM, member of NDF | 5/12/2075 |



**Alexander Shvartsman**

2:53 AM
(4 hours
ago)

to me

| | |
|---|---|
| from: | Alexander Shvartsman <shvartsman67@gmail.com> |
| to: | ALEXANDER RUDNITSKY <alexrud41948@gmail.com> |
| date: | Sep 9, 2025, 2:53 AM |
| subject: | Re: Alexander Rudnitsky |
| mailed-by: | gmail.com |
| signed-by: | gmail.com |
| security: | Standard encryption (TLS) Learn more |

Important mainly because it was sent directly to you.

confirm my support for the letter
to the FMJD and the Ethics Committee
and request to be included
in the list of signatories.

Alexander Shvartsman,
International Grandmaster,
World Champion in Draughts,



**Ivan Trofimov**

Tue, Sep 9,
11:20 PM (7
hours ago)

to me

| | |
|---|---|
| from: | Ivan **Trofimov** <shotman239@gmail.com> |
| to: | ALEXANDER RUDNITSKY <alexrud41948@gmail.com> |
| date: | Sep 9, 2025, 11:20 PM |
| subject: | Re: Alex Rudnitsky. |
| mailed-by: | gmail.com |
| signed-by: | gmail.com |
| security: | Standard encryption (TLS) Learn more |
| : | Important mainly because it was sent directly to you. |

I, Ivan Trofimov,
International Grandmaster,
Winner and medalist of World Cups
confirm my support for the letter
to the FMJD and the Ethics Committee
and request to be included
in the list of signatories.

**EXHIBIT K**

DOC.№ 6.5.

2024-12-09

Dear Mr. S. Buurke !
Please explain why our Miami-OPEN 2025 was removed from the FMJD
calendar with the status of the 3-star World Cup stage? What happened?
The proposal to give our MIAMI - OPEN 2025 the status of the World Cup
stage came from the President of FMJD Mr.J.Pawlicki. After that, we
wrote an official letter. FMJD has officially included our tournament in
the 2025 calendar. We started serious work on the preparation of this
tournament. And suddenly, quite unexpectedly, without prior discussion
with us, this tournament was removed from the FMJD 2025 Calendar???
Please respond urgently. We were already forced to suspend preparations,
refused to sign a contract with the hotel, stopped working with
investors.
My E-mail is: ALEXRUD41948@GMAIL.COM
Cell: +(1) - 786 - 5431034
Best regards,
Vice-President NDF of the USA
Alex Rudnitsky.


2024-12-09

Уважаемый г-н С.Буурке!

Пожалуйста, объясните, почему наш Miami-OPEN 2025 был удален из FMJD

календарь со статусом 3-звездочного этапа Кубка мира? Что случилось?

Предложение дать нашему МАЙАМИ - OPEN 2025 статус чемпионата мира

этап пришел от президента FMJD Mr. J.Pawlicki. После этого мы

написал официальное письмо. ФМЖД официально включил наш турнир в

календарь 2025 года. Мы начали серьезную работу по подготовке этого

турнир. И вдруг, совершенно неожиданно, без предварительного обсуждения

с нами этот турнир был удален из Календаря FMJD 2025???

Пожалуйста, ответьте срочно. Мы уже были вынуждены приостановить подготовку,

отказался подписывать договор с отелем, прекратил работу с

инвесторы.

Мой E-mail: ALEXRUD41948 @ GMAIL.COM

Ячейка: + (1) - 786 - 5431034

С уважением,

Вице-президент NDF США  Алекс Рудницкий.

OOOOOOOOOOOOOOOOOOOOOOOOOOOOOOOOOOO

2024-12-10

Dear Mr. Rudnitsky,

 From Jacek Pawlicki I got this email. I did not receive it because you sent it to a wrong email address. We all would like to see a tournament in your country, but we received a disturbing message. The situation in your country is not entirely clear to me. This email prompted the event to be removed from the calendar. There needs to be clarity about this. Ms Turiy will be present as a referee in the world championship matches from 18 to 31 December this year in The Netherlands. I will also ask her about the situation in your country. In this email I send you her email regarding the tournament in Miami.

Kind regards, Siep Buurke, Tournament Director FMJD.

2024-12-10

Уважаемый г-н Рудницкий,

От Яцека Павлицки я получил это письмо. Я не получил его, потому что вы

отправил его на неправильный адрес электронной почты. Мы все хотели бы увидеть турнир

в вашей стране, но мы получили тревожное сообщение. Ситуация в

ваша страна мне не совсем понятна. Это письмо побудило мероприятие

для удаления из календаря. В этом должна быть ясность.

Госпожа Турий будет присутствовать в качестве рефери на матчах мирового первенства

с 18 по 31 декабря этого года в Нидерландах. Я также спрошу ее

о ситуации в вашей стране. В этом письме я отправляю вам ее письмо

относительно турнира в Майами.

С уважением, Зип Буурке, директор турнира FMJD.

On 2024-11-13 12:48, ltur@optonline.net wrote:

Dear Siep,

I was asked by our organization to approach you on a different subject than World Title matches.

We have recently spotted and were very surprised to see the following entry in the FMJD 2025 calendar which we were told you were responsible to put together:

Our organization - USA national draughts federation ICAONA -  did not make such request although we seriously considered organizing World Cup but believed that we could not be ready by the June 30 deadline. Whoever sent this request (and we have our suspicions on who that may be), did not ask for our approval and, therefore, likely forged the signature of ICAONA president Mr. Rudi Azimullah on the World Cup application form.  Mr. Azimullah wanted to get to the bottom of this, and he sent the request to the FMJD Office to see the filled-in application form that was sent to you.  He received the following reply from Ms. Agnieszka Stajszczak:

Exactly at the same time as Ms. Agnieszka was sending him that, she sent the attached email to all federations where she put the new tournament in - ignoring his statement that such tournament is not legal as it has not been approved by the national federation! It really puzzled me that she decided to do it without waiting for your return from China as she has promised to Mr. Azimullah, that she will.

Can you please get in touch with Ms. Agnieszka and ask her to remove this falsified "event" from FMJD Calendar 2025 until you have time to investigate this situation and discuss it with Mr. Azimullah? Do you have in your possession the filled in World Cup application form (see the empty one attached) that was sent to you by the organizers of "Miami Open" that you can forward to him?

The people who are behind this, are in serious violation of the World Cup rules, not even talking about ethical or legal consequences of their actions.  Needless to say that if they falsified the ICAONA approval on the application document, they likely lied in it also about the accommodation for players, prizes etc.... that will potentially put FMJD in a very uncomfortable position if you allow

this tournament to be conducted, as FMJD will share the responsibility for it.  As Ms. Agnieszka said that adding this tournament was your responsibility, I sincerely hope that you understand the seriousness of the wrongful actions committed by those who have misled you with false information, and you will find the time to respond to Mr. Azimullah, or at least for now, temporarily remove the tournament listing from 2025 calendar.

I wish you to have a pleasant stay in China and look forward to seeing you upon my arrival to Netherlands.

Best,

Luba Turiy

0000000000000000000000000000

В 2024-11-13 12:48 ltur@optonline.net писал:

Уважаемый Зип,

Наша организация попросила меня обратиться к вам по другому вопросу

чем матчи за титул чемпиона мира.

Мы недавно заметили и были очень удивлены, увидев следующее

запись в календаре FMJD 2025, которую нам сказали, что вы

ответственный, чтобы собрать вместе:

Наша организация - национальная федерация шашек США ICAONA - не

сделать такой запрос, хотя мы серьезно рассматривали вопрос об организации Всемирного

Кубок, но считал, что мы не можем быть готовы к крайнему сроку 30 июня.

Тот, кто отправил этот запрос (и у нас есть наши подозрения относительно того, кто может

быть), не просил нашего одобрения и, следовательно, вероятно, подделал

подпись президента ICAONA г-на Руди Азимуллы на чемпионате мира

форма заявки. Г-н Азимулла хотел докопаться до сути этого,

и он отправил запрос в офис FMJD, чтобы увидеть заполненную

форма заявки, которая была отправлена вам. Он получил следующие

ответ г-жи Агнешки Стайщак:

Точно в то же время, когда г-жа Агнешка отправляла ему это, она

отправила прикрепленное электронное письмо всем федерациям, где она поставила новый

турнир в - игнорируя его утверждение, что такой турнир не

законный, поскольку он не был одобрен национальной федерацией! Это

действительно озадачил меня, что она решила сделать это, не дожидаясь вашего

возвращение из Китая, как она обещала г-ну Азимулле, что она будет.

Не могли бы вы связаться с г-жой Агнешкой и попросить ее удалить

это фальсифицированное «событие» из Календаря FMJD 2025, пока у вас не будет времени

расследовать эту ситуацию и обсудить ее с г-ном Азимуллой? Вы

имейте в своем распоряжении заполненную форму заявки на участие в чемпионате мира (см.

пустой прилагается), который был отправлен вам организаторами

«Майами Опен», который вы можете переслать ему?

Люди, которые стоят за этим, находятся в серьезном нарушении Мира

Правила Кубка, даже не говоря об этических или правовых последствиях

их действия. Излишне говорить, что если они сфальсифицировали ICAONA

утверждение на документе заявки, они, вероятно, лгали в нем также

о размещении для игроков, призы и т.д.... что будет

потенциально поставить FMJD в очень неудобное положение, если вы позволите

этот турнир будет проводиться, так как FMJD разделит ответственность

за это. Как сказала г-жа Агнешка, добавление этого турнира было вашим

ответственность, я искренне надеюсь, что вы понимаете серьезность

противоправных действий, совершенных теми, кто ввел вас в заблуждение

ложная информация, и вы найдете время, чтобы ответить мистеру

Азимулла, или хотя бы пока, временно убираем турнир

листинг из календаря 2025 года.

Я желаю вам приятного пребывания в Китае и с нетерпением жду встречи с

Вы по прибытии в Нидерланды.

С наилучшими пожеланиями,

Люба Турий

[11:27 PM, 1/17/2025]. I have some ideas. Replying to Clifton letter and asking him to continue his support can be the first step. I have asked my friend, a copyright lawyer to meet with me, perhaps he can give me ideas of what we can do here in USA

[11:28 PM, 1/17/2025. Just a few textes publidhed and discussed on our WhatsApp group last week

[11:28 PM, 1/17/2025]. It is true that pawlicki was and continue to be in the secret correspondence with Rudnitsky and Scherbatyuk. I was told that he supported scherbatyuk in the past. We should fight against that corruption. You wrote a beautiful letter on icaona website. Perhaps if you modify it for international community, and distribute it to the same places that Clifton wrote? Thank him to his support and ask leaders of our countries to stay United with us and don't support NDF by dealing with them to give them any legitimacy.

[11:29 PM, 1/17/2025]. Another measure was recommended to me by KNDB colleague. He said if that would have happened in Netherlands, Rudnitsky would have been banned and disqualified from all the events. Maybe you can threaten him that if he does not stop with his illegal organization and continue his insults toward me and other members of icaona he can be disqualified and will not go to world championship? Maybe that will stop him? He did enough already to deserve it.

**EXHIBIT L**



**ICAONA**

**International Checker Association Of North America**

Phone: (225) 916-2828 ♦ Website: www.icaona.org

| | |
|---|---|
| Rudi Azimullah, President | e-mail: Rudi.azimullah@hotmail.com |
| Lyublyana Turiy, Technical Director | e-mail: admin@icaona.org |
| Yevgeniy Sklyarov, General Secretary | e-mail: yevgeniy76@gmail.com |

---

August 04 2024

US Embassy, Republic of China, Consular Office

Re: On behalf of:

○ Mr. LAN, TZU-CHIEH, Nationality: Republic of China, Date of Birth: June 29 2009,
  Place of Birth:  Kaohsiung City, Passport No: 360728645, Date of Issue: November 18 2022,
  Expiration Date: November 18 2027, Issuing Authority: Ministry of Foreign Affairs.
○ Mr. CHEN, HUANG-YUN, Nationality: Republic of China, Date of Birth: June 28 2012,
  Place of Birth: Kaohsiung City, Passport No: 364827245, Date of Issue: January 31 2024,
  Expiration Date: January 31 2029, Issuing Authority: Ministry of Foreign Affairs.
○ Ms. CHANG, YUN-HSUAN, Nationality: Republic of China, Date of Birth: August 18 2014,
  Place of Birth: Kaohsiung City, Passport No: 361818844, Date of Issue: April 10 2023,
  Expiration Date: April 10 2028, Issuing Authority: Ministry of Foreign Affairs.
○ Mr. CHANG, CHEN-KAI, Nationality: Republic of China, Date of Birth: June 15 2016,
  Place of Birth: Kaohsiung City, Passport No: 361818853, Date of Issue: April 10 2023,
  Expiration Date: April 10 2028, Issuing Authority: Ministry of Foreign Affairs.
○ Ms. GAO, YI-PING, Team Leader, Nationality: Republic of China, Date of Birth: April 30 1976,
  Place of Birth: Shanghai City, Passport No: 364377886, Date of Issue: November 30 2023,
  Expiration Date: November 30 2033, Issuing Authority: Ministry of Foreign Affairs.
○ Ms. HSU, YING-HSIN, Accompanying person, Nationality: Republic of China, Date of Birth:
  June 17 1982, Place of Birth: Tainan City, Passport No: 350088767, Date of Issue: March 05 2018,
  Expiration Date: March 05 2028, Issuing Authority: Ministry of Foreign Affairs

Honorable Consul:

   The Executive Branch of the American International Checkers Association of North America (ICAONA) is proud to inform you that we are organizing our annual US OPEN Championship. This event is scheduled to be held in Huntington Station, New York, USA, September 05 through September 14, 2024.  US OPEN 2024 is registered with world draughts organization FMJD, so that participants' results will be counted in the rating system. Refer to the FMJD side https://www.fmjd.org/index.php?p=calend .  We have organized a hotel reservation for Lan, Tzu-Chien; Chen, Huang-Yun; Chang, Chen-Kai; Mss. Chang, Yun-Hsuan; Gao, Yi-Ping; Hsu, Ying-Hsin in "Rodeway Inn", Huntington Station, New York.

   The tournament's goal is to raise participation of American players in the world international checkers events and to improve the standing of the USA as the homeland of many great checker players.  We are inviting many well-known checker players from all over the world to participate in this event, and the members from Chinese Taipei Draughts Association are on our special  invitees' list.

   We are asking for your assistance in granting "travel visa" to these mind athletes, so that they can take part in this event, significant for both our country and international checkers community.  Therefore, we hope that your Consular Office will issue on time to our guests, named above, the appropriate visas, enabling them the safe travel to the United States in order to participate in the said competition.

Thank you very much in advance,

*Yevgeniy Sklyarov*

Yevgeniy Sklyarov
International Master FMJD in International Draughts,
General Secretary of ICAONA